UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,

        Plaintiff/Counterclaim Defendant,

  v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP,

        Defendant/Counterclaimant.

Civil Action No.  05-CV-10945 REK

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NONINFRINGEMENT AND FOR ATTORNEYS FEES**

Defendant, Arch Lighting Group, Inc. ("ALS") submits this memorandum in support of

its Motion for Summary Judgment of Noninfringement and for Attorneys Fees.  As set forth in

greater detail below, there are no material facts in dispute with respect to the design and

operation of the accused products of ALS.  The accused products lack necessary elements of the

claims of U.S. Patent No. 5,038,254.  Therefore, ALS is entitled to summary judgment of non-

infringement.  Moreover, testing done by Plaintiff, Genlyte Thomas Group LLC ("Genlyte

Thomas"), before filing suit showed that ALS did not infringe the '254 Patent.  Therefore, this is

an exceptional case and ALS should be awarded its attorneys fees pursuant to 35 U.S.C. §285.

BACKGROUND

The present action relates to allegations of infringement of the '254 Patent by ALS's

MulTMed products.  Complaint ¶8-10.  The '254 patent claims a medical lighting system for

hospital patients. (A copy of the '254 Patent is Exhibit A to the Declaration of Brett N. Dorny

("Dorny Decl") which is Exhibit 1 hereto).  The system of the '254 Patent is mounted on the

ceiling over the bed of the patient.  See '254 Patent (Dorny Decl., Ex. A), Abstract; col. 3, line

39. It has three fixtures in order to provide light for different patient needs. '254 Patent (Dorny Decl., Ex. A), Abstract. A first fixture, a reading light, directs light downward to a selected reading area on the bed. *Id.* A second fixture, an ambient light, directs light towards a wall at the head of the bed. *Id*. The light reflects off the wall to provide ambient or general room lighting around the bed. *Id.* The third fixture provides a bright light over the entire top surface of the bed to allow medical personnel to examine the patient. *Id*. The claims of the '254 Patent are specific as to the directionality of the light from the three fixtures. See '254 Patent (Dorny Decl., Ex. A), col. 3, lines 40-47 and 57-64, col. 4, lines 1-3.

The accused MulTMed products also are ceiling-mounted lights for use in hospital rooms. Statement of Undisputed Facts ("Facts") ¶2. There are two principal models for the MulTMed products, the 2x4 and 2x2 versions. Facts ¶4. The 2x4 MulTMed product includes three light fixtures which provide light for patient reading, general room lighting, and patient examination.[1] Facts ¶5. The 2x2 MulTMed product includes different combinations of two of the three light functions, including examination light/ambient light and ambient light/reading light. Facts ¶6. Unlike the fixtures claimed in the '254 Patent, the fixtures in the MulTMed products for the reading function and ambient function are designed similarly to provide general, non-directed lighting below the fixture. Facts ¶¶9, 12. The light distributions, which represent the amount of light emitted in different directions, for both of these fixtures have identical shapes. Facts ¶15, Figures 2 and 3; ¶18. The only difference is the total amount of light from the fixtures. The reading light fixture has a single lamp. Facts ¶8. The ambient light fixture has two lamps and, thus, provides more light. Facts ¶¶10, 18. The examination light fixture includes four lamps and provides even more light directly below the fixture and onto the patient bed.

---

[1] The MulTMed products may also include a nurse/chart light for a nurse to use to view a chart at night without bothering the patient. However, this light is not addressed by the '254 patent and is not discussed further here.

Facts ¶13.  None of the fixtures in the MulTMed products aim light at the walls of the patient room.  Facts ¶21.

In September 2004, the Genlyte Thomas, through counsel, sent a letter to ALS asserting infringement of the '254 Patent by ALS's MulTMed products.  ALS, through competent counsel, reviewed the MulTMed products and the '254 Patent and determined that its products did not infringe upon any claims of the Patent.  In November 2004, counsel for ALS sent a letter to counsel for Genlyte Thomas outlining the differences between the claims of the '254 patent and the MulTMed products.  Facts ¶23.  Specifically, counsel for ALS pointed out that the fixtures in the MulTMed products all directed light in the same manner, directly below the fixture.  *Id.* Genlyte Thomas then requested an opportunity to review, test, and evaluate the accused products.  ALS provided a 2x4 MulTMed product to Genlyte Thomas and testing occurred in February, 2005.  Facts ¶22.

