UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                          Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

                          Defendant.

Civil Action No. 05-CV-10945 WGY

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
RESPONSES TO DISCOVERY REQUESTS

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), submits this Memorandum in

Support of Its Motion to Compel Responses to Discovery pursuant to Fed. R. Civ. P. 37

and states:

INTRODUCTION

This is an action for patent infringement and damages brought by Genlyte against

the Defendant, Arch Lighting Group, Inc. ("ALS").  As part of the damages claim,

Genlyte is seeking its lost profits as a result of the sales made by ALS of the accused

products.  The accused products, and Genlyte's patented products, are utilized in hospital

patient rooms or other healthcare-type facilities.  Genlyte has requested information from

ALS relating to the identification of ALS' customers and/or purchasers (i.e., the hospital

or healthcare facility) of the accused products and the documents relating to the sales of

such products to said customers and/or purchasers.  ALS, however, has yet to produce all

responsive documents.

The identification of the hospital or healthcare facility will reveal the location (or

job site) to which ALS' accused products were ultimately installed and the documents

relating to these sales will likely contain, among other things, the specifications[1] for those jobs.  It is Genlyte's position, based on prior experience, that at least some of ALS' customers were jobs in which the job specification called for Genlyte's patented product and that ALS' accused products were purchased as a substitute.  Therefore, such information will aid Genlyte in identifying those jobs in which it lost sales due to ALS' accused products.

Additionally, it is common practice for the industry to purchase an entire lighting line from one supplier.  Consequently, in instances where ALS' accused products were substituted for Genlyte's patented product, it is very likely that Genlyte lost sales of an entire lighting package.  Therefore, Genlyte needs the information from ALS, identifying the healthcare facility where the accused products were installed, in order to determine what additional sales Genlyte lost beyond those sales for the patented products.  Without such information, Genlyte cannot determine its full extent of lost profits.

Genlyte sought this information through interrogatories, served pursuant to Fed. R. Civ. P. 33 (*see e.g.,* Nos. 2 and 5), and Requests for Production of Documents, pursuant to Fed. R. Civ. P. 34 (*see e.g.,* Nos. 2, 8, 13 and 14).  The discovery requests are attached as Exhibit 1.  Further, Genlyte sought to obtain such information through correspondence with ALS' counsel.  (S*ee* Letters from Robert Theuerkauf to Brett Dorny, collectively attached as Exhibit 2).  Following correspondence concerning this discovery dispute, the parties conferred by telephone on November 6, 2006 in an attempt to finally resolve the dispute.  The telephone conference was conducted by James Milliman and Robert Theuerkauf, on behalf of Genlyte, and Brett Dorny on behalf of ALS and lasted

---

[1] It is typical practice in the industry that a healthcare facility when purchasing light fixtures will employ an architect or electrical contractor to specify certain fixtures (e.g., Genlyte's patented product).  The

approximately 25 minutes.  Several discovery items upon which there was a dispute were indeed resolved.[2]  However, the parties could not reach an agreement on the information relating to identification of ALS' customers (i.e., hospitals and healthcare facilities) and the documents, including job specifications, relating to the sales to such customers.

ALS has responded to the discovery issue by simply stating that it does not have care, custody or control of its distributors' files and therefore cannot identify the customer (i.e., the hospital or healthcare facility) nor can it provide the documentation relating to the sales, such as the job specification.[3]  This response is legally insufficient.

<u>ARGUMENT</u>

ALS sells the accused products through lighting distributors and invoices these distributors.  Therefore, ALS classifies its distributors as the "customer".  (Deposition Transcript, Scott A. Davis, dated September 6, 2006, ("Davis Transcript"), p. 91, excerpts attached as Exhibit 3).  Because of this arrangement, ALS wrongfully contends that the identification of the end customer and related documentation, including the job specification, are not within ALS' custody or control, but within the custody and control of the distributors.  Therefore, ALS contends that it is not required to obtain such information.  Despite the fact that this contention strains credulity, it does not shield ALS from responding to the discovery.

---

document containing this information is generally known as a "job specification."
[2] Genlyte had previously requested, but had not received, (1) information evidencing the costs associated with ALS' accused products; (2) information relating to an ALS product, not previously identified, that may potentially infringe the patent-in-suit; and (3) ALS' distributor files.  During the November 6, 2006 conference, the parties reached an agreement on these three items.  Although Genlyte has yet to receive the information, ALS agreed to produce documents for items 1 and 2.  With respect to item 3, ALS agreed to allow Genlyte to review and copy relevant documents from its files.  Genlyte is scheduled to undergo this review of ALS' files on November 27, 2006.
[3] ALS contends that it only knows who the end customers are when it is required to ship the products to that location.  However, only a small percentage of ALS' entire sales are shipped to the end customer.

