UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
            Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

            Defendant.

Civil Action No. 05-CV-10945 WJY

PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN
LIMINE REGARDING EXPERTS

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, submits this

Response to Defendant, Arch Lighting Group's ("ALS"), Motion in Limine Regarding

Experts and states:

INTRODUCTION

Because ALS for whatever reason chooses not to call an expert witness to testify

in this patent infringement action, it nevertheless seeks to deny that right to Genlyte.

ALS advances a hyper-technical but disingenuous contention that Genlyte missed a non-

existent deadline to file its expert report and also provided material designated "highly

confidential" to its experts in violation of the Protective Order as support for its motion.

Neither contention is worthy of a Motion in Limine.

Pursuant to a June 21, 2006 Scheduling Order, the Court stated:

Final Pretrial Conference set for NO SOONER than 12/4/2006 before Judge
William G. Young.  Jury Trial set for RUNNING TRIAL LIST as of
1/2/2007 before Judge William G. Young. … DISPOSITIVE MOTIONS
DUE by November 1, 2006 and DISCOVERY DEADLINE is November 1,
2006.

On October 19, 2006, Genlyte counsel, Robert Theuerkauf, contacted ALS counsel for deposition dates of Dr. Ian Lewin, who was ALS' expert for the Markman proceedings. (Lewin was unavailable for a deposition prior to the Markman hearing due to being out of the country). ALS counsel then informed Mr. Theuerkauf that the deadline had passed for filing expert reports. Mr. Theuerkauf disagreed and stated that Genlyte intended to file its reports on or before November 1, the deadline for discovery and dispositive motions. ALS counsel stated he would object to the filing of the expert reports. Genlyte and ALS counsel conferred by telephone on October 20, 2006 to discuss the matter but no resolution was reached.

Mr. Theuerkauf advised ALS counsel during the telephone conference that Genlyte had never received documents from ALS pursuant to certain discovery requests and that such documents were germane to the filing of the expert reports. Repeated requests for such documents had been made since August 2006 and ignored by ALS. Indeed, to this date Genlyte still has not received all the necessary documents, an issue which is subject of a separate motion to compel, to fully calculate its damages.

With respect to the disclosure of confidential information to Genlyte's damage expert, Mike Tate, Genlyte believed it had complied with the Protective Order agreed to by the parties relating to the experts. Provisions 8 and 9 of the Order allow for the disclosure of such information to the parties' experts without written consent from the producing party so long as the expert reviews the Protective Order and signs a statement confirming to be bound by the Protective Order. (Protective Order, attached as Exhibit 1). Mr. Tate did review the Protective Order and signed such a statement prior to receiving the discovery material. (Statement to be Bound by Protective Order Signed by

Mike Tate, attached as Exhibit 2). When the issue arose, however, Genlyte counsel again reviewed the Protective Order and acknowledged, pursuant to provision 10, that it should have notified ALS that the information was being provided to the expert.

Genlyte counsel also at that time discovered that certain documents which had been designated highly confidential were provided to Genlyte's expert, Thomas Lemons. Confusion arose as to the documents produced to Mr. Lemons because all but two of the documents in question had been produced in duplicate by ALS and had different designations. One set of documents was marked "highly confidential" while the other set was not so designated. Mr. Lemons had not yet signed a statement agreeing to be bound by the Protective Order. However, Genlyte counsel immediately obtained such a statement from Mr. Lemons and wrote to ALS counsel informing him of these matters. (Statement to be Bound by Protective Order Signed by Thomas Lemons, attached as Exhibit 3; Letter from Mr. Theuerkauf to Mr. Dorny, dated November 2, 2006, attached as Exhibit 4).

As detailed below, ALS' attempt to exclude Genlyte's experts should respectfully be denied.

<u>ARGUMENT</u>

I.    <u>GENLYTE'S EXPERT REPORTS WERE TIMELY SERVED</u>.

Local Rule 26.4 provides that "[u]nless otherwise directed by the judicial officer, the disclosure regarding experts required Fed. R. Civ .P. 26(a)(2) shall be made at least 90 days before the final pre-trial conference." A final pre-trial conference has not been set in this matter. Indeed, the Scheduling Order states that the final pre-trial would be

"NO SOONER than December 4, 2006." Thus, under the Local Rule, expert reports are not yet due. There has been no other order from the Court regarding experts.

Nevertheless, ALS argues that if there is no pre-trial conference set, Local Rule 26.4 does not apply and therefore the provisions of Fed. R. Civ. P. 26(a)(2)(C) come into play, requiring the reports to be filed 90 days prior to the first possible day of trial (January 2, 2002). (Memorandum in Support of Defendant's Motion in Limine Regarding Experts ("Defendant's Memorandum"), p. 4). However, Rule 26(a)(2)(C) clearly provides that the 90 day time limitation applies only if no other order is in effect. But, there is a Scheduling Order in effect and it sets forth that the final pre-trial conference will be at some date after December 4, 2006.

One thing is clear, even ALS does not know the deadline for expert reports. According to ALS, the reports should have been due on October 4, 2006, one month before the close of discovery. (Defendant's Memorandum, p. 4). ALS would derive this deadline as being 90 days prior to January 2, 2007 – the first day a trial would be held on the trailing docket. *Id.* However, ALS also argues for a September 6, 2006 cut off date because that was 90 days prior to the earliest day that could be set for the final pre-trial conference. *Id.* Nonetheless, ALS simply wants to pick a deadline while ignoring the fact that the deadline is to be triggered by the final pre-trial conference, which has yet to be scheduled.

Moreover, ALS would interpret the Scheduling Order to require expert reports to be submitted before discovery was even completed. This, of course, raises the specter that expert reports would have to be supplemented once discovery was completed to account for additional discovered information. This would render the time limit

meaningless. For example, in the present case, ALS has not produced documents, despite repeated requests since August from Genlyte counsel, necessary for a full computation of damages by Genlyte's expert. Nevertheless, ALS would require the report be filed anyway. Consequently, ALS' attempt to exclude Genlyte's experts should respectfully be denied.

