UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC, <br><br> Plaintiff/Counterclaim Defendant, <br> v. <br><br> ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP, <br><br> Defendant/Counterclaimant. | Civil Action No. 05-CV-10945 WGY |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NONINFRINGEMENT AND FOR ATTORNEYS FEES**

In opposition to Defendant's, Arch Lighting Group, Inc. ("ALS"), Motion for Summary

Judgment of Non-infringement, Plaintiff, Genlyte Thomas Group LLC ("Genlyte Thomas")

alleges (1) that ALS improperly narrowed the Court's interpretation of the claims and (2) that

ALS relies upon erroneous facts.  However, it is Genlyte Thomas which is has failed to properly

apply the Court's claim interpretation.  Furthermore, Genlyte Thomas' alleged factual issues are

mere semantics which are immaterial to the determination of infringement.  Therefore, as set

forth in ALS's opening brief and below, there are no material issues of fact in dispute as to the

design and operation of the accused MulTMed products and ALS is entitled to summary

judgment of non-infringement.

ARGUMENT

Generally, Genlyte Thomas does not dispute the facts presented by ALS in connection

with its Motion for Summary Judgment.  Instead, Genlyte Thomas disputes the characterization

of the facts, i.e., the way the facts are described, and the relevance and application of those facts

in connection with the claims of U.S. Patent No. 5,038,254 ("the '254 Patent").  In early 2005,

before filing suit, Genlyte Thomas performed tests on a MulTMed product to determine the light distribution from the fixtures. Declaration of Scott Davis ("Davis Decl.") (Exhibit 2 to ALS's opening brief) ¶19. The tests provided information regarding the luminous intensity, measured in candelas, and luminous flux, measured in lumens, from the fixtures at different angles. The information was provided in reports, one for each fixture, having various tables and graphs. Davis Decl. Exhibits E, F, G. Neither party disputes the results of those tests or the information in the reports. Thus, the only disputes are as to the requirements of the claims and application of the test information to the properly interpreted claims. When properly applied, the test information shows that the MulTMed products do not infringe the claims of the '254 Patent and summary judgment should be granted.

A.     Genlyte Thomas Has Misapplied The Court's Claim Interpretation.

In its opposition, Genlyte Thomas purports to accurately describe the Court's claim interpretation. However, Genlyte Thomas' recitation of the first fixture and second fixture of claims 1 and 3 does not correspond to the opinion issued by Judge Castillo of the Northern District of Illinois nor the comments made by Judge Young at the Markman hearing held on June 30, 2006. As interpreted by the court, the first fixture is "set or arranged to aim more light in a downward direction to a selected reading area." Similarly, the second fixture is "set or arranged to aim more light in a downward and outward direction to a vertical wall." Genlyte Thomas seeks to eliminate "more" and "direction" from its interpretation of the claim.

As agreed by the Court and the parties, light from any fixture, including the MulTMed fixtures, is emitted in many directions, including various downward and outward angles. Despite the suggestions in Genlyte Thomas' opposition, ALS has never stated that the claims require light to be aimed at a single angle, such as with a laser or spotlight. Instead, ALS and the Court

have stated that while light may be emitted in many directions <u>more</u> light is to be aimed in the stated direction.

Furthermore, with respect to the second fixture, the Court was clear that it must aim more light in a downward <u>and</u> outward direction.  Genlyte Thomas seeks to change the Court's interpretation to "a downward direction and/or an outward direction."  This is inconsistent with the claim language and the description in the '254 Patent.  Light which is emitted downward is not aimed at the vertical wall outwardly adjacent from the body as required by the claims. Figure 1 of the '254 Patent illustrates light (dashed lines from reference 26) from the second fixture aimed at several angles – downward and outward – towards the wall.  Thus, the Court properly interpreted the claims to require more light in a downward and outward direction, in contrast to the downward direction of the first fixture, aimed towards the wall.  In so stating, neither ALS nor the Court refers to emission of light at a single angle, but more light in a general direction.

Genlyte further seeks to rely upon *Inverness Medical v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir. 2002) for the proposition that "downwardly" and "downwardly and outwardly" are not mutually exclusive.  That case is not relevant to the claims of the '254 Patent. In *Inverness*, the Federal Circuit held that the terms "mobility" and "migration" within a single claim were not mutually exclusive.  It did not hold that claim terms could not be mutually exclusive.  The claims of the '254 Patent recite directions which are, by their terms, mutually exclusive.  The first fixture aims light downwardly to a reading area under the body.  The second fixture aims light downwardly and outwardly to a vertical wall outwardly of the body.  The areas where light is aimed, as specifically recited in the claims, cannot overlap.  An area under the body cannot also be outwardly adjacent the body.  Therefore, the downward and outward

direction of the second fixture is mutually exclusive of the downward direction of the first

fixture. This does not mean that a fixture cannot emit light in other directions to the other areas.

It does mean, as the Court stated, that <u>more</u> light must be aimed in the recited direction to the

recited area.

