UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>     Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP,<br><br>     Defendant/Counterclaimant. | Civil Action No. 05-CV-10945 WGY |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**

Defendant, Arch Lighting Group, Inc. ("ALS") hereby opposes the motion of Plaintiff, Genlyte Thomas Group LLC ("Genlyte Thomas"), to Compel Responses to Discovery Responses. As discussed in detail below, ALS properly responded to the discovery requests propounded by Genlyte Thomas and provided all information and documents within its "possession, custody and control" as required by Fed. R. Civ. P. 33 and 34. The information and documents which are the subject of Genlyte Thomas' Motion to Compel are in the sole possession of non-parties over whom ALS has no control. Therefore, the Motion to Compel should be denied.

ARGUMENT

A.  ALS Fully Responded to Discovery Requests.

Genlyte Thomas' Motion to Compel seeks an order from the Court requiring ALS to identify the hospitals or healthcare facilities who have purchased ALS's MulTMed products and the job specifications associated with those facilities. However, Genlyte Thomas never

1

requested such information in its discovery requests. ALS fully answered the discovery requests as propounded by Genlyte Thomas.

In its Motion, Genlyte Thomas has identified Interrogatories Nos. 2 and 5 and Document Requests Nos. 2, 8, 13, and 14 as allegedly requesting this information. Interrogatory No. 2 requests the identity of the customers and/or purchasers of the MulTMed products. Interrogatory No. 5 requests the identity of all persons to whom ALS has offered for sale the MulTMed products. Document Request No. 2 sought all documents relied upon or identified in responding to the Interrogatories. Document Request No. 8 sought all documents relating to the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the MulTMed products. Document Request No. 13 sought all documents relating to sales or offers to sell the MulTMed products. Document Request No. 14 sought all documents relating to sales of the MulTMed products at a sale price lower than that offered by Genlyte Thomas.

In response to the interrogatories, ALS produced invoices and quotes which identified all entities to whom ALS sold or specifically offered to sell the MulTMed products. ALS further produced other documents relating to sales of the MulTMed product. ALS has also made all of its customer files available for review by counsel for Genlyte Thomas. These documents provide all of the information in the possession, custody or control of ALS regarding its sales of the MulTMed products.

Genlyte Thomas' motion arose because the information provided by ALS does not include identification of the hospital or healthcare facility who is the end user of the MulTMed products, nor the job specification from those facilities. However, Genlyte Thomas did not request such information. The requests identified by Genlyte Thomas in connection with its

motion request the identity of customers of the MulTMed products and documents relating to the sale of the MulTMed products. In its motion, Genlyte Thomas seeks to equate "customers" with "hospitals or healthcare facilities." The discovery requests, on the other hand, never use the terms hospital or healthcare facility.

The discovery requests do not provide any definition for "customers." Therefore, ALS properly relied upon the ordinary meaning of "customers", i.e. "one who buys goods or services", in responding to the discovery requests. ALS sells the MulTMed product to electrical distributors. Declaration of Scott R. Davis ("Davis Decl.") ¶3 (attached hereto as Exhibit 1). Therefore, ALS properly responded to the discovery requests by providing information relating to the entities to whom it sold the MulTMed products.

Genlyte Thomas further suggests that ALS is avoiding discovery by characterizing the electrical distributors as its customers. ALS has not used any characterization of customers nor sought to avoid discovery. The electrical distributors purchase the MulTMed products from ALS. There are no other entities who purchase products from ALS. Therefore, the electrical distributors are the "customers." The hospital or healthcare facility is an end user of the MulTMed products. There are many intermediaries. Davis Decl. ¶7. Typically, ALS does not have information regarding the end user, including the job specification. Davis Decl. ¶8. Any information known to ALS regarding end users would be in the documents produced. Davis Decl. ¶9. In response to the discovery requests, ALS properly identified its customers and all information available to it regarding the end users. Therefore, ALS properly responded an the Motion to Compel should be denied.

B.     ALS Does Not Control Third Party Distributors.

Despite the failure of Genlyte Thomas to request the documents it now seeks and ALS proper responses to discovery, Genlyte Thomas further requests that the Court compel ALS to obtain information from unrelated third parties who are allegedly in the "control" of ALS. A party need only produce documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a). The burden is on the moving party to prove the control of the requested information or documents. *United States v. International Union of Petroleum and Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Norman v. Young*, 422 F.2d 470, 473 (10 Cir. 1970). Genlyte Thomas has failed to prove that the requested information is within the control of ALS.

Traditionally, "control" as been interpreted to mean a legal right to obtain the documents. *See Addamax Corporation v. Open Software Foundation, Inc.*, 148 F.R.D. 462, 464 (D. Mass. 1993) ("the term 'control' is fairly uniformly 'defined not only as possession, but as the legal right to obtain the documents requested upon demand.'") (quoting *Searock v. Stripling*, 736 F.2d 650, 653 (11 Cir., 1984)); *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D.Ill.1977) ("whether the party has a legal right to control or obtain [the documents]"), citing *Buckley v. Vidal*, 50 F.R.D. 271 (S.D.N.Y., 1970). *See also* Moore's Federal Practice, 34.17, p. 34-70-1. In some instances, courts have expanded upon the meaning of control to include "the practical ability" to obtain the requested information. *See M.L.C., Incorporated v. North American Philips Corp.*, 109 F.R.D. 134 (S.D.N.Y.1986). Not all courts agree with this expansion of the meaning of control. *American Maplan Corp. v. Heilmayer*, 203 F.R.D. 499, 502 (D. Kan. 2001) (practical ability without control conflicts with Rule 34 and is not supported by law); *Inline Connection Corporation, v. AOL Time Warner Inc.*, 2006 WL 2864586, *2 (D.Del. 2006) (Third Circuit has not adopted the expansive meaning of control used in the