Genlyte Thomas provided copies of the test results to ALS.  These test results corroborated ALS's statements regarding operation of its MulTMed products.  Facts ¶¶15-21. As shown in the test results, the reading light fixture and ambient light fixture have identical light distributions.  Facts ¶20.  The testing further showed that most of the light from the fixtures is directed downward to the patient bed.  Facts ¶17-19.  The amount of light decreases as the angle towards the wall and ceiling increase.  Furthermore, the distribution is symmetrical throughout the room.  *Id.*  The testing did not show that any fixture aimed light at a wall.

## ARGUMENT

A.    Legal Standards for Summary Judgment of Non-Infringement.

Under the Federal Rules of Civil Procedure, a motion for summary judgment should properly be granted when "there is no genuine issue as to any material fact and ... the moving

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. *Id*. In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.*; *Mediacom v. Rates Tech., Inc.*, 4 F. Supp.2d 17, 33 (D.Mass. 1998).

"Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*, 911 F.2d 670, 672 (Fed.Cir.1990). The determination of whether an accused product infringes a claim of a patent is universally understood to involve two steps. First, the asserted claim is construed to determine its meaning and scope. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (*in banc*), aff'd, 517 U.S. 370 (1996). Second, the accused product is compared to the properly construed claim. *Id.* Whether a product or process infringes the properly construed claims of a patent, literally or under the doctrine of equivalents, is a question of fact. *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n*, 109 F.3d 726, 731 (Fed.Cir.1997). Often, as in this case, the components and structure of the allegedly infringing product are undisputed. In such a case, the determination of literal infringement collapses into solely claim construction. Summary judgment of non-infringement is appropriate if the acknowledged structure of the accused products does not include a necessary limitation of the claims. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996).

An accused device does not infringe if it does not contain each and every element of a claim. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538-39 (Fed. Cir. 1991); *Mediacom v. Rates Tech.,*

*Inc.*, 4 F. Supp.2d 17, 34 (D.Mass. 1998). If every claim element is not present, the claim is not literally infringed. Although a claim may also infringe under the doctrine of equivalents, all claim elements must still be found. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir.1987) (in banc), cert. denied, 485 U.S. 961 (1988) (the doctrine of equivalents "does not mean one can ignore claim limitations."). Infringement cannot be established unless every limitation of a claim is satisfied either exactly or by an equivalent in the accused device. *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573 (Fed. Cir. 1993); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 867 F.2d 1572, 1577 (Fed.Cir.1989). Furthermore, "dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." Wahpeton Canvas Co., v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989).

ALS asserts that, based upon the undisputed nature of its MulTMed products, those products do no include the first fixture and/or second fixture as recited in independent claims 1 and 3 of the '254 Patent. Since a claim is not infringed if any one element is not present in the accused product, ALS has not addressed all of the elements of claims 1 and 3. It is sufficient for grant of summary judgment that at least one of the first fixture and second fixture are not found in the MulTMed products. For purposes of this motion only, the other elements of the claims are presumed to be present in the MulTMed products.

B.      Claims of the '254 Patent Require Fixtures Which Aim Light In Different Directions.

The Court has already addressed claim interpretation, the first step for determining infringement. At the Markman Hearing held on June 30, 2006, the Court determined the meaning of portions of independent claims 1 and 3 relevant to this motion. (The relevant portion of the transcript of the Markman Hearing is attached as Dorny Decl., Exhibit B ("Hearing

Transcript")).  At the hearing, the Court accepted a prior claim interpretation issued by Judge Ruben Castillo of the Northern District of Illinois, with several caveats.  Judge Castillo interpreted part of the language of claims 1 and 3 describing the first fixture and second fixtures of the medical lighting system.

As recited in the claims, the first fixture is "oriented to direct light downwardly to a selected reading area under said body."  '254 Patent (Dorny Decl. Ex. A), col. 3, lines 40-42 and 57-59.  Judge Castillo stated that as recited in the claims "oriented to direct light downwardly" means "set or arranged to direct more light in a downward direction than in an upward or outward direction."  This Court, at the Markman Hearing stated that it considers "direct" to mean "aim".  Hearing Transcript, 8:18-23.  The Court further noted that, although not addressed by Judge Castillo, the claim recites a target area to which the light from the fixture is aimed.  The first fixture directs light downwardly to a selected reading area.  Hearing Transcript 6:16-19.