Rule 34 requires a party to produce documents responsive to the request that are in the responding party's care, custody and control. This much Genlyte and ALS agree upon. Where the parties differ is the extent the responding party must make a reasonable effort to provide documents not in its literal control, but which are readily available to it upon reasonable inquiry. Unquestionably, a party may have a duty, depending upon the facts, to produce documents that it has a legal right to, such as documents provided to its attorney or insurer, or often in a related corporation context. 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2210 (2d ed. 1994). However, ALS' obligation does not stop there.

A party's "control" has been defined as the <u>practical ability to obtain</u> the documents from another, irrespective of legal entitlement to the documents. *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D.C. Minn. 2000); *see also In Re Flag Telecom Holdings, Ltd. Securities Litigation,* 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (citing *Riddell Sports, Inc. v. Brooks*, 158 F.R.D. 555,558 (S.D.N.Y. 1994) ("If the producing party has the legal right **or the practical ability** to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.").

In the present case, ALS sells its products through distributors who apparently maintain the job specifications and documents relating to the end customer, including the identification of the healthcare facility where ALS' accused products are installed. It is inconceivable that ALS does not know the locations where its products are installed. Nonetheless, it would be very practical and expedient for ALS to simply contact those distributors to whom ALS has sold the accused products and obtain the information

4

regarding the healthcare facility that purchased the accused products and obtain the documents relating to the sale, including the job specification.  In fact, ALS has produced a partial list of places where the accused products have been installed.  Scott Davis, President and owner of ALS, when presented with this document testified that the list had probably been put together by a sales manager.  (Davis Transcript, pp. 119-120).  Therefore, ALS obviously has the practical ability to obtain the requested information.

By refusing to take the reasonable approach to obtain the requested information from its distributors, ALS is in essence taking the position that Genlyte must subpoena each and every distributor around the country to obtain the information.  However, all that should be required is a simple request by ALS to its distributors to provide the requested information.

Similarly with respect to the Interrogatory responses, ALS is required to make a due inquiry to respond to the interrogatories.  8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2177 (2d ed. 1994).  ALS has not shown that it has made due inquiry of its distributors to determine to whom the accused products were sold.  It is required to do so.  Consequently, independent of ALS' obligations under Rule 34, ALS has no basis to refuse to make due inquiry to determine from its distributors the hospitals that are the end customers of the accused products and to respond to Genlyte's interrogatories accordingly.

<u>CONCLUSION</u>

For the foregoing reasons, Genlyte respectfully requests the Court to compel ALS to identify all of the healthcare facilities where the accused products have been installed

and to produce all documents relating to the sales of the products to the healthcare facility

(including the job specification).

Respectfully submitted,

/s/ John L. Capone_____
James E. Milliman (Pro hac vice)
James R. Higgins, Jr. (Pro hac vice)
Robert J. Theuerkauf (Pro hac vice)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
CESARI AND MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

*Counsel for Plaintiff, Genlyte Thomas
Group LLC*

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 20th day of November, 2006.

/s/ John L. Capone_____
*Counsel for Plaintiff, Genlyte Thomas Group LLC*

# EXHIBIT 1
## TO
## GENLYTE THOMAS GROUP LLC'S
## MEMORANDUM IN SUPPORT OF ITS
## MOTION TO COMPEL
## RESPONSES TO DISCOVERY

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company

        Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

        Defendant.

Civil Action No. 05-CV-10945 REK

## PLAINTIFF GENLYTE THOMAS GROUP LLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT ARCHITECTURAL LIGHTING SYSTEMS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff Genlyte

Thomas Group LLC ("Genlyte Thomas"), through counsel, directs the following Interrogatories

and Requests for Production of Documents to Defendant, Architectural Lighting Systems

("ALS"). All Interrogatories should be answered separately and fully in writing, under oath.

Both the Interrogatories and the Requests for Production of Documents are to be answered and

responded to within the time period permitted by Rules 33 and 34 after service hereof. These

Interrogatories and Requests for Production of Documents are deemed continuing and ALS

should serve upon Genlyte Thomas any additional information requested which shall become

available to ALS up to the time of trial pursuant to Rule 26(e) of the Federal Rules of Civil

Procedure.

### DEFINITIONS AND INSTRUCTIONS

1.     "ALS" means (a) Defendant Architectural Lighting Systems, a division of Arch

Lighting Group, its predecessor corporations, successor corporations, parent corporations, and

each subsidiary, affiliated or related company; (b) each of its present or past directors, officers,

employees, agents, consultants, accountants, attorneys and independent contractors which have contractual relations with it; and (c) any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf of ALS or anyone under its control, direction or instruction.

2.    "Multmed" means <u>both</u> ALS' MulTmed™ MT1 series and MulTmed™ MT2 series lighting fixtures manufactured for, or by ALS, and/or sold by ALS.

3.    "Genlyte Thomas" means (a) Plaintiff Genlyte Thomas Group LLC, its predecessor corporations, successor corporations, parent corporations, and each subsidiary, affiliated or related company; (b) each of its present or past directors, officers, employees, agents, consultants, accountants, attorneys and independent contractors which have contractual relations with it; and (c) any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf of Genlyte Thomas Group LLC or anyone under its control, direction or instruction.