II.    THE TIMING OF GENLYTE'S EXPERT REPORTS DOES NOT HARM ALS.

Regardless, the timing of Genlyte's expert reports is harmless and does not prejudice ALS. Therefore, contrary to ALS' assertions, the timing of Genlyte's expert reports does not present a situation that requires their preclusion. *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (expert evidence not to be precluded where the timing of such reports was substantially justified or harmless). The rules regarding expert disclosures "seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion, and thereby potentially deprive [the opposing party] of the opportunity to 'depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-related discovery." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004). Genlyte has not, and will not, gain an unfair tactical advantage. ALS will have had over a month, at least, to submit rebuttal expert reports and to depose Genlyte's experts prior to the final pre-trial conference (which is to occur on some date after December 4, 2006). Further, Genlyte has informed ALS that it would make its experts available for a deposition and Genlyte fully expects ALS to have an opportunity to file rebuttal expert reports.

Moreover, *Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49 (1st Cir. 2001), cited by ALS, fails to support its position. In that case, the expert affidavit was precluded from a

summary judgment motion because it was not disclosed until more than three months after the close of discovery and after the opposing party had filed a motion for summary judgment. Genlyte's expert reports, on the other hand, were served prior to the close of discovery and the dispositive motion deadline and more than two months before any potential trial date. In other words, the timing of Genlyte's expert reports was not the "sneak attack" that the rules intend to prevent. *See Lohnes*, 272 F.3d at 60.

Genlyte served its expert reports on October 24 and 27, 2006. ALS had, and still does have, the opportunity to depose[1] Genlyte's experts and file rebuttal expert reports. Consequently, the timing of Genlyte's expert reports is harmless and does not prejudice ALS.[2]

Further, ALS has no standing to complain about the timing of Genlyte's expert reports since ALS impeded Genlyte's ability to provide expert reports by failing to timely supplement its document production and has refused to produce discovery germane to such reports. On August 18, 2006, Genlyte's counsel wrote counsel for ALS informing him that certain documents requested in discovery had not yet been produced. (Letter attached as Exhibit 5). On August 23, 2006, ALS counsel responded that he was traveling and would respond on his return, but that he believed all requested documents had been produced. (Email attached as Exhibit 6). On August 30, 2006 Genlyte counsel emailed ALS counsel informing him that certain documents responsive to other areas had

---

[1] There is even less of an imposition on ALS in deposing Mr. Lemons because Mr. Lemons is located in Salem, Massachusetts.

[2] ALS further contends that it is prejudiced because discovery is now closed. However, ALS first notified Genlyte less than two weeks prior to the close of discovery that it wanted a Rule 30(b)(6) deposition and the deposition of the co-inventor, Roy Crane. Due to this late notice and the scheduling conflicts of the Genlyte designee and Mr. Crane, Genlyte and ALS agreed that the depositions would be conducted in November, after the close of discovery. The Rule 30(b)(6) deposition took place on November 9, 2006 and the deposition of Roy Crane is still to be taken. Therefore, it is disingenuous for ALS to assert that it would be prejudiced to now have to take the depositions of Genlyte's experts after the close of discovery when ALS has no issue with taking the two depositions it requested.

likewise not been produced by ALS. (Email attached as Exhibit 7). On August 31, 2006 ALS counsel wrote Genlyte counsel asserting that all requested documents had been produced. (Letter attached as Exhibit 8). Further, on August 31, 2006, Genlyte counsel again wrote ALS counsel informing him that ALS had failed to produce documents responsive to discovery requests relating to Genlyte's damages and the newly discovered Latitude product.[3] (Letter attached as Exhibit 9). In particular, ALS had yet to produce all of the documents necessary for Genlyte to fully calculate its damages, including ALS' sales figures for the accused products for 2006 and the identification of ALS' end customers.

On September 6, 2006 Genlyte deposed Scott Davis, President and owner of ALS. During that deposition, Mr. Davis identified several relevant categories of documents that had not been produced. ALS assured Genlyte at the deposition that all documents would be produced. On October 17, 2006 Genlyte counsel wrote ALS counsel advising that the promised documents identified during the deposition had not yet been produced. (Letter attached as Exhibit 10). In particular, ALS had yet to produce photometric reports it had in its possession which would potentially factor into Genlyte's expert report on infringement and other documents bearing on Genlyte's damage calculation.

On October 19, 2006 Genlyte counsel e-mailed ALS counsel requesting dates for Dr. Ian Lewin's deposition. Dr. Lewin was the expert for ALS with respect to the Markman issues. Moreover, Genlyte counsel again requested the documents promised during the deposition of Mr. Davis. ALS counsel responded, "I will contact Mr. Lewin regarding a deposition. We should have the documents available shortly. Are you

---

[3] ALS' Latitude product is a ceiling-mounted, multi-fixture system similar to ALS' current accused products and Genlyte believes in light of product information available on ALS' website that such product may likewise infringe the patent at issue.

available to talk tomorrow to discuss these and other issues?" (Email from Dorny to Theuerkauf, dated October 19, 2006, attached as Exhibit 11). At no time during any of the correspondence discussed above did counsel for ALS assert that the expert disclosure deadline had passed.

On October 20, 2006, counsel for ALS wrote relating to the outstanding discovery issues. ALS counsel stated, "With respect to sales, ALS provided sales through the date of the response. ALS will shortly update its sales information to account for sales in 2006." Also, in this letter, counsel for ALS agreed to make ALS' accounting records relating to expenses available for inspection and copying. Further, counsel for ALS objected to discovery relating to ALS' Latitude product, which Genlyte discovered just prior to the deposition of Mr. Davis. (Letter attached as Exhibit 12). On that same day, October 20th, counsel for ALS during a telephone conversation voiced for the first time, despite the outstanding discovery issues, ALS' belief that any expert reports would be untimely.

Despite the outstanding discovery and the inability of Genlyte's experts to prepare a complete report, Genlyte served expert reports on October 24 and 27, 2006. On October 30, 2006 counsel for ALS notified counsel for Genlyte of ALS' position that Genlyte's expert reports were untimely. On that same day, counsel for Genlyte received additional documents from ALS germane to Genlyte's expert reports. Counsel for Genlyte received additional sales documents as well as some of ALS' photometric reports and installation instructions for the accused products. Nonetheless, ALS is still producing relevant documents. In fact, counsel for ALS informed counsel for Genlyte during a telephone conference on November 20, 2006 that additional documents (those

bearing on the discovery issues that counsel were able to resolve during a November 6, 2006 telephone conference) would be produced in the next day or two.

Consequently, ALS can not seriously claim that it is prejudiced by the timing of Genlyte's expert reports when ALS has failed to fully respond to Genlyte's discovery requests with all the information necessary for Genlyte's experts to provide a complete report.