B.    There Is No Issue of Material Fact In Dispute
      <u>With Respect To Light From The MulTMed Products.</u>

To determine infringement under properly interpreted claims, a determination must be

made as to where each fixture aims more light. The parties do not dispute how light is emitted

from the accused MulTMed products. The distributions were established by the tests done by

Genlyte Thomas before filing suit. For both the reading fixture and the ambient fixture, the

highest intensity light is directly downward and the intensity drops off as the angle toward

outward increases. Similarly, for both fixtures, the luminous flux has a highest component

between 40 and 45 degrees and drops off in both directions. The parties do, however, disagree as

to how to determine "more" light. ALS relied upon luminous intensity in its opening brief.

Genlyte Thomas opposes the Summary Judgment Motion by referring to the luminous flux. The

distinction is immaterial. Whether intensity or flux is used, the MulTMed products do not

infringe the claims of the '254 Patent.

1.    <u>More Light Is Directed Downward For All MulTMed Fixtures.</u>

In ALS's opening brief and the Declaration of Scott Davis, ALS assumed that "more

light" means a greater amount of light, as measured by intensity. The tabular information

relating to "candela" measurements and graphs on the first page of each report provide

information on intensity at different angles. Davis Decl. Exhibits E, F. All fixtures in the

MulTMed products provide the highest intensity light in a downward direction. The intensity of

the light decreases as the outward angle increases. Davis Decl. ¶¶23-25. While the '254 Patent

itself does not indicate how "more" light is to be determined, intensity of light is an acceptable measure and consistent with the patent.

The '254 Patent provide examples of fixture performance for a preferred embodiment. The reading light fixture provides "an illumination of approximately 70 foot-candles to reading are[sic] 400"; the ambient light fixture provides "approximately 50 foot-candles of illumination to the ambient area"; and the examination light provides "100 foot-candles of illumination to the bed 200." '254 Patent, column 2, lines 48-49 and 56-57; column 3, lines 8-9. Illumination in foot-candles is a measure of light intensity. The '254 Patent never mentions luminous flux or lumens. Therefore, the use of luminous intensity to determine the directionality of more light, as relied upon by ALS, is consistent with the '254 Patent.

Genlyte Thomas does not dispute the intensity information for the MulTMed products as set forth in the reports of its tests. Therefore, if light is to be measured by intensity, none of the fixtures of the MulTMed products aim more light in a downward and outward direction to a vertical wall as required by the second fixture of claims 1 and 3. Since there is no factual dispute regarding the light distribution from the fixtures, and the requirements of the claims are issues of law, summary judgment of non-infringement is appropriate.

2.     <u>Luminous Flux Also Does Not Support Infringement.</u>

While Genlyte Thomas does not explicitly state how to determine "more" light in its Opposition, it does refer to the luminous flux information, measured in lumens, in asserting that the MulTMed fixtures do not provide more light straight down. If luminous flux is used as the measure for determining where more light is aimed, the MulTMed products still do not meet the limitations of claims 1 and 3 of the '254 Patent. As stated by Mr. Davis, the reading fixture and ambient fixture have essentially the same light distribution. Davis Decl. ¶¶10, 24. This is true

with respect to luminous flux as well as luminous intensity.  Table 1 below provides the

luminous flux data from the reports for the reading fixture and ambient fixture, with a calculation

of respective percentages, for different angles.  As can be seen from the data, the percentages of

| Angle | Reading Fixture | | Ambient Fixture | |
|---|---|---|---|---|
| | Lumen | Percentage | Lumen | Percentage |
| 0-5 | 12 | 0.88% | 22 | 0.84% |
| 5-10 | 36 | 2.63% | 65 | 2.48% |
| 10-15 | 59 | 4.31% | 106 | 4.04% |
| 15-20 | 79 | 5.77% | 143 | 5.46% |
| 20-25 | 97 | 7.09% | 174 | 6.64% |
| 25-30 | 111 | 8.11% | 200 | 7.63% |
| 30-35 | 121 | 8.85% | 219 | 8.36% |
| 35-40 | 127 | 9.28% | 231 | 8.81% |
| 40-45 | 128 | 9.36% | 236 | 9.00% |
| 45-50 | 125 | 9.14% | 234 | 8.93% |
| 50-55 | 117 | 8.55% | 224 | 8.55% |
| 55-60 | 105 | 7.68% | 208 | 7.94% |
| 60-65 | 89 | 6.51% | 185 | 7.06% |
| 65-70 | 70 | 5.12% | 156 | 5.95% |
| 70-75 | 48 | 3.51% | 119 | 4.54% |
| 75-80 | 28 | 2.05% | 67 | 2.56% |
| 80-85 | 13 | 0.95% | 27 | 1.03% |
| 85-90 | 3 | 0.22% | 5 | 0.19% |

**TABLE 1**

light in each angular area are almost identical.  Both fixtures have a maximum level of luminous

flux in the 40-45 degree zone, i.e. a downward and outward direction.  The level of luminous

flux decreases significantly as the angles vary from the 40-45 degree region.  Very little of the

light is straight down or straight out.  Furthermore, there is no dispute with respect to these facts

regarding operation of the MulTMed products.