Southern District of New York), citing *Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D.Del. 2005). Furthermore, even under the expansive meaning of control, there must be a relationship between the party requested to produce the document and the non-party holder of the document. *See Id.; .Klesch & Company Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 520 (D. Colo. 2003) ("even under the most expansive interpretation of "control," the "practical ability" to demand production must be accompanied by a similar ability to enforce compliance with that demand."); *Addamax Corp.*, 148 F.R.D. at 565 (corporate relationship plus other factors needed to show control). Generally, a relationship such as parent-subsidiary, sister companies, or employer-employee is required to show sufficient control to conclude that that a "practical ability" to obtain the documents exist. In *Prokosh v. Catalina Lighting, Inc.*, 193 F.R.D. 633 (D. Minn. 2000), relied upon by Genlyte Thomas, the court held that patent documents in the possession of a consultant to the party were not within the party's control because there was no showing of a greater relationship. *Prokosh*, 193 F.R.D. at 636.

  Genlyte Thomas has failed to meet its burden of showing that ALS has control over information and documents in the possession of the electrical distributors who purchase its products. Genlyte Thomas seeks to meet the burden through suggestion and innuendo. It suggests that ALS distributes the MulTMed products "through" "its distributors." ALS has a completely arms length relationship with the lighting distributors to whom it sells products. Davis Decl. ¶¶3-6. ALS has no special relationship with the electrical distributors which would suggest any level of control. Further, there are hundreds of electrical distributors to whom ALS has sold products. The sheer number suggest that ALS does not have a relationship with them which provides any level of control. Therefore, Genlyte Thomas has failed to show that ALS has

control or the practical ability to obtain information from the electrical distributors who purchase ALS's MulTMed products, as required by the Federal Rules.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Responses to Discovery Requests should be denied. ALS fully responded to the requests with the information and documents within its possession, custody and control. Any information in the possession of third party purchasers of ALS's products is not within its control.

Respectfully submitted,

Dated:  December 4, 2006

_s/ Brett N. Dorny_____
Brett N. Dorny,  BBO# 628,977
Law Office of Brett N. Dorny
386 West Main Street, Suite 12A
Northborough, Massachusetts  01532
508-709-0501
bndorny@dornylaw.com

Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 4, 2006.

_s/ Brett N. Dorny_____
Brett N. Dorny

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>      Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP INC.,<br><br>      Defendant/Counterclaimant. | Civil Action No.  05-CV-10945 WGY |

### DECLARATION OF SCOTT A. DAVIS

I, Scott A. Davis, hereby declare as follows:

1. I am president of Defendant Arch Lighting Group, Inc. ("ALS"). I make this declaration in opposition to Plaintiffs Motion to Compel Responses to Discovery Requests. Unless indicated otherwise, all statements are made from my personal knowledge.

2. ALS is a designer and manufacturer of lighting products. It has a large number of products available for sale. ALS distributes a looseleaf catalog which identifies all of its products to independent sales representatives who in turn provide the catalogs to the lighting specifiers they serve.

3. ALS sells its lighting products through independent sales representatives. ALS has written contracts with these sales representatives which relate mainly to the earning and paying of commissions on sales of ALS's products. The contracts can be terminated by either party at any time upon 30 day notice or sooner. The sales representatives can and in all cases do represent other lighting manufacturers as well as manufacturers of other electrical construction products.

1

3.     Typically, the sales representatives arrange sales to electrical distributors. The electrical distributor issues a purchase order to ALS for the desired products, however their orders are sent to the rep who in turn issues a rep agency generated version of the order that they send to ALS. The electrical distributor will normally request a quote from ALS for products before issuing a purchase order. Quotes are usually handled directly by the reps who have access to ALS standard pricing. ALS only gets involved in quotations directly when special requests are involved. Reps are pre-authorized to offer discounts within certain limitations without factory authorization or notification. A purchase order may identify the distributor as the "ship-to address" or a shipping location other than the electrical distributor may be identified which can either be a contractor's office, a warehouse, a jobsite or the like.

4.     Upon receipt of a purchase order, ALS will manufacture the products. ALS then ships the ordered products to either the lighting distributor or the designated shipping destination.

5.     ALS has no ongoing contractual relationship with any electrical distributors who purchase ALS's products. ALS has no control over the electrical distributors.

6.     ALS has sold MulTMed products to over 100 electrical distributors throughout the United States.

7.     The typical end user of the ALS MulTMed products is a hospital or health care company which is renovating patient rooms or building a new facility. The end user typically engages an architect, electrical engineer, interior designer and many times a lighting designer (aka: specifiers) in connection with design of the facility. Any of those specifiers can be responsible for choosing the lighting products. A general contractor is hired to perform the work. The general contractor hires subcontractors for lighting and the subcontractor obtains fixtures from electrical distributors. The specific fixtures to be installed may be influenced by

any of the specifiers in the process and is usually the result of various bidding processes. In many cases, the contractor has the authority to purchase alternate products in place of those specified.

8.  Generally, ALS has no contact with any of the end users, architects, engineers, general contractors or subcontractors and may or may not know their identities. Normally, ALS's only contact is the independent sales representatives. The only contact that ALS normally has with the distributors directly is in the form of order acknowledgements and invoices which are sent to them by mail.

9.  Any information had by ALS regarding the end users of the MulTMed product would be on the quotes, invoices, or other documents in ALS's files with respect to each electrical distributor. ALS has produced all of the quotes and invoices for sales of MulTMed. ALS has provided counsel for Genlyte Thomas access to the electrical distributor files.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of December, 2006.

        /s/ Scott A. Davis_____
        Scott A. Davis