Similarly, as recited in the claims, the second fixture is "oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body."  '254 Patent (Dorny Decl. Ex. A), col. 3, lines 43-45 and 60-63.  With respect to this element, Judge Castillo stated that "oriented to direct light downwardly and outwardly" means "set or arranged to direct more light in a downward and outward direction than in an upward direction."  Again, this Court stated that "direct" means "aim" (Hearing Transcript 8:18-23) and that the light is directed to a vertical wall surface as the target (Hearing Transcript 6:21-23).

It is axiomatic of patent claim interpretation that when claims use different words, that those words refer to different things. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (One expects a claim to refer to a single element with a single term.).  Since the claims of the '254 Patent use different terms for referring to the directions in

which light is aimed by the first and second fixtures, they necessarily refer to different directions. This is also clear from the Court's interpretation of the claim language. The first fixture must aim more light in a <u>downward</u> direction to a reading area. The second fixture must aim more light in a <u>downward and outward</u> direction to a vertical wall surface outwardly adjacent the body. The two fixtures cannot distribute light from the fixture in the same manner. Otherwise, they would not be aiming more light in the recited directions, as required by the language of claims 1 and 3. Therefore, the only issue necessary for determining infringement is to determine in what directions the reading light fixture and the ambient light fixture (the first and second fixtures of the claims) aim more light.

C.      The MulTMed Products Do Not Have Fixtures Which Aim Light
        in Different Directions and Do Not Infringe the '254 Patent.

        The structure and operation of the accused MulTMed products are not in dispute, nor are the distribution of light from the various fixtures. The 2x4 MulTMed product includes three fixtures for providing light for reading, ambient, and examination purposes. Facts ¶5. The 2x2 MulTMed product includes combinations of ambient/reading, ambient/examination, and reading/nurse lights. Facts ¶6. The fixtures providing light for each function in the 2x2 MulTMed product are the same as for the same function in the 2x4 MulTMed product. Facts ¶¶8, 12, 14.

        Furthermore, the distribution of light from the fixtures of the MulTMed products are not disputed. Prior to filing the present suit, Genlyte Thomas conducted tests on the MulTMed 2x4 product to determine the direction that light was emitted from the fixtures. Facts ¶22. It provided the results of those tests to ALS. The test results coincided with ALS's understanding of its products.

1.    <u>Light from all fixtures is aimed downward.</u>

As known to ALS and shown by the testing done by Genlyte Thomas, the reading light fixture and the ambient light fixture have virtually identical light distributions.  Facts ¶20.  The ambient light fixture provides more light because it has two lamps, whereas the reading light fixture only has one.  However, the light distributions, which represent the directionality of the light from the fixtures, are the same.  *Id.*  For both fixtures, the light is aimed downward.  The maximum amount of light is outputted directly below the fixture.  Facts ¶¶17, 18.  Thus, both fixtures are "set or arranged to aim more light in a downward direction" to an area below the fixture.  The light from either fixture would meet the limitations of the first light fixture as recited in claim 1 or claim 3, depending upon how the reading area is selected.

However, neither fixture aims more light in a downward and outward direction to a vertical wall as is required for the second fixture in the claims.  As illustrated by the graphs of the photometric data from Genlyte Thomas' tests, for both the reading light fixture and the ambient light fixture, the amount of light at directions downward and outward – towards a wall – is less than directly downward.  Neither fixture meets the limitations of the second light fixture in the claims of the '254 Patent.  Thus, there is no infringement of the independent claims of the '254 Patent.

2.    <u>Other methods for determining direction would eliminate the first fixture.</u>

Of course, as with all light fixtures, some light from both the reading and ambient fixtures is emitted in many directions, including various directions describable as "downward and outward".  In interpreting the claims of the '254 Patent, Judge Castillo recognized that light from fixtures is emitted in various directions.  Thus, the interpretation of the claims specifically indicated that the fixture must direct or aim <u>more</u> light in the recited direction than in the non-

recited directions.  However, neither Judge Castillo or the Court indicated how to determine whether "more" light is aimed in a direction.  As discussed above, ALS has used the direction of maximum light output to signify "more."  For both the reading light fixture and the ambient light fixture, the most light is directed downward.  This does not fulfill the claim requirement for the second light fixture that more light be aimed in a direction which is downward <u>and</u> outward.