4.    "'254 Patent" means United States Patent No. 5,038,254.

5.    "Document" shall be construed in its broadest sense and shall mean all written, printed, typed, recorded, graphic, stenographic, computer-generated, computer-stored and electronically stored matter of every kind and description, however and by whomever produced, prepared, reproduced, disseminated, or made, including all originals, copies and drafts thereof and all attachments and appendices thereto and shall also include audiovisual works and magnetic recordings of any type such as video tape recordings, slides, floppy and hard disks, audio recordings, and photographic pictures or movies.  A copy of any document that contains notes, sketches, annotations, highlighting, underlining or any other markings, comments or modifications on or of another document shall be considered a separate document.

-2-

6.    "Person" means the plural as well as the singular and includes any natural person and any firm, corporation, association, partnership or other form of legal entity.

7.    With respect to a person, "identify" means to state the name, title and present address of the person, or if unknown, the last known address of such person.

8.    With respect to a document, "identify" means to state the document's date, title, author, addresses, copies' recipients, other persons who have read (or have been provided with) a copy, and to describe its character and substance sufficiently to make clear what the document is.

9.    "Or" is inclusive referring to any one or more of the disjoined words or phrases listed.

10.    If you contend that any requested information is privileged or otherwise not subject to discovery, or if any information is withheld for any other reason, please state the following as to the withheld information:

      a.    the nature and date of the subject matter;

      b.    the author;

      c.    the person or persons to whom the subject matter was conveyed, either orally or in writing, together with their job title or position;

      d.    a sufficient description of the subject matter such that the Court will be able to rule on a motion to compel the withheld information;

      e.    the specific basis upon which the privilege is claimed; and

      f.    the Interrogatory to which each claim of privilege applies.

11.    If you contend that any requested document is privileged or otherwise not subject to discovery, or if any document is withheld for any other reason, please state the following as to each such document:

a.    the name of each signatory and the capacity in which each signed;

b.    the date;

c.    the name of each author and the capacity in which each was acting at the time he or she addressed or created the document;

d.    the name of each addressee;

e.    the name of each person copied on the document;

f.    the subject matter;

g    the specific grounds or reasons asserted for withholding the document; and

h.    the present location of the document.

12.    If any information is withheld in reliance on an asserted objection to a portion of an Interrogatory or Request for Production of Documents, please produce information responsive to all other portions of the Interrogatory or Request for Production of Documents to which no objection has been made.

13.    These Interrogatories and Requests for Production of Documents request responsive information in the possession, custody or control of the requested party or its attorneys, agents, or affiliated or related entities.

INTERROGATORIES

INTERROGATORY NO. 1: Identify all ceiling-mounted medical lighting systems, including make and/or model number, manufactured for, or by ALS, and/or sold by ALS wherein said lighting system includes more than one light source.

ANSWER:

INTERROGATORY NO. 2:  Identify all customers and/or purchasers of the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

    ANSWER:


INTERROGATORY NO. 3:  State separately for each customer and/or purchaser of the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, ALS' expenses, revenues and gross and net profits.

    ANSWER:


INTERROGATORY NO. 4:  Identify all distributors, retailers and/or sales representatives of the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

    ANSWER:


INTERROGATORY NO. 5:  Identify all persons to whom ALS has offered for sale the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

    ANSWER:

<u>INTERROGATORY NO. 6</u>:  Identify all written communications between ALS and its customers, purchasers, retailers and/or distributors relating to the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

 <u>ANSWER</u>:

<u>INTERROGATORY NO. 7</u>:  Identify all written communications between ALS and its customers, purchasers, retailers, distributors and/or sales representatives relating to the ceiling-mounted medical lighting systems manufactured by Genlyte Thomas, including but not limited to the MD*4 and MD*Coffer.

 <u>ANSWER</u>:

<u>INTERROGATORY NO. 8</u>:  Identify all patents owned by, assigned to, and/or under license to ALS relating to ceiling-mounted medical lighting systems.

 <u>ANSWER</u>:

<u>INTERROGATORY NO. 9</u>:  State when ALS first learned of the '254 Patent, and state in detail the circumstances in which ALS learned of the '254 Patent.

 <u>ANSWER</u>:

INTERROGATORY NO. 10:  Identify whether ALS, prior to its first sale of the Multmed and/or any of the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, ever examined, or had examined for it, the '254 Patent and, if so, state in detail the persons involved in such examination(s), the date upon which the examination(s) took place, the purpose such examination(s) took place and identify any documents relating to any such examination(s) that were prepared during or after the examination(s).

ANSWER:

INTERROGATORY NO. 11:  Identify whether ALS has ever performed, or had performed for it, a patent search or other examination of the records of the United States Patent and Trademark Office related to Genlyte Thomas' MD*4 or MD*Coffer, the '254 Patent, the subject matter of the '254 Patent, and/or the infringement of or validity of the '254 Patent, and identify any and all documents related to such search(es).

ANSWER:

INTERROGATORY NO. 12:  Identify the person(s) who designed, and/or developed, the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, and identify all documents relating to the design and/or manufacturing of such ceiling-mounted medical lighting systems.