III.   ACCIDENTAL DISCLOSURE OF CONFIDENTIAL INFORMATION TO THE EXPERTS IS NOT GROUNDS TO EXCLUDE THE EXPERT REPORTS.

ALS also seeks to exclude Genlyte's expert reports on the grounds that the Protective Order was not literally complied with, despite the fact there is no damage or prejudice to ALS.  The Protective Order, in its relevant part, provides the following:

> 8.    Discovery Material designated by the Producing Person as "Confidential" or information derived therefreom may be disclosed or made available without written consent from the Producing Person only to the following persons:
>
> *        *        *
>
> (b)    outside experts or consultants, otherwise unaffiliated with a party or its affiliates, retained in good faith to assist counsel in this action; provided that such experts or consultants confirm in writing their agreement to be bound by this Order prior to the receipt of an Confidential Discovery Material and a copy of such signed undertaking is retained by counsel to the party making disclosure to the expert or consultant.
>
> 9.    Discovery Material designated by the Producing Person as "Highly Confidential" or information derived therefreom may be disclosed or made available without written consent from the Producing Person only to the following persons:
>
> (a)    the persons described in paragraphs 8(a), (b), (d), (e), (g), and (h).
>
> *        *        *

10.  At least five (5) days prior to disclosing Confidential Discovery Material to a consulting and/or testifying expert, the Inspecting Party must give notice to the Producing Person and provide the Producing Person with the expert's curriculum vitae.  If the Producing Person objects to such disclosure, such party must inform the Inspecting Party within five (5) days of receiving notice and bring an appropriate motion before the Court to prevent such disclosure within fourteen (14) days of receiving notice. Until the Court makes a determination, the Inspecting Party shall withhold disclosing any Confidential Discovery Material to its consulting and/or testifying expert.  Prior to disclosing Confidential Discovery Material to a consulting and/or testifying expert, such expert shall be provided with a copy of this Order and sign a sworn statement certifying that the expert agrees to be bound by this Order and will not use any Confidential Discovery Material for any purpose other than in connection with this lawsuit.

(Exhibit 1).

Genlyte submitted certain confidential discovery material to Michael Tate, Genlyte's expert on damages.  In compliance with paragraphs 8 and 9 of the Protective Order, Mr. Tate signed a confidentiality declaration agreeing to be bound by the Protective Order.  (Exhibit 2).  However, Genlyte inadvertently failed to notify ALS that it was furnishing the documents to Mr. Tate.  When notified by ALS that Genlyte did not comply with Provision 10, counsel for Genlyte initially perceived that a conflict existed in the Protective Order.  Upon review of the Protective Order, however, counsel for Genlyte agreed that counsel for ALS should have been notified prior to the disclosure of the material.  (Exhibit 4).  Nonetheless, as discussed above, Mr. Tate has agreed to be bound by the Protective Order and the documents produced to him are safe from any disclosure outside the bounds of this litigation.

With respect to Genlyte's expert on infringement, Thomas Lemons, counsel for Genlyte submitted certain documents to Mr. Lemons which it did not initially believe were confidential.  Confusion arose as to the documents produced to Mr. Lemons

10

because all but two of the documents in question had been produced in duplicate by ALS and had different designations. One set was marked "highly confidential" while the other set was not so designated. Mr. Lemons had not yet signed a statement agreeing to be bound by the Protective Order. However, counsel for Genlyte immediately obtained a statement from Mr. Lemons agreeing to be bound by the Protective Order (Exhibit 3) and counsel for Genlyte communicated this to counsel for ALS. (Exhibit 4).

There has been no deliberate violation of the Protective Order by counsel for Genlyte, nor has the disclosure of such confidential material to Genlyte's experts without first notifying counsel for ALS damage or prejudice ALS in any way. ALS knew well in advance that Mr. Lemons had been retained as Genlyte's expert as Mr. Lemons submitted a Markman report. Although ALS initially complained about Mr. Lemons, asserting that Mr. Lemons had previously done work for ALS, ALS never sought to disqualify Mr. Lemons. Mr. Lemons has signed the agreement set forth in the Protective Order. With respect to Mr. Tate, he signed the agreement prior to being provided any confidential information.

What is important is that the confidentiality of ALS' documents has been preserved as contemplated by the Protective Order and, consequently, ALS has not been damaged. Finally, ALS has not, nor is there any basis for ALS, to object to Mr. Tate or Mr. Lemons as Genlyte's experts. Therefore, counsel for Genlyte's inadvertent failure to literally comply with the Protective Order does not warrant preclusion of Genlyte's experts.

<u>CONCLUSION</u>

For all of the foregoing reasons, Genlyte respectfully requests that the Court deny ALS' Motion in Limine to preclude the testimony of Genlyte's experts.

Respectfully submitted,

____/s/ John L. Capone_____
James E. Milliman (Pro hac vice)
James R. Higgins, Jr. (Pro hac vice)
Robert J. Theuerkauf (Pro hac vice)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
CESARI AND MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

*Counsel for Plaintiff, Genlyte Thomas Group LLC*

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this  21st  day of November, 2006.

/s/ John L. Capone_____
*Counsel for Plaintiff, Genlyte Thomas Group LLC*

# EXHIBIT 1

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company

      Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

      Defendant.

Civil Action No. 05-CV-10945 REK

## STIPULATED PROTECTIVE ORDER

The parties to this action having determined that certain documents, testimony, or

information produced or given during discovery in these proceedings may constitute commercial,

financial, trade secret and/or other proprietary information which should be kept confidential in

order to protect the legitimate business interests of the parties, their customers and business

associates, and other persons, and to expedite the discovery process and permit it to proceed

without delay occasioned by disputes regarding such claims of confidentiality. Therefore,

pursuant to Fed. R. Civ. P. 26(c), the parties, each by counsel, jointly move for entry of the

within Order.

IT IS HEREBY STIPULATED by the attorneys for the parties, subject to the approval of

the Court, that:

1.     <u>Scope of Order</u>. This Order governs the treatment of documents, depositions,

deposition exhibits, deposition transcripts and deposition video tapes, interrogatory answers,

responses to requests to admit and other written, recorded, computerized, electronic or graphic

matter, or other information ("Discovery Material") produced by any party or any nonparty who

agrees to the terms of this Order (the "Producing Person") in this Action that is designated

confidential by the Producing Person in accordance with the procedures set forth below.