When using luminous flux as the measure of "more" light, the MulTMed products do not

include the first fixture.  According to the data from Genlyte Thomas' tests, both the reading

fixture and the ambient fixture have a highest level of luminous flux at the 40-45 degree angular

zone and high levels at angles around this zone. Thus, neither the reading fixture nor the ambient fixture aims more light, as measured in luminous flux, in a downward direction to a reading area. More light is aimed in a downward and outward direction than in a downward direction.

Therefore, Genlyte Thomas' alleged issue of fact is not material. With luminous intensity, the MulTMed products do not have a fixture which aims more light in a downward and outward direction. With luminous flux, the MulTMed products do not have a fixture which aims more light in a downward direction. Using either measure, the MulTMed products lack one of the necessary fixtures of claims 1 and 3. Therefore, summary judgment of non-infringement should be granted.

       3.    <u>Photographic "Evidence" Is Not Relevant.</u>

Genlyte Thomas further seeks to create an issue of material fact by suggesting that the photometric data considers the fixtures in a vacuum and that actual performance when installed in a ceiling must be considered. Opposition at 10. Genlyte Thomas proceeds to submit photographs which show light on a wall, allegedly as evidence that more light is aimed towards the wall. The photographs and argument are merely an attempt to confuse the Court and ignore the words of the claims. The photographs show that light from all of the fixtures strikes the walls of the room. However, that is irrelevant to determining infringement of the claims. ALS does not dispute that light is emitted from the fixtures of the MulTMed products in many directions. The claims, as interpreted by the Court, require that the fixtures aim <u>more</u> light in either a downward direction to a reading area or in a downward and outward direction to a vertical wall. The photometric data provides information on the amount and direction of light from the fixtures, as is necessary to determine infringement of the claims. The photographs, on

the other hand, do not provide any information about the direction or directions in which more light is aimed. Furthermore, the claims of the '254 Patent recite a medical lighting system – a device – without regard to whether it is or is not installed in ceiling. The fixtures within the body must be arranged to direct light as required by the claims. The position of the body with respect to a room does not change the way in which the fixtures within the body direct light. Therefore, Genlyte Thomas' position with respect to actual use and photographs is not supported by the claims of the patent and irrelevant to a determination of infringement.

C.    There Is No Evidence of Infringement Under The Doctrine Of Equivalents.

Finally, Genlyte Thomas suggests that summary judgment should be denied because ALS has made "insubstantial" changes to the patented design which could infringe under the doctrine of equivalents. The doctrine of equivalents only applies if there is no literal infringement of the claims. As noted by Genlyte Thomas, one test for determining infringement under the doctrine of equivalents is whether the accused product includes an element which performs substantially the same function in substantially the same way to achieve substantially the same result as an element in the claim not literal present in the accused product. *Werner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1997 *en banc)*, *rev'd on other grounds*, 520 U.S. 14, 39-40 (1997). If the MulTMed products do not literally infringe the claims of the '254 Patent, for the reasons discussed above and in ALS's opening brief, then they cannot infringe under the doctrine of equivalents. The fixtures of the MulTMed products do not direct more light downward and outward to a vertical wall. More light is directed downward to the bed by all of the fixtures. The claims of the '254 Patent require the ambient light to be principally reflected off the wall. The MulTMed products do not provide ambient illumination in the same way as the second fixture recited in the claims. The way in which the claims recite the ambient

illumination is a necessary part of the claim under the doctrine of equivalents. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir.1987) (in banc), cert. denied, 485 U.S. 961 (1988) (the doctrine of equivalents "does not mean one can ignore claim limitations"). Therefore, the MulTMed products do not infringe under the doctrine of equivalents.

CONCLUSION

As discussed above and in ALS's opening brief, there are no issues of material fact in this case. When properly construed, the claims of the '254 Patent require fixtures which (1) aim more light in a downward direction to a reading area and (2) aim more light in a downward and outward direction to a vertical wall. The operation of the accused MulTMed products not disputed. The reading fixture and ambient fixture have nearly identical distributions and aim more light in the same directions. Whether luminous intensity or luminous flux are used to determine "more" light, the MulTMed products lack one of the fixtures recited in the claims of the '254 Patent. Therefore, summary judgment of non-infringement should be granted.

Respectfully submitted,


Dated:  November 22, 2006                   _s/ Brett N. Dorny_____
                                            Brett N. Dorny,  BBO# 628,977
                                            Law Office of Brett N. Dorny
                                            386 West Main Street, Suite 12A
                                            Northborough, Massachusetts  01532
                                            508-709-0501
                                            bndorny@dornylaw.com

                                            Attorney for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 22, 2006.

                            _s/ Brett N. Dorny_____
                            Brett N. Dorny