Nevertheless, any other method for determining the directionality of more light would also result in omitting one of the recited fixtures in the MulTMed products.  The relative amount of light in any direction from both the reading light fixture and the ambient light fixture are the same.  Therefore, if either fixture were determined, under some other rubric for determining the direction of more light, to aim more light in a downward and outward direction, then both fixtures, under the same rubric, would aim more light in a downward and outward direction. Any analysis which seeks to show that the MulTMed products have the second fixture of claims 1 and 3 would necessarily show that they do not have the first fixture.  If both fixtures aim more light in a downward and outward direction, they cannot, then, aim more light in a downward direction as recited with respect to the first fixture.

3.    The MulTMed products do not infringe the '254 Patent.

Therefore, as shown by the testing done by Genlyte, the 2x4 MulTMed products do not include both the first fixture and second fixture as recited in independent claims 1 and 3 of the '254 Patent.  One of the fixtures is necessarily excluded under any analysis.  The 2x4 MulTMed product does not infringe any claim of the '254 Patent.  The 2x2 MulTMed product which includes a reading fixture and an ambient fixture operates in exactly the same manner as the fixtures of the 2x4 MulTMed product.   The 2x2 MulTMed product also does include the first and second fixtures of claims 1 and 3 and does not infringe the '254 Patent.  Since there are no

factual disputes regarding the orientation of the fixtures in the accused product and the claims are not infringed, summary judgment of non-infringement should be granted.

D.     ALS Should Be Awarded Its Attorneys Fees.

The prevailing party in a patent suit may be awarded its attorneys fees in exceptional cases.  35 U.S.C. §285.  "The trial court has broad discretion in the criteria by which it determines whether to award attorney fees." *Ncube Corp. v. Seachange Intern., Inc.*, 436 F.3d 1317, 1325 (Fed. Cir., 2006) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed.Cir.1992)); *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir. 1985).  However, that discretion may only be exercised upon a finding of an exceptional case.  *Id.*; *Bayer Aktiengesellschaft v. Duphar Intern. Research B.V.*, 738 F.2d 1237, 1242 (C.A.Fed., 1984).  The prevailing party has the burden of proof of facts which establish the exceptional character of the case. *Reactive Metals*, 769 F.2d at 1582.  A case may be exceptional if it is vexatious or unjustified litigation or a frivolous suit.  *Bayer Aktiengesellschaft*, 738 F.2d at 1242; *Hughes v. Novi American, Inc.*, 724 F.2d 122, 125 (Fed.Cir.1984); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed.Cir.1983).

The present litigation is vexatious, unjustified and frivolous.  Prior to commencing the present action, Genlyte Thomas requested a MulTMed product from ALS for testing.  ALS provided that product in January 2005.  Genlyte Thomas conducted its tests.  Those tests showed that the reading light fixture and ambient light fixture of the MulTMed product had identical light distributions.  Both fixtures directed light in a downward direction.  Neither fixture aims light in a downward and outward direction.  Therefore, before filing suit, Genlyte Thomas knew that the claims of the '254 patent were not infringed by the MulTMed product.  Despite such

knowledge, Genlyte Thomas filed suit and has proceeded with this litigation.  Accordingly, this case is exceptional within the meaning of 35 U.S.C. §285.

The Court should exercise its discretion to award ALS the attorneys fees incurred in defending this baseless lawsuit.  ALS is a small company which has been forced to expend tens of thousands of dollars defending a suit by a significantly larger competitor who knew, before filing and throughout the pendency of the suit, that there was no infringement.

## CONCLUSION

For the reasons stated above, summary judgment of non-infringement should be granted. The accused products do not have a first light fixture and a second light fixture as recited in the claims of the '254 Patent.  Furthermore, since Genlyte Thomas knew before filing suit that the accused products did not meet the limitations of the claims, ALS should be awarded its attorneys fees in defending this action.

## REQUEST FOR ORAL ARGUMENT

Defendant believes that oral argument may assist the Court and requests oral argument.

Respectfully submitted,

Dated:  November 1, 2006

  s/ Brett N. Dorny
Brett N. Dorny,  BBO# 628,977
Law Office of Brett N. Dorny
386 West Main Street, Suite 12A
Northborough, Massachusetts  01532
508-709-0501
bndorny@dornylaw.com

Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 1, 2006.


_s/ Brett N. Dorny_____
Brett N. Dorny