ANSWER:

-7-

INTERROGATORY NO. 13: Identify all employees and former employees of ALS who have worked on the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, and identify the present custodian of any and all files of each of the employees and former employees referring or relating in any way to ALS' conception, reduction to practice, development, construction, manufacture and sale of such ceiling-mounted medical lighting systems.

ANSWER:

INTERROGATORY NO. 14: If ALS does not manufacture the Multmed and/or any of the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, identify ALS' source for each such ceiling-mounted lighting system.

ANSWER:

INTERROGATORY NO. 15: Separately set forth in detail ALS' reason why it contends that its Multmed does not infringe any claim of the '254 Patent, and provide a claim chart setting forth each alleged functional and structural difference.

ANSWER:

INTERROGATORY NO. 16: State each and every claim or claim term of the '254 Patent which ALS believes requires claim construction, and set forth ALS' proposed construction of each such

claim or claim term and the basis for such construction, including the support for ALS'

construction in the claims, specification and/or prosecution history and any extrinsic evidence

relied upon by ALS to support its construction.

    ANSWER:

INTERROGATORY NO. 17:  State whether any change in design, materials of construction

and/or method for construction have been made in the Multmed and/or the ceiling-mounted

lighting fixtures identified in the Answer to Interrogatory No. 1 since their inception, and set

forth separately in detail what change was made and why such change was made.

    ANSWER:

INTERROGATORY NO. 18:  Identify and give the dates of all attempts by, or for, ALS to copy,

duplicate, surpass or design around the '254 Patent or the technology of the '254 Patent.

    ANSWER:

INTERROGATORY NO. 19:  State separately ALS' expenses, revenues and gross and net

profits from ALS' manufacture, use, sale or offer for sale of the Multmed and/or the ceiling-

mounted medical lighting fixtures identified in the Answer to Interrogatory No. 1 since

inception.

    ANSWER:

INTERROGATORY NO. 20:  Please set forth all facts which support ALS' belief that ALS does not willfully infringe any claim of the '254 Patent, including identification of any opinions (oral or written) of counsel that ALS intends to rely upon.

    ANSWER:

INTERROGATORY NO. 21:  Please set forth all facts which ALS intends to rely upon to support its affirmative defense of laches as stated in ALS' Answer and Counterclaims.

    ANSWER:

INTERROGATORY NO. 22:  Please set forth all facts which ALS intends to rely upon to support its claim of patent misuse as stated in ALS' Answer and Counterclaims.

    ANSWER:

INTERROGATORY NO. 23:  Please set forth all facts which ALS intends to rely upon to support its claim of interference with business relations as stated in ALS' Answer and Counterclaims.

    ANSWER:

INTERROGATORY NO. 24: Please set forth all facts which ALS intends to rely upon to support its claim that the '254 Patent is invalid as stated in ALS' Answer and Counterclaims.

ANSWER:


## REQUESTS FOR PRODUCTION OF DOCUMENTS

REQUEST NO. 1: Produce all documents which were referred to and/or relied upon in preparing the Answer and Counterclaims by ALS.

RESPONSE:


REQUEST NO. 2: Produce all documents relied upon and/or identified in answering the above Interrogatories.

RESPONSE:


REQUEST NO. 3: Produce all documents regarding, referring or relating to, or otherwise evidencing the '254 Patent.

RESPONSE:


REQUEST NO. 4: Produce all documents regarding, referring or relating to, or otherwise evidencing any communications between ALS and Genlyte Thomas.

-11-

RESPONSE:

REQUEST NO. 5:  Produce all documents regarding, referring or relating to, or otherwise evidencing correspondence or communications among or between ALS and any third party concerning the '254 Patent.

RESPONSE:

REQUEST NO. 6:  Produce all documents regarding, referring or relating to, or otherwise evidencing any ALS internal, interdepartmental or intradepartmental correspondence, communications or memoranda concerning the '254 Patent.

RESPONSE:

REQUEST NO. 7:  Produce all documents regarding, referring or relating to, or otherwise evidencing any prior art search or investigation in connection with the '254 Patent, or with any invention described or claimed in the '254 Patent, including, without limitation, all patents, publications, and other prior art located or identified through any such search or investigation.

RESPONSE:

REQUEST NO. 8: Produce all documents regarding, referring or relating to, or otherwise evidencing the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the Multmed.

RESPONSE:

REQUEST NO. 9: Produce all documents regarding, referring or relating to, or otherwise evidencing the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 10: Produce all documents regarding, referring or relating to, or otherwise evidencing ALS':

    (a)    failed or successful attempts to copy the lighting system(s) disclosed in the '254 Patent;

    (b)    failed or successful attempts to design around the lighting system(s) disclosed in the '254 Patent; and

    (c)    failed or successful attempts to copy or duplicate any product covered by the '254 Patent, including but not limited to Genlyte Thomas' MD*4 and MD*Coffer.