   2.     Designation of "Confidential' or "Highly Confidential" Matter.  A Producing

Person producing Discovery Material to any other party (the "Inspecting Party") pursuant to

formal or informal discovery (including but not limited to Fed. R. Civ. P. 30, 31, 33, 34 and 36)

may designate only such portion of such Discovery Material as "Confidential" that contains or

would otherwise disclose information of a non-public nature which the Producing Person

believes in good faith to be a trade secret or other confidential research, development, or

commercial information.  A Producing Person producing Discovery Material to any Inspecting

Party may designate only such portion of such Discovery Material as "Highly Confidential" that

contains or discloses information that the producing party deems to be particularly sensitive

personal, business or financial information, the disclosure of which beyond the persons to whom

disclosure is allowed in this Order the Producing Person believes, in good faith, could result in

business or personal harm.  Such designations may only be made when the Producing Person has

a good-faith basis for considering the Discovery Material to constitute "Confidential" or "Highly

Confidential" Discovery Material.  All Discovery Material so designated and all information

derived therefrom shall be referred to in this Order as "Confidential Discovery Material" and

shall be treated in strict accordance with the terms of this Order.

   3.     Designation of Confidential Discovery Material.  The designation of Confidential

Discovery Material shall be made by marking the cover page with a stamp containing the words

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or by designating such information as

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by description in discovery responses or

2

in correspondence accompanying the discovery responses or documents.  With respect to multi-page documents that contain "Confidential" or "Highly Confidential" information, the designation may be made by marking only the first page thereof "Confidential" or "Highly Confidential" so long as such multi-page documents are securely bound.  With respect to Confidential Discovery Material in computerized, video tape or electronic format, the Producing Person may inform the Inspecting Party in writing of its designation as Confidential Discovery Material. The Inspecting Party shall treat any printouts of such material in accordance with the treatment afforded Confidential Discovery Material elsewhere in this Order. With respect to deposition transcripts, the Producing Person may, on record of a deposition, or within 21 business days after receipt of the final of each volume of transcript of such deposition and/or video tape thereof, designate any portion or portions of such transcript and/or video tape thereof, including exhibits, as Confidential Discovery Material under the terms of this Order.  Until such time period elapses, the entire volume of the deposition transcript (and any draft transcripts) shall be treated as "Highly Confidential" unless otherwise specified in writing or on the record of the deposition by the Producing Person.  All copies of deposition transcripts and/or video tapes thereof that contain Confidential Discovery Material shall be prominently marked "Confidential" or "Highly Confidential" on the cover and/or label thereof and, if filed with the Court, the portions of such transcripts and/or video tapes so designated shall be filed under seal.

    4.    <u>Prior Production of Confidential Discovery Material</u>.  "Confidential" or "Highly Confidential" treatment may be claimed for Discovery Material produced prior to the entry of this Order either by (a) providing counsel for Inspecting Party with new copies that have been stamped "Confidential" or "Highly Confidential" or (b) providing counsel for the Inspecting Party with a written description of those documents for which "Confidential" or "Highly

3

Confidential" treatment is desired and the request that counsel for the Inspecting Party treat any

such documents and summaries thereof as "Confidential" or "Highly Confidential."

5.    Inadvertent Production of Confidential or Highly Confidential Matter. In the

event any Producing Person discovers that it has inadvertently produced Confidential Discovery

Material to an Inspecting Party without correctly designating such material as "Confidential" or,

"Highly Confidential" the Producing Person may thereafter claim "Confidential" or "Highly

Confidential" treatment for the Confidential Discovery Material by notifying the Inspecting

Party in writing of the inadvertent disclosure and identifying the Confidential Discovery Material

for which "Confidential" or "Highly Confidential" treatment is claimed, and the parties shall

thereafter treat such documents or information in accordance with this Order.

6.    Inadvertent Production of Privileged or Protected Documents. Any discovery

documents produced in this litigation may be later designated as "Attorney-Client Privilege" or

"Attorney Work Product" promptly upon discovery by the Producing Person that any such

privileged or protected document was produced through inadvertence, mistake or other error, and

no waiver of privilege or immunity shall be deemed to have occurred. Upon such designation,

the Inspecting Party shall promptly collect all such documents and copies thereof and return

them to the Producing Person. Notwithstanding the foregoing, the Inspecting Party reserves the

right to contest the assertion of privilege or other protection with respect to any document.

7.    Use of Confidential or Highly Confidential Matter. Except with the prior written

consent of the Producing Person or other person designating Discovery Material as

"Confidential" or "Highly Confidential," no such stamped or designated material may be

disclosed to any person except as hereinafter provided. Confidential Discovery Material shall be

used only for the prosecution and/or defense of the above-captioned action or any appeals

4

therefrom, and may be disclosed only under the circumstances and to the persons specifically

provided for in this or subsequent Orders of the Court, or with the express written consent of the

Producing Person with respect to specifically identified Confidential Discovery Material, and

shall not be used or employed for any other purpose whatsoever; provided, however, that nothing

herein is intended to waive any objections to the admissibility or discoverability of any

Discovery Material in this or any other action or proceeding or any other objections to such

Discovery Material or the production thereof. Further, nothing in this Order shall be construed

as preventing an Inspecting Party from advising his or her client based on "Highly Confidential"

material to which the client does not have access, so long as the substance of the "Highly

Confidential" material is not disclosed to the client.

       8.    <u>Disclosure of Discovery Material Designated as "Confidential"</u>.  Discovery

Material designated by the Producing Person as "Confidential" or information derived therefrom

may be disclosed or made available without written consent from the Producing Person only to

the following persons:

       (a)    counsel of record to an Inspecting Party, including attorneys, clerks, paralegals,

secretaries and other staff employed by such counsel;

       (b)    outside experts or consultants, otherwise unaffiliated with a party or its affiliates,

retained in good faith to assist counsel in this action; provided that such experts or consultants

confirm in writing their agreement to be bound by this Order prior to the receipt of any

Confidential Discovery Material and a copy of such signed undertaking is retained by counsel to

the party making disclosure to the expert or consultant;

       (c)    parties to this action, their officers, directors, board members and representatives,

employees or former employees, and in-house counsel; provided that counsel making such

5

disclosure shall inform each such person that the Discovery Material is confidential and may not be disclosed or used except as provided by this Order;

(d)    clerical and data processing personnel retained by counsel to the parties and involved in the production, reproduction, organizing, filing, coding, cataloging, converting, storing, retrieving, and review of Confidential Discovery Material; provided that counsel making such disclosure shall inform each such person that the Discovery Material is confidential and may not be disclosed or used except as provided by this Order;

(e)    the Court, pursuant to the terms of this Order;

(f)    witnesses who appear at any deposition, hearing or trial in this Action, but only to the extent disclosure occurs in preparation for and/or during such deposition, hearing or trial; provided that counsel making such disclosure shall inform each such person that the Discovery Material is confidential and may not be disclosed or used except as provided by this Order;

(g)    court reporters who record testimony taken in the course of this action or persons operating video recording equipment of and at such testimony; and

(h)    any other person as agreed by all parties in writing or as the Court in this action may order in the interest of justice, upon such terms as the Court may deem proper.