RESPONSE:

REQUEST NO. 11: Produce separately all documents regarding, referring or relating to, or otherwise evidencing ALS' revenues and expenses, including ALS' gross and net profits, for ALS' business of manufacturing, selling and/or offering for sale the Multmed for all years since the first sale of the Multmed.

RESPONSE:

REQUEST NO. 12: Produce separately for each ceiling-mounted lighting system identified in the Answer to Interrogatory No. 1 all documents regarding, referring or relating to, or otherwise evidencing ALS' revenues and expenses, including ALS' gross and net profits, for ALS' business of manufacturing, selling and/or offering for sale the identified ceiling-mounted medical lighting systems for all years since the first sale of each system.

RESPONSE:

REQUEST NO. 13: Produce all documents regarding, referring or relating to, or otherwise evidencing sales of and/or offers to sell the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 14: Produce all documents regarding, referring or relating to, or otherwise evidencing sales of the Multmed and/or the ceiling-mounted medical lighting systems identified

-14-

in the Answer to Interrogatory No. 1 at a sale price which is lower than the pricing offered by

Genlyte Thomas for Genlyte Thomas' corresponding competitive product (including the MD*4

and MD*Coffer), including but not limited to documents regarding, referring or relating to, or

otherwise evidencing the name of the current, potential or prior customer, the name of the

ceiling-mounted lighting system offered by ALS and Genlyte Thomas to that customer, and the

pricing per unit offered to that customer by either ALS or Genlyte Thomas.

    RESPONSE:



REQUEST NO. 15:  Produce all documents regarding, referring or relating to, or otherwise

evidencing marketing and/or promotional material for the Multmed and/or the ceiling-mounted

medical lighting systems identified in the Answer to Interrogatory No. 1.

    RESPONSE:



REQUEST NO. 16:  Produce all written opinions identified above in ALS' answers to the above

Interrogatories, including all drafts of such opinions, all notes relating to or regarding such

opinion and all information relied upon in preparing such opinion.

    RESPONSE:

REQUEST NO. 17:  Produce all documents regarding, referring or relating to, or otherwise evidencing any marketing studies, customer studies or surveys conducted by, or on behalf of, ALS involving ceiling-mounted medical lighting systems.

RESPONSE:


REQUEST NO. 18:  Produce all documents regarding, referring or relating to, or otherwise evidencing ALS' decision to design, develop, manufacture, import, offer for sale and/or sell the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:


REQUEST NO. 19:  Produce all documents regarding, referring or relating to, or otherwise evidencing Genlyte Thomas' MD*4 and/or MD*Coffer.

RESPONSE:


REQUEST NO. 20:  Produce all documents regarding, referring or relating to, or otherwise evidencing industry and/or customer response to the Multmed and/or the ceiling-mounted medical lighting fixtures identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 21:  Produce all documents regarding, referring or relating to, or otherwise evidencing any comparisons between Genlyte Thomas' ceiling-mounted medical lighting systems (including the MD*4 and MD*Coffer) and ALS' ceiling-mounted medical lighting systems (including the Multmed).

RESPONSE:

REQUEST NO. 22:  Produce a copy of each patent, printed publication or other document or thing, if any, which ALS contends constitutes material prior art to the '254 Patent.

RESPONSE:

Respectfully submitted,

James E. Milliman (*pro hac vice*)
James R. Higgins, Jr. (*pro hac vice*)
Robert J. Theuerkauf (*pro hac vice*)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville, Kentucky  40202-3410
(502) 584-1135
(502) 561-0442 (Facsimile)

and

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
CESARI AND MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927
*Counsel for Plaintiff,*
  *Genlyte Thomas Group LLC*

-17-

## CERTIFICATE

It is hereby certified that a copy of the foregoing was mailed this 21st day of November, 2005, to:

Brett N. Dorny
LAW OFFICE OF BRETT N. DORNY
321 Church Street
Northborough, Massachusetts  01532
*Counsel for Defendant*

_____
*Counsel for Plaintiff*

-18-

# EXHIBIT 2

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO DISCOVERY



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

August 31, 2006

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:    *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
       U.S. District Court, District of Massachusetts
       Civil Action No. 05-CV-10945 REK

Dear Brett:

This letter is in regards to Arch Lighting Group, Inc.'s ("ALS") answers and responses to Genlyte Thomas Group LLC's ("Genlyte") First Set of Interrogatories and Requests for Production of Documents and supplements my letter of August 18, 2006 and email of August 30, 2006.

ALS has only provided sales information for the Multmed through 2005. Please update ALS' sales information (including, but not limited to, invoices, quotes and transaction histories) for 2006. Additionally, in answering Interrogatory No. 19, ALS identified costs of goods sold and sales, administrative and overhead costs. However, ALS did not produce any documents relating to, or evidencing, the costs of goods sold or its other costs. Such information should have been provided, at a minimum, in response to Request No. 2. Therefore, please provide all documents relied upon by, or evidencing, ALS' answer to Interrogatory No. 19. Further, ALS' answer to Interrogatory No. 19 should be supplemented to include its 2006 sales.