9.    <u>Disclosure of Discovery Material Designated as "Highly Confidential"</u>. Discovery Material designated by the Producing Person as "Highly Confidential" or information derived therefrom may be disclosed or made available without written consent from the Producing Person only to the following persons:

(a)    the persons described in paragraphs 8(a), (b), (d), (e), (g) and (h);

(b)    in-house counsel of the parties; and

6

(c)    witnesses who appear at any deposition, hearing or trial in this action, provided that such witnesses are limited to the author(s) and recipient(s) of any such material and any other person(s) who it is apparent from the face of the material have seen such material before the commencement of this action, but only to the extent disclosure occurs in preparation for and/or during such deposition, hearing or trial; provided that counsel making such disclosure shall inform each such person that the Discovery Material is "Highly Confidential" and may not be disclosed or used except as provided by this Order.

10.    <u>Disclosing Confidential Discovery Material to Experts and/or Consultants</u>.  At least five (5) days prior to disclosing Confidential Discovery Material to a consulting and/or testifying expert, the Inspecting Party must give notice to the Producing Person and provide the Producing Person with the expert's curriculum vitae.  If the Producing Person objects to such disclosure, such party must inform the Inspecting Party within five (5) days of receiving notice and bring an appropriate motion before the Court to prevent such disclosure within fourteen (14) days of receiving notice.  Until the Court makes a determination, the Inspecting Party shall withhold disclosing any Confidential Discovery Material to its consulting and/or testifying expert.  Prior to disclosing Confidential Discovery Material to a consulting and/or testifying expert, such expert shall be provided with a copy of this Order and sign a sworn statement certifying that the expert agrees to be bound by this Order and will not use any Confidential Discovery Material for any purpose other than in connection with this lawsuit.

11.    <u>Filing Confidential Discovery Material With the Court</u>.  The Clerk of the Court is directed to maintain under seal all documents filed with the Court and designated as "Confidential" or "Highly Confidential" and to make them available only to the Court, its officers and to counsel for the parties in this proceeding until further order of the Court:

Confidential Discovery Material filed with the Court shall be submitted in an appropriate envelope marked wit a statement substantially in the following form:

> CONFIDENTIAL. This envelope contains confidential information which is subject to the Protective Order entered by the Court in Genlyte Thomas Group LLC v. Architectural Lighting Systems, a division of Arch Lighting Group, Civil Action No. 05-CV-10945 REK, United States District Court, District of Massachusetts, and is not to be opened nor its contents displayed or revealed except by Court order or by written agreement of the parties

12.    <u>Photocopies</u>. The Inspecting Party may make and use photocopies of a document designated confidential if such copies are used only for purposes and in manners consistent with this Order and only provided that all such copies are returned to counsel for the Producing Party or destroyed within the time and in the manner provided herein.

13.    <u>Challenging Confidentiality Designations</u>. Nothing herein shall preclude any party from challenging before the Court a "Confidential" or "Highly Confidential" designation of any document(s) made by any Producing Person pursuant to the terms of this Order

14.    <u>Return or Destruction of Confidential Matter</u>. Within thirty (30) days of final adjudication, including but not limited to final adjudication of any appeals or petitions for extraordinary writs, or any agreed resolution, all copies of Confidential Discovery Material and any summaries or extracts thereof in the actual or constructive custody and possession of any party except the owner, or counsel for any party except the owner, shall be returned to counsel for the Producing Person by all persons to whom they have been furnished or destroyed and the Inspecting Party shall provide to the Producing Person an affidavit which attests to the destruction of such Confidential Discovery Material.

8

15. No Effect on Use by Producing Person. This Order has no effect upon, and its scope shall not extend to, any Producing Person's use of its own Confidential Discovery Material.

16. No Disclosure to the Jury. This Order or its existence shall not be offered or admitted into evidence at trial, argued to the jury, or otherwise disclosed to the jury.

17. Modification; No Effect on Discovery Objections. Nothing in this Order shall prevent any party or other person from seeking modification of this Order or from objecting to discovery it believes to be otherwise improper.

18. Notification of Compelled Disclosure. If another court or administrative agency subpoenas or orders discovery of Confidential Discovery Material that a party has obtained under the terms of this Order, such party shall promptly notify the counsel for the Producing Person of the pendency of such subpoena or order.

19. Counsel to Control Documents. The counsel to the parties are responsible for employing reasonable measures, consistent with this Order, to control duplication of, access to, and, distribution of Confidential Discovery Material. Parties shall not duplicate any Confidential Discovery Material except working copies and copies for filing in court under seal.

20. Survival of Order. After termination of this action, this Order shall continue to be binding on the parties hereto, and upon all persons to whom Confidential Discovery Material has been disclosed or communicated, and this Court shall retain jurisdiction over the parties for enforcement of its provisions.

SO ORDERED this _____ day of _____, 2005.

_____
**ROBERT E. KEETON**
**SENIOR U.S. DISTRICT JUDGE**

9

The undersigned hereby stipulate to entry of above Order to be entered by the Court.

GENLYTE THOMAS GROUP LLC

By Its Attorneys,

/rjtheuerkauf/

James E. Milliman (*pro hac vice*)
James R. Higgins, Jr. (*pro hac vice*)
Robert J. Theuerkauf (*pro hac vice*)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY 40202
Telephone: (502) 584-1135
Facsimile: (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
CESARI AND MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
Telephone: (617) 951-2500
Facsimile: (617) 951-3927

Dated:  December 27, 2005

ARCHITECTURAL LIGHTING SYSTEMS

By Its Attorneys,

/bndorny/

Brett N. Dorny, BBO# 628977
LAW OFFICE OF BRETT N. DORNY
321 Church Street
Northborough, Massachusetts 01532

Dated:  December 27, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br>  a Delaware Limited Liability Company,<br>    Plaintiff<br><br>        v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS,<br>  a Division of ARCH LIGHTING GROUP,<br>  a Rhode Island Corporation,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  NO. 05-10945-REK<br>)<br>)<br>)<br>)<br>) |

ORDER
January 3, 2006

      The proposed Protective Order filed by the parties in this case on December 27, 2005, is approved subject to the following modification:

        Notwithstanding any provision or implication to the contrary:

    (1)    No document claimed to be subject to this order may be filed with the Clerk without advance approval in writing by the court. This requirement is imposed for the protection of the interests of the parties against risks of accidental disclosure and to conserve scarce storage space and time of court personnel.