Further, ALS has not identified, or produced any documents identifying, the end customers of the Multmed products it has sold. Such information should have been provided in response to Interrogatory No. 2 and Request Nos. 2 and 13. The information provided to date only identifies the electrical/lighting contractor or representative. Moreover, ALS has not provided any of the lighting specifications for any of the jobs for which ALS made a sale of a Multmed product. These documents should have also been provided in responding to Request No. 13. Therefore, please provide the requested information.

Finally, it has come to our attention that ALS has placed on the market a dual function patient bed light referred to as the "Latitude Exam/Ambient." However, this

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
August 31, 2006
Page 2

product was not identified by ALS nor did ALS produce any documents relating to this product. Genlyte's interrogatories and requests for production of documents specifically requested information relating to "all ceiling-mounted medical lighting systems . . . wherein said lighting system includes more than one light source." Therefore, please produce all responsive information and documents relating to this product.

We continue to review ALS' answers and responses to Genlyte's discovery requests and reserve the right to challenge any privileges asserted by ALS and/or the adequacy of ALS' discovery answers and responses. This letter is in no way a waiver of any other challenges Genlyte may bring against ALS' discovery responses.

We look forward to ALS' cooperation in fully responding to Genlyte's discovery requests and receiving the information discussed above. If you have any questions, please contact us.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:    Daniel R. Fuller, Esq.
       James E. Milliman, Esq.
       James R. Higgins, Jr., Esq.
       John L. Capone, Esq.

MIDDLETON
REUTLINGER

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

October 17, 2006

*Via Telefax and First Class Mail*

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:    *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
       U.S. District Court, District of Massachusetts
       Civil Action No. 05-CV-10945 REK

Dear Brett:

    During the deposition of the President of Arch Lighting Group ("ALS"), Scott A. Davis, on September 6, 2006, several relevant categories of documents were identified by Mr. Davis, which ALS has not yet to produce in this litigation. The documents identified by Mr. Davis include:

- Photometric reports of ALS' accused products;
- Installation instructions of ALS' accused products;
- Advertisements relating to ALS' accused products;
- ALS' quarterly reports (rating the overall margins of profitability for ALS' product lines) since the inception of ALS' accused products and ALS' quarterly reports for the two years prior to the inception of ALS' accused products; and
- ALS' customer files for its accused products.

    Mr. Davis also stated during his deposition that a summary report of the annual sales of the ALS' accused products could be generated.

    At the time of the deposition, you indicated that ALS would produce all of the above-mentioned documents, but we have yet to receive them. Please advise us as to when we can expect to receive such documents.

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
October 17, 2006
Page 2


Thank you for your cooperation.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:    James E. Milliman, Esq.
        James R. Higgins, Jr., Esq.
        John L. Capone, Esq.



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com
Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

October 20, 2006

*Via Telefax and First Class Mail*

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:    *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
       U.S. District Court, District of Massachusetts
       Civil Action No. 05-CV-10945 REK

Dear Brett:

    As we discussed today and as we have set forth in our letters of August 31, 2006 and October 17, 2006, Arch Lighting Group ("ALS") has failed to produce several relevant categories of documents which are responsive to Genlyte Thomas Group LLC's discovery requests. These documents include:

- Current sales information for ALS' accused products, including but not limited to invoices, quotes and transaction histories;
- Documents evidencing or relating to the costs associated with ALS' accused products, including but not limited to costs of goods sold, sales costs, administrative costs and overhead costs;
- Documents evidencing or relating to ALS' "Latitude" fixture;
- Photometric reports of ALS' accused products;
- Installation instructions of ALS' accused products;
- Advertisements relating to ALS' accused products;
- ALS' quarterly reports (rating the overall margins of profitability for ALS' product lines) since the inception of ALS' accused products and ALS' quarterly reports for the two years prior to the inception of ALS' accused products;
- ALS' customer files, including but not limited to job specifications, for its accused products; and
- ALS' summary report of the annual sales of the ALS' accused products.

**MIDDLETON
REUTLINGER**

Brett N. Dorny, Esq.
October 20, 2006
Page 2

It is our understanding from our conversation today that the above information will be produced early next week.  We look forward to receiving the information.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:     James E. Milliman, Esq.
        James R. Higgins, Jr., Esq.
        John L. Capone, Esq.



**MIDDLETON**
**REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com
Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

November 1, 2006

*Via Tele-Fax and First Class Mail*

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:    *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
       U.S. District Court, District of Massachusetts
       Civil Action No. 05-CV-10945 REK

Dear Brett:

In response to your October 30, 2006 letter, we disagree that Genlyte Thomas' expert reports are untimely. As we discussed, the Court has not set a date for the final pretrial conference nor the trial. The dates you set forth in your letter are dates that such events are not to occur before. Further, dispositive motions were not due until today, November 1, 2006. Therefore, it was certainly contemplated that either party could have served expert reports on that date in conjunction with a dispositive motion.