    (2)    The proposed Protective Order is subject to further modification by order of this court, on the court's own initiative or upon motion by any person having an interest affected by the order, for good cause shown. This paragraph applies to any provision regarding "closing the courtroom" during a hearing and excluding observers, including representatives of media.

Any party wishing to object to this modification must do so by written objection filed on or before two weeks from this date.

_____/s/Robert E. Keeton_____

Robert E. Keeton
Senior United States District Judge

2

# EXHIBIT 2

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**GENLYTE THOMAS GROUP LLC,**
  a Delaware Limited Liability Company
      Plaintiff

              v.

**ARCHITECTURAL LIGHTING SYSTEMS,**
  a Division of **ARCH LIGHTING GROUP,**
  a Rhode Island Corporation,
      Defendant

**CIVIL ACTION
NO. 05-10945-REK**

## UNDERTAKING OF MICHAEL E. TATE

I, Michael E. Tate, have read the Stipulated Protective Order dated December 27, 2005
and Order dated January 1, 2006 in the above-captioned matter. I agree to be bound by
the terms contained in both of these documents.

_Michael E. Tate_

Michael E. Tate
Vice President
CRA International, Inc.
101 N. Wacker Drive
Suite 1600
Chicago, Illinois 60606
August 16, 2006

# EXHIBIT 3

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company

     Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

     Defendant.

Civil Action No. 05-CV-10945 REK

## UNDERTAKING OF THOMAS M. LEMONS

    I, Thomas Lemons, have read the Stipulated Protective Order dated December 27, 2005 and Order dated January 1, 2006 in the above-captioned matter. I agree to be bound by the terms contained in both of these documents.

Thomas M. Lemons
President
TLA-Lighting Consultants, Inc.
7 Pond Street
Salem, Massachusetts 01979

# EXHIBIT 4

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

November 2, 2006

*Via Tele-Fax and First Class Mail*

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:   *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
      U.S. District Court, District of Massachusetts
      Civil Action No. 05-CV-10945 REK

Dear Brett:

As a follow-up to my letter of yesterday, I have looked again at the Protective Order in this case and realize what I initially thought was a contradiction is not the case. Although written consent is not required, I now realize that Paragraph 10 requires notification to the producing party before confidential information is to be shared with a consulting or testifying expert. This mistake was inadvertent. As I mentioned, however, Michael Tate did sign a statement agreeing to be bound by the Protective Order and ALS' confidential information is safe.

Further, in making this review, I also realized that a couple of documents produced to Tom Lemons were likewise marked confidential without first obtaining a statement from Mr. Lemons agreeing to be bound by the Protective Order. There was some confusion because several documents produced by ALS were duplicates and one set was not marked confidential while the other set was so designated. Nonetheless, two documents (Exhibits K and L to Mr. Lemons' Declaration) marked confidential were inadvertently produced to Mr. Lemons. However, we are obtaining a signed statement from Mr. Lemons agreeing to be bound by the Protective Order and the information is likewise safe. Again, the mistake was inadvertent.

I apologize for any confusion this has caused. Please contact me if you would like to further discuss this issue.

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
November 2, 2006
Page 2

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:     James E. Milliman, Esq.
        James R. Higgins, Jr., Esq.
        John L. Capone, Esq.

# EXHIBIT 5

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower

Louisville, Kentucky
40202

502.584.1135

502.561.0442 fax

www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

August 18, 2006

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
321 Church Street
Northborough, Massachusetts 01532

Re:  *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
     U.S. District Court, District of Massachusetts
     Civil Action No. 05-CV-10945 REK

Dear Brett:

This letter is in regards to Arch Lighting Group, Inc.'s ("ALS") answers and responses to Genlyte Thomas Group LLC's ("Genlyte") First Set of Interrogatories and Requests for Production of Documents.

Genlyte's Request No. 6 seeks all documents relating to ALS' internal documents which concern U.S. Patent No. 5,038,254 ("the '254 Patent"). In answering Genlyte's Interrogatories, ALS stated that Scott Davis and other employees reviewed the '254 Patent, but no documents evidencing such review were produced. Please provide all of ALS' documents responsive to Request No. 6 or confirm that no such documents exist.

In response to Request Nos. 7, 18 and 21, ALS stated that it would produce responsive documents. However, no such documents were produced. Please provide all of ALS' documents responsive to Request Nos. 7, 18 and 21 or confirm that no such documents exist.

Finally, ALS produced U.S. Patent No. 3,928,757. Please identify whether or not this patent was produced in response to Request No. 22. If so, please confirm that this is the only document in ALS' possession responsive to Request No. 22. Otherwise, please produce all responsive documents.

We continue to review ALS' answers and responses to Genlyte's discovery requests and reserve the right to challenge any privileges asserted by ALS and/or the adequacy of ALS' discovery answers and responses. This letter is in no way a waiver of any other challenges Genlyte may bring against ALS' discovery responses.

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
August 18, 2006
Page 2


We look forward to ALS' cooperation in fully responding to Genlyte's discovery requests and receiving the information discussed above.  If you have any questions, please contact us.


Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf


RJT

cc:    Daniel R. Fuller, Esq.
       James E. Milliman, Esq.
       James R. Higgins, Jr., Esq.
       John L. Capone, Esq.

# EXHIBIT 6

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

**From:** &lt;dornyl2@dornylaw.com&gt;
**To:** &lt;rtheuerkauf@middreut.com&gt;
**Date:** 8/23/2006 1:55 AM
**Subject:** Facsimile of August 21

Robert:

I have received your fax of August 21 regarding the documents produced by ALS. I am traveling this week. I will respond to your specific requests next Monday when I am back in the office. I believe that all requested documents were produced.