Moreover, we just received on October 30 and 31, 2006, additional ALS documents relevant to both of Genlyte Thomas' expert reports. We have repeatedly asked for such information dating back to August 2006. And, regardless of ALS' contentions, ALS is not prejudiced in any way by the timing of the expert reports. Any discovery that ALS may require with respect to the expert reports can be conducted well before trial. In fact, the expert reports were served within approximately a week of your requesting the depositions of a Genlyte Thomas Rule 30(b)(6) designee and Mr. Roy Crane.

Further, your contention that Genlyte Thomas' expert, Tom Lemons, consulted in the design of ALS' MulTmed is baseless. It is our understanding that the consultation you raise was Mr. Lemons simply aiding ALS in better understanding the effects of refractors. Indeed, when ALS answered Genlyte Thomas' Interrogatories relating to the individuals involved in the design and/or development of the MulTmed fixtures, ALS did not list Mr. Lemons. Moreover, ALS, had it believed a conflict existed, has waived any right to object.

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
November 1, 2006
Page 2

With respect to the disclosure of confidential information to Genlyte Thomas'
expert, Mike Tate, there appears to be a contradiction in the Protective Order. Provisions
8 and 9 allow for the disclosure of such information to the parties' experts without written
consent from the producing party so long as the expert reviews the Protective Order and
signs a statement confirming to be bound by the Protective Order. Mr. Tate did review
the Protective Order and signed such a statement prior to receiving the discovery material.

Also, we are reviewing the documents received on October 30 and 31, 2006 and
the letter, dated October 28, 2006, which accompanied the documents received on
October 30th, and will respond accordingly. Initially, however, in response to the letter,
we disagree with your assessment of ALS' Latitude fixture. From the product literature
available and from Mr. Davis' testimony, it appears possible that the Latitude infringes at
least Claim 1 of the '254 Patent. As previously stated, it is of no relevance what name
(i.e., "reading," "ambient," or "exam") ALS gives the individual fixtures of the luminaire
as long as such fixtures contain the elements of at least one of the patent claims. And, as
you know, the broadest claims of the '254 Patent do not require any certain amount of
light to be directed toward the claimed areas.

Moreover, it is inconceivable to us that ALS does not have or at least have access
to information identifying all the end customers of ALS' accused products and the
specifications for such jobs. ALS has a duty to make a reasonable effort to obtain such
information. At the very least, ALS can contact its distributors for this information.
Additionally, ALS has failed to produce photometric reports relating to the 2x2 MulTmed
fixtures. Therefore, we request the above information to be produced within 10 days of
this letter or we will have no choice but to file a motion to compel. Further, in this
regard, ALS was under a duty to produce a designee to Genlyte Thomas' Rule 30(b)(6)
deposition notice knowledgeable of all bids and/or quotes for the accused products made
by, or on behalf of, ALS and the facts and circumstances surrounding such jobs.
However, Mr. Davis had little, if any, information on these topics. Consequently, we
reserve the right to further depose ALS on these matters and those issues related to the
documents produced this week. *See Berwind Property Group, Inc. v. Environmental
Mgmt. Group, Inc.*, 233 F.R.D. 62, 65 (D.Mass. 2005) ("[I]t is defendant's responsibility
to prepare its Rule 30(b)(6) designee 'to the extent the matters are reasonably available,
whether from documents, past employees, or other sources.'" (other citations omitted)).

What is more, in response to our request to depose Dr. Ian Lewin, you stated Dr.
Lewin had only submitted a Markman report and that since the Court had already
construed the claims, there were no topics in which to depose Dr. Lewin. We disagree
with your assessment of the Court's ruling. Indeed, the Court did not reach a construction
of all of the claim terms in dispute. Nonetheless, it is our understanding from your
statements that ALS does not intend to call Dr. Lewin as a witness at trial. If this is not

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
November 1, 2006
Page 3

the case, we request you provide us dates that Dr. Lewin would be available for a
deposition.

Finally, you did not address our inquiry as to whether ALS can generate a
summary report (similar to its profitability reports) of the costs related to the MulTmed
fixtures. However, we would like to arrange the copying and review of the documents
relating to ALS' costs and its customer files as you have suggested. We would like to
arrange for such copying to be outsourced (i.e., copied by Kinko's) at our cost. Please
contact us to work out the logistics of accomplishing this task.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:    James E. Milliman, Esq.
       James R. Higgins, Jr., Esq.
       John L. Capone, Esq.