Brett

# EXHIBIT 7

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

## Robert Theuerkauf - Genlyte v. ALS

| | |
|---|---|
| **From:** | Robert Theuerkauf |
| **To:** | Dorny, Brett |
| **Date:** | 8/30/2006 4:33 PM |
| **Subject:** | Genlyte v. ALS |
| **CC:** | Higgins, Jim; Milliman, Jim |

Dear Brett:

In addition to my letter of August 18, 2006, it appears that ALS has not produced information (other than a sales/ordering spec sheet) relating to the Multmed 2x2 fixtures (e.g., styles D, E and F).  This information is responsive to at least Genlyte's Document Request Nos. 9, 12, 13, 14, 15, 18, 20 and 21.  Please provide all of ALS' documents relating to the Multmed 2x2 fixtures.

As stated in the August 18th letter, we continue to review ALS' answers and responses to Genlyte's discovery requests and reserve the right to challenge any privileges asserted by ALS and/or the adequacy of ALS' discovery answers and responses.  This email is in no way a waiver of any other challenges Genlyte may bring against ALS' discovery responses.

We look forward to ALS' cooperation in fully responding to Genlyte's discovery requests.
Sincerely,

Robert J. Theuerkauf
Registered Patent Attorney
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202
Office Phone: (502) 584-1135
Direct Dial: (502) 625-2747
Facsimile: (502)561-0442
email:rjt@middreut.com

Notice: This email contains information from the law firm of Middleton Reutlinger which may be confidential or privileged. The information is intended to be for the use of the above addressee. If you are not the intended recipient, please be advised that any disclosure, copying, distribution, or use of the contents of this correspondence is prohibited. If you have received this communication in error, please notify us immediately and delete this email. Thank you.

# EXHIBIT 8

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS



386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

*Brett N. Dorny*
*Direct*
bndorny@dornylaw.com

*508-709-0493*

*508-519-9185 Fax*

August 31, 2006

VIA FACSIMILE AND US MAIL

Robert J. Theuerkauf, Esquire
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

        Re:    Genlyte Thomas Group LLC v. Arch Lighting Group, Inc.
                Civil Action No. 05-CV-10945 REK

Dear Robert:

       In response to your letter of August 18, 2006 and email of August 30, 2006, the documents previously produced by ALS are complete and responsive to all requests. Specifically, ALS has no documents responsive to Requests No. 6. With respect to Requests Nos. 7 and 22, ALS produced U.S. Patent No. 3,928,757. With respect to Request No. 18, ALS produced an electronic copy of a powerpoint presentation which compared the MulTMed products to various competitive products, including Genlyte's products. With respect to Request No. 21, ALS produced all documents relating to the design, development, manufacture and sale of the MulTMed products. Furthermore, ALS has produced all documents relating to the MulTMed 2x2 product including design and sales documents.

       If you have any further questions regarding ALS's document production, please contact me.

                        Very truly yours,

                        Brett N. Dorny

*Specializing In Intellectual Property Law*

# EXHIBIT 9

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS



MIDDLETON
REUTLINGER

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

August 31, 2006

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:   *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
      U.S. District Court, District of Massachusetts
      Civil Action No. 05-CV-10945 REK

Dear Brett:

    This letter is in regards to Arch Lighting Group, Inc.'s ("ALS") answers and responses to Genlyte Thomas Group LLC's ("Genlyte") First Set of Interrogatories and Requests for Production of Documents and supplements my letter of August 18, 2006 and email of August 30, 2006.

    ALS has only provided sales information for the Multmed through 2005. Please update ALS' sales information (including, but not limited to, invoices, quotes and transaction histories) for 2006. Additionally, in answering Interrogatory No. 19, ALS identified costs of goods sold and sales, administrative and overhead costs. However, ALS did not produce any documents relating to, or evidencing, the costs of goods sold or its other costs. Such information should have been provided, at a minimum, in response to Request No. 2. Therefore, please provide all documents relied upon by, or evidencing, ALS' answer to Interrogatory No. 19. Further, ALS' answer to Interrogatory No. 19 should be supplemented to include its 2006 sales.

    Further, ALS has not identified, or produced any documents identifying, the end customers of the Multmed products it has sold. Such information should have been provided in response to Interrogatory No. 2 and Request Nos. 2 and 13. The information provided to date only identifies the electrical/lighting contractor or representative. Moreover, ALS has not provided any of the lighting specifications for any of the jobs for which ALS made a sale of a Multmed product. These documents should have also been provided in responding to Request No. 13. Therefore, please provide the requested information.

    Finally, it has come to our attention that ALS has placed on the market a dual function patient bed light referred to as the "Latitude Exam/Ambient." However, this

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
August 31, 2006
Page 2

product was not identified by ALS nor did ALS produce any documents relating to this product. Genlyte's interrogatories and requests for production of documents specifically requested information relating to "all ceiling-mounted medical lighting systems . . . wherein said lighting system includes more than one light source." Therefore, please produce all responsive information and documents relating to this product.

We continue to review ALS' answers and responses to Genlyte's discovery requests and reserve the right to challenge any privileges asserted by ALS and/or the adequacy of ALS' discovery answers and responses. This letter is in no way a waiver of any other challenges Genlyte may bring against ALS' discovery responses.

We look forward to ALS' cooperation in fully responding to Genlyte's discovery requests and receiving the information discussed above. If you have any questions, please contact us.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:     Daniel R. Fuller, Esq.
        James E. Milliman, Esq.
        James R. Higgins, Jr., Esq.
        John L. Capone, Esq.

# EXHIBIT 10

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

October 17, 2006

*Via Telefax and First Class Mail*

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:     *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
        U.S. District Court, District of Massachusetts
        Civil Action No. 05-CV-10945 REK

Dear Brett:

During the deposition of the President of Arch Lighting Group ("ALS"), Scott A. Davis, on September 6, 2006, several relevant categories of documents were identified by Mr. Davis, which ALS has not yet to produce in this litigation. The documents identified by Mr. Davis include:

- Photometric reports of ALS' accused products;
- Installation instructions of ALS' accused products;
- Advertisements relating to ALS' accused products;
- ALS' quarterly reports (rating the overall margins of profitability for ALS' product lines) since the inception of ALS' accused products and ALS' quarterly reports for the two years prior to the inception of ALS' accused products; and
- ALS' customer files for its accused products.

Mr. Davis also stated during his deposition that a summary report of the annual sales of the ALS' accused products could be generated.

At the time of the deposition, you indicated that ALS would produce all of the above-mentioned documents, but we have yet to receive them. Please advise us as to when we can expect to receive such documents.

**MIDDLETON
REUTLINGER**

Brett N. Dorny, Esq.
October 17, 2006
Page 2

Thank you for your cooperation.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:     James E. Milliman, Esq.
        James R. Higgins, Jr., Esq.
        John L. Capone, Esq.