# EXHIBIT 3

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO DISCOVERY

00001

1              Volume:  I

2              Pages :  1 - 165

3              Exhibits: 1 - 13

4       UNITED STATES DISTRICT COURT

5        DISTRICT OF MASSACHUSETTS

6          CIVIL ACTION NO. 05-CV-10945 REK

7  - - - - - - - - - - - - - - - - - - - - - x

8  GENLYTE THOMAS GROUP, LLC,

9  a Delaware Limited Liability Company,

10          Plaintiff,

11    V.

12  ARCHITECTURAL LIGHTING SYSTEMS

13  a division of ARCH LIGHTING GROUP,

14  a Rhode Island Corporation,

15          Defendants.

16  - - - - - - - - - - - - - - - - - - - - - x

17      VIDEOTAPED 30(b)(6) DEPOSITION OF ALS

18        Through SCOTT A. DAVIS

19    Wednesday, September 6, 2006,  9:12 a.m.

20        Cesari and McKenna LLP

21        88 Black Falcon Avenue

22        Boston, Massachusetts

23     Reporter:  Rosemary F. Grogan, CSR, RPR

24  LegaLink Boston, a Merrill Communications Company

**Davis, Scott A. 9/6/06**                    **Page 1**

00091

1  to the wall, it gets the greatest benefit.

2      Q.   Any light would get benefit by being reflected

3  off the headwall; is that correct?

4      A.   Yes, unless there was some reason why you

5  didn't want reflected light.

6      Q.   I'm want to turn now, talking about the sales

7  of the MulTMed product, and get away from design and go

8  into the sales area.

9           Just so I understand this, I take it your

10  customers are really what you call, I guess, the

11  specifiers?  They're the architects, the contractors,

12  the electrical contractors that make decisions as to

13  what lighting fixtures are going to go in a hospital;

14  would that be fair to say?

15     A.   Factually, our customers are lighting

16  distributors.  They're the ones that actually buy the

17  product.  Everyone else that you mention is just a chain

18  of influence.

19     Q.   But at the end of the day an architect, who is

20  building a house or in charge of building a hospital,

21  would he specify what kind of fixtures he wants in that

22  hospital patient room?

23     A.   Oh, there's no question an architect would

24  choose the one he wanted.

00119

1    Q.   Would the specifier specify what kind of

2  fixtures he wanted?  What the --

3    A.   What was originally specified?

4    Q.   Right.

5    A.   Not necessarily.

6    Q.   Would some of them have that information?

7    A.   On occasion we get a hold of that document.

8  It's the exception, not the rule.  It doesn't matter

9  much to us.

10    Q.   What matters to you is getting the job and

11  just selling it?

12    A.   Right.

13    Q.   Let me show you what's marked as Exhibit 10,

14  and ask if you can identify that document?

15    A.   That's a list of places where MulTMed fixtures

16  have been installed.

17    Q.   It says, Installation Resume Partial.  Is

18  there more to this or?

19    A.   There's no date on this, so I don't know how

20  to -- as of that date, I'm not sure.

21    Q.   Okay.  Well, as you look at this, can you give

22  an estimation whether this is all of the jobs you may

23  have sold or?

24    A.   Ever?

**Davis, Scott A. 9/6/06**              **Page 119**

00120

1    Q.    -- part of --

2          Yes.

3    A.    Oh, no.  I'm sure there must have been one

4  last week or last month.  This looks older, but I don't

5  know when this was produced.

6          It's not a document I'm familiar with;

7  probably done by a sales manager.

8    Q.    Okay.  It shows on here, installation at Mercy

9  Hospital patient tower in Cincinnati, Ohio and Mount

10  Carmel Urgent Care in Columbus, Ohio.

11          Do you recognize that as one of the jobs,

12  the Ohio jobs, that we referred to earlier?

13    A.    You know if -- I don't know that I ever knew

14  the name of that job.  It was always referred to as the

15  Ohio job.  So I'm sorry I can't be more clear on that.

16      (Exhibit No. 10 Marked for Identification)

17  BY MR. MILLIMAN:

18    Q.    You're familiar with Kenall Manufacturing?

19    A.    Yes.

20    Q.    Do you know the president of Kenall?

21    A.    Not presently.

22    Q.    James Hawkins?

23    A.    I've spoken to him.  I've actually not met

24  him.

**Davis, Scott A. 9/6/06**          **Page 120**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                    Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

                    Defendant.

Civil Action No. 05-CV-10945 WGY

### [Proposed] ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

This matter is before the Court on the motion by Plaintiff, Genlyte Thomas Group LLC ("Genlyte") to Compel Responses to Discovery Requests ("Genlyte's Motion"). The Court, having reviewed and considered the parties' respective memoranda and supporting material, and any responses thereto, and otherwise being duly and sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that Genlyte's Motion be, and it hereby is, GRANTED in its entirety;

IT IS HEREBY ORDERED that the Defendant, Arch Lighting Group, provide complete answers and responses to Genlyte's Interrogatory Nos. 2 and 5 and Genlyte's Request for Production of Documents Nos. 2, 8, 13 and 14, including, without limitation, identification of all of ALS' end customers (i.e., the hospital or healthcare facility) which have purchased the accused products and production of the job specifications for such sales. This Order requires ALS to contact its distributors to obtain such information, if necessary; and

IT IS HEREBY ORDERED that ALS has _____ days in which to comply with

this Order.

SO ORDERED this ____ day of _____, 2006.

_____
William G. Young, U. S. D. J.

TENDERED BY:

/s/ John L. Capone_____
Counsel for Plaintiff,
Genlyte Thomas Group LLC