# EXHIBIT 11
## TO
## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS

Message      Page 1 of 1

## Robert Theuerkauf - RE: Genlyte v. ALS

| | |
|---|---|
| **From:** | "Brett N. Dorny" |
| **To:** | "'Robert Theuerkauf'" |
| **Date:** | 10/19/2006 4:34 PM |
| **Subject:** | RE: Genlyte v. ALS |

Robert:

I am out of the office this afternoon. I will contact Mr. Lewin regarding a deposition. We should have the documents available shortly. Are you available tomorrow to discuss these and other issues?

Brett

> -----Original Message-----
> **From:** Robert Theuerkauf [mailto:Rtheuerkauf@middreut.com]
> **Sent:** Thursday, October 19, 2006 2:47 PM
> **To:** Brett Dorny
> **Cc:** Jim Higgins; Jim Milliman
> **Subject:** Genlyte v. ALS
>
> Dear Brett:
> To follow-up on the voicemail I left you this afternoon, please forward dates that Dr. Lewin could be made available for a deposition. Also, please let us know when we can expect to receive the documents identified by Mr. Davis and summarized in the my letter of October 17, 2006. We look forward to hearing from you.
> Sincerely,
>
> Robert J. Theuerkauf
> Registered Patent Attorney
> Middleton Reutlinger
> 2500 Brown & Williamson Tower
> Louisville, Kentucky 40202
> Office Phone: (502) 584-1135
> Direct Dial: (502) 625-2747
> Facsimile: (502)561-0442
> email:rjt@middreut.com
>
> Notice: This email contains information from the law firm of Middleton Reutlinger which may be confidential or privileged. The information is intended to be for the use of the above addressee. If you are not the intended recipient, please be advised that any disclosure, copying, distribution, or use of the contents of this correspondence is prohibited. If you have received this communication in error, please notify us immediately and delete this email. Thank you.

# EXHIBIT 12

## TO

## GENLYTE THOMAS GROUP LLC'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE REGARDING EXPERTS



**Law Office of Brett N. Dorny**

**RECEIVED**
OCT 2 4 2006

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

Brett N. Dorny
bndorny@dornylaw.com

508-709-0493 Direct
508-519-9185 Fax

October 20, 2006

VIA FACSIMILE AND US MAIL

Robert J. Theuerkauf, Esquire
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

      Re:    Genlyte Thomas Group LLC v. Arch Lighting Group, Inc.
               Civil Action No.  05-CV-10945 REK

Dear Robert:

      In our telephone call today regarding experts, you asserted that there were still other documents besides those identified in your October 17th letter which are outstanding from ALS. I wish to formally respond with respect to any additional documents you believe are due, as identified in your facsimile letters of August 21, 2006 and August 31, 2006 and email of August 30, 2006.

      1.     With respect to Genlyte Request Nos. 6, 7, 18 and 21, all responsive, non-privileged documents have been produced.

      2.     U.S. Patent No. 3,928,757 was produced in response to Genlyte Request No. 22. At the time of response, ALS had no additional documents responsive to Request No. 22. However, Ian Lewin identified several additional relevant prior art patents in connection with his statements on claim interpretation. ALS will produce additional copies of those patents, if requested.

      3.     In the email of August 30, 2006, you state that ALS has not produced documents relating to the 2x2 fixtures. To the contrary, all documents relating to those fixtures has been produced, including marketing literature, technical drawings, and sales information.

      4.     With respect to sales, ALS provided sales through the date of response. ALS will shortly update its sales information to account for sales in 2006.

*Specializing In Intellectual Property Law*

Robert J. Theuerkauf, Esq.
October 20, 2006
Page 2

5.     With respect to expenses, ALS has no way to provide all supporting documents
for such calculations. It would require production of essentially all documents relating to all
expenses of the company. The components of the MulTMed products are generally used with
other products of ALS. Also, many components are fabricated in-house. We are willing to make
the accounting records available for inspection and copying at ALS's offices. All such records
are to be treated as "Highly Confidential" under the Protective Order.

6.     With respect to end customers for the MulTMed products. As Mr. Davis testified
to during his deposition, ALS generally does not deal with the end customers. All sales are to
the contractor or representative. To the extent that the products were shipped to an end
customer, such information is on the sales documents, which were provided. Furthermore, ALS
typically does not deal with the lighting specifications for jobs. All documents relating to quotes
and sales have been produced.

7.     Mr. Davis also testified at his deposition with respect to the "Latitude
Exam/Ambient" light. This product was not develop until June 2006, after ALS had produced
documents and responded to discovery. Furthermore, this product is irrelevant to the present
case. The '254 patent requires at least a fixture directing light to a reading area and a fixture
directing light to a broad area (ambient light). The Latitude product does not include a reading
light. Therefore, we will not agree to produce any documents relating to this product. To the
extent that you believe your requests were broad enough to encompass the Latitude product, we
hereby object to the requests as being overly broad and unlikely to lead to admissible evidence.

8.     Finally, your letter of October 17, 2006 refers to "ALS customer files for its
accused products." This was never part of any request at the deposition. It was not in my notes,
nor could I locate any such request in the transcript. To the extent that you are requesting the
entire file for all customers of ALS or all customers who purchased the MulTMed product, the
request is overly broad. To the extent that you are requesting documents relating to MulTMed
from customer files, such documents have been produced.

Very truly yours,

Brett N. Dorny

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                        Plaintiff,

v.                                                                    Civil Action No. 05-CV-10945 WGY

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

                        Defendant.

**[Proposed] ORDER DENYING DEFENDANT'S MOTION IN LIMINE
REGARDING EXPERTS**

        This matter is before the Court on the Motion in Limine Regarding Experts

("ALS' Motion") by Defendant, Arch Lighting Group ("ALS").  The Court, having

reviewed and considered the parties' respective memoranda and supporting material, and

any responses thereto, and otherwise being duly and sufficiently advised,

        IT IS HEREBY ORDERED AND ADJUDGED that ALS' Motion be, and it

hereby is, DENIED;

        IT IS HEREBY ORDERED that ALS shall have _____ days from entry of this

Order to serve any rebuttal expert reports.

        SO ORDERED this _____ day of _____, 2006.


                                                _____
                                                William G. Young, U. S. D. J.

TENDERED BY:


    /s/ John L. Capone
Counsel for Plaintiff,
Genlyte Thomas Group LLC