UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br>a Delaware Limited Liability Company<br>Plaintiff,<br><br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP, a Rhode Island Corporation<br><br>Defendant. | Civil Action No. 05-CV-10945 WGY |

**JOINT PRETRIAL MEMORANDUM**

In compliance with Local Rule 16.5(D), Plaintiff Genlyte Thomas Group LLC ("Plaintiff" or "Genlyte") and Defendant Arch Lighting Group ("Defendant" or "ALS") respectfully submit this Joint Pretrial Memorandum.

I.  **CONCISE SUMMARY OF THE EVIDENCE**

   A.   **Genlyte's Statement**

In this patent infringement action, Genlyte alleges that ALS has infringed, directly or indirectly, certain claims of U.S. Patent No. 5,038,254 ("the '254 Patent"). Genlyte will offer the testimony of Bill Fabbri, one of the co-inventors of the '254 Patent and the Vice President of Lightolier, a division of Genlyte, regarding how and when the patented invention was conceived and developed. Mr. Fabbri is also expected to testify regarding the long-felt need for the invention, Genlyte's efforts to patent and commercialize the invention, Genlyte's ownership of and efforts to enforce its patents, the commercial success of Genlyte's patented products, the

attempts by others to copy the patented products and the acceptances of licenses under the '254 Patent by others.

Genlyte will offer the testimony of Roy Crane, the other co-inventor of the '254 Patent and the Director of Engineering for Lightolier. Mr. Crane's expected testimony will corroborate Mr. Fabbri's testimony. Mr. Crane will also testify as to the basic principles of lighting. Additionally, Mr. Crane, who has analyzed the structure and operation of one of ALS' accused products (2x4 Multmed), will, primarily through his expected testimony, documentary evidence produced by both parties, facts established by the pleadings and admissions by ALS, show that, at least, ALS' 2x4 Multmed product infringes claims 1-8 and 13-14 of the '254 Patent.

Genlyte will offer the testimony of a technical expert, Thomas M. Lemons, a registered professional engineer who has 56 years of experience in lighting product design and lighting installation, who has analyzed the structure and operation of ALS' accused products, including ALS' 2x4 and 2x2 MulTmed products and Latitude products. The subject matter of Mr. Lemons' testimony is primarily set forth in detail in his Markman Statement, Rebuttal Markman Statement, expert report and supplemental expert report. Mr. Lemons will testify as to the basic principles of lighting. Further, Mr. Lemons will, primarily through his expected testimony, documentary evidence produced by both parties, facts established by the pleadings and admissions by ALS, show that ALS' 2x2 MulTmed and Latitude products infringe claims 1 and 2 of the '254 Patent and that ALS' 2x4 MulTmed product infringes claims 1-8 and 13-14 of the '254 Patent.

Genlyte will offer the testimony of Michael Tate, a damages expert witness, who has extensively analyzed the damages issues in this case. The subject matter of Mr. Tate's testimony

is set forth in detail in his expert report and supplemental expert report. Mr. Tate will, primarily through his expected testimony, documentary evidence produced by both parties and certain third parties, show that Genlyte has sustained substantial damages as a result of ALS' alleged infringement of the '254 Patent. Mr. Tate's expected testimony will include his evaluation of a reasonable royalty based on the *Georgia-Pacific* factors and/or Genlyte's lost profits and prejudgment interest.

Genlyte will offer the testimony of Scott Davis, President and owner of ALS, along with documentary evidence, regarding ALS' design, development and operation of ALS' accused products. Mr. Davis is also expected to testify regarding ALS' strong interest in manufacturing and selling a ceiling-mounted, multi-fixture patient room light system which infringe the '254 Patent, ALS substantial interest in manufacturing and selling of such products, the substantial benefits obtained by ALS through such infringement, ALS' knowledge of the '254 Patent, and the positive effects that such products have had on ALS' overall business. Further, Mr. Davis is expected to testify, along with Genlyte's presentation of documents produced by ALS, relating to Genlyte's showing that ALS has willfully infringed the '254 Patent.

    B.    **ALS' Statement**

1. Defendant will offer testimony relating to the business of ALS, including how it designs, markets and sells its products, including the MulTMed products.

2. Defendant will offer testimony relating to the design, manufacture, operation and functioning of the MulTMed products.

3. Defendant will offer testimony relating to sales, revenue, expenses and profits or losses in connection with the MulTMed products.

  4. Defendant will offer testimony relating to communications by Genlyte Thomas with prospective purchasers of the MulTMed products, and lost sales resulting from such communications.

## II.  FACTS ESTABLISHED BY THE PLEADINGS, ADMISSIONS OR STIPULATIONS

The parties agree that the facts set forth in the attached Stipulation (Exhibit 1) are not in dispute in this case.

## III.  CONTESTED ISSUES OF FACT

The parties agree that the primary contested issues of fact are:

  A. Whether or not ALS has infringed any of the asserted claims of the '254 Patent;

  B. Assuming that ALS is found to infringe at least one asserted claim, what damages should be awarded to Genlyte;

  C. Whether ALS has willfully infringed the '254 Patent and, if so, whether the Court should increase any damages found by the jury pursuant to 35 U.S.C. §284;

  D. Whether Genlyte Thomas interfered with ALS' prospective business;

  E. Assuming that Genlyte Thomas is found to have interfered with ALS' prospective business, what damages, if any, should be awarded to ALS;

  F. Whether this is an exceptional case within the meaning of 35 U.S.C. §285 and, if so, whether the Court should award reasonable attorney's fees to the prevailing party.

## IV.  JURISDICTIONAL QUESTIONS

Neither party believes that there is a jurisdictional question.

V.  **QUESTIONS RAISED BY PENDING MOTIONS**

    A.  **Genlyte's Statement**

Genlyte may file shortly several motions *in limine*.

    B.  **ALS' Statement**

On November 7, 2006, ALS filed a Motion in Limine Regarding Experts, raising the question of whether Genlyte's experts, Thomas M. Lemons and Michael E. Tate, should be precluded from testifying and whether ALS may designate experts with respect to infringement and damages.

VI.  **ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS, WITH SUPPORTING AUTHORITY**

The parties agree that the primary issue of law is:

Patent claim interpretation. *Markman v. Westview Inst., Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The parties state that the Court set forth the meaning of the claim terms in dispute during the June 20, 2005 *Markman* hearing. However, the parties further recognize that Federal Circuit precedent permits the Court to engage in a "rolling claim construction." *Conoco, Inc. v. Energy & Environ. Int'l*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). The *Conoco* court stated:

> [A] district court may engage in claim construction during various phases of litigation, not just in a Markman order. We have recognized that district courts may engage in "rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."

460 F.3d at 1359, quoting *Guttmann, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002), which in turn cited *Sofamor Danek Group, Inc. v. Depuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996).

5

Further, the parties have agreed to meet and confer to jointly prepare jury instructions and reduce the number of dispute issues that the Court will need to resolve.

VII. **REQUESTED AMENDMENTS TO THE PLEADINGS**

Genlyte requests that its Complaint be amended to add ALS' Latitude product as infringing the '254 Patent.

VIII. **ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE ACTION**

The parties will also work together to resolve as many issues as possible relating to jury instructions.

IX. **PROBABLE LENGTH OF TRIAL AND WHETHER JURY OR NON-JURY**

The parties state that this is a jury trial and estimate that each side will need 20 hours for trial.

X. **TRIAL WITNESSES**

A. **Genlyte's Statement**

Genlyte refers the Court to Part I above, and states that it will call Bill Fabbri, Roy Crane, Scott Davis, Thomas Lemons and Michael Tate. Genlyte also reserves the right to call any witness presented by ALS and/or any rebuttal witnesses.

B. **ALS' Statement**

ALS expects to call Scott Davis and Paul Northrup, employees of ALS, as factual witnesses. As set forth in ALS's Motion *in Limine* Regarding Experts, in the event that the Court allows Thomas Lemons and/or Michael Tate to testify, ALS seeks to call Ian Lewin to testify as an expert on issues of infringement and a yet to be determined expert on damages. ALS reserves the right to call any witness presented by Genlyte and/or any rebuttal witnesses.

XI.     **TRIAL EXHIBITS**

The parties refer the Court to the attached exhibit list (Exhibit 2).  This list contains those documents relied upon by Genlyte's experts and contained in their expert reports.  This list also contains Genlyte's demonstrative exhibits.  The parties reserve the right to supplement or amend the exhibit list and will provide the most current list at the time of trial.

Respectfully submitted,

| GENLYTE THOMAS GROUP LLC | ARCH LIGHTING GROUP |
| By Its Attorneys, | By its attorneys, |
| | |
| s/ Robert J. Theuerkauf | s/ Brett N. DOrny |
| James E. Milliman (Pro hac vice) | Brett N. Dorny, BBO# 628977 |
| James R. Higgins, Jr. (Pro hac vice) | LAW OFFICE OF BRETT N. DORNY |
| Robert J. Theuerkauf (Pro hac vice) | 321 Church Street |
| MIDDLETON REUTLINGER | Northborough, Massachusetts  01532 |
| 2500 Brown & Williamson Tower | Telephone:  (508) 709-0501 |
| Louisville KY  40202 | Facsimile:  (508) 519-9185 |
| Telephone:  (502) 584-1135 | |
| Facsimile:  (502) 561-0442 | |

-and-

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
Cesari and McKenna, llp
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927


Dated:  December 8, 2006

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants, if any, on this 9th day of December, 2006.

               __s/ Brett N. Dorny_____

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC, a Delaware Limited Liability Company<br><br>              Plaintiff,<br><br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP, a Rhode Island Corporation<br><br>              Defendant. | Civil Action No. 05-CV-10945 WGY |

**STIPULATION OF UNDISPUTED FACTS**

Pursuant to the Court's Procedural Order Re: Final Pretrial Conference/Trial, the parties, Genlyte Thomas Group LLC ("Genlyte") and Arch Lighting Group ("ALS"), have discussed and hereby stipulate to the following undisputed facts:

1. The inventors of the '254 Patent are William Fabbri and Roy Crane.

2. Genlyte is a Delaware Corporation with its principle offices located in Louisville, Kentucky.

3. ALS is a Massachusetts Corporation with its principle place of business in Taunton, Massachusetts. ALS does business under the names of Architectural Lighting Systems and ALS.

4. Genlyte has not authorized ALS to make, use, sell or offer to sell, or import any device into the United States under the '254 Patent.

5. Genlyte manufactures and sells, through its Lightlolier division, ceiling-mounted, integrated patient room luminaires containing multiple light fixtures under the '254 Patent. Those luminaires are the MD*Coffer and the MD4.

6. In or about 2001, ALS commenced the manufacture of ceiling-mounted, integrated patient room luminaires containing multiple light fixtures.

7. In or about June 2001, ALS commenced selling the ceiling-mounted, integrated patient room luminaires containing multiple light fixtures under the name MulTmed.

8. In or about May 2006, ALS commenced selling ceiling-mounted, integrated patient room luminaires containing multiple light fixtures under the name Latitude.

9. The MulTmed products are installed on or in a ceiling of a patient room over a hospital patient bed with one end of the luminaire near a vertical wall surface (or headwall).

10. The Latitude products are installed on or in a ceiling of a patient room over a hospital patient bed with one end of the luminaire near a vertical wall surface (or headwall).

11. The MulTmed products include multiple fixtures integrated into a single body to provide light for different types of functions necessary in patient rooms, including patient reading, ambient room lighting, and examination of a patient.

12. There are two principal models for the MulTmed product, 2 x 2 and 2 X 4.

13. The MulTmed 2 x 4 product includes three fixtures, each having one or more fluorescent lamps, which ALS designates as a "reading" fixture, an "ambient" fixture and an "examination" fixture.

14. The MulTmed 2x2 product includes two fixtures, each having one or more fluorescent lamps. The fixtures provide the same functions as in the MulTmed 2 x 4

2

product, but in various combinations, including (1) a reading light and an ambient light and (2) an ambient light and an examination light.

15. For each of the models of the MulTmed product, there are a variety of options. Options include a nurse/chart light, lamp types, voltage levels, and mounting structures.

16. The fixture of the MulTmed products designated by ALS as the "reading" fixture contains a single fluorescent lamp parallel to the shorter end of the product. The MulTmed products are installed with the fixture designated by ALS as its "reading" fixture closest to the wall at the head of the patient's bed.

17. The fixture of the MulTmed products designated by ALS as the "reading" fixture does not produce any upwardly directed light.

18. The fixture of the MulTmed products designated by ALS as its "ambient" fixture contains two fluorescent lamps, is substantially square and is positioned opposite what ALS designates as the "reading" fixture.

19. In the MulTmed 2x4 product, the two fluorescent lamps in the light fixture designated by ALS as the "ambient" fixture are parallel to each other and perpendicular to the ends of the product.

20. In the MulTmed 2x2 product having fixtures designated by ALS as "ambient" and "examination" fixtures, the two fluorescent lamps in the "ambient" fixture are positioned similarly to those in the MulTmed 2x4 product, parallel to each other and perpendicular to the ends of the product.

21. In the MulTmed 2x2 product having fixtures designated by ALS as "reading" and "ambient" fixtures, the two fluorescent lamps in the "ambient" fixture are

parallel to the fluorescent lamp in the "reading" fixture and are parallel to the ends of the product.

22. The fixture of the MulTmed products designated by ALS as the "ambient" fixture does not produce any upwardly directed light.

23. The fixtures of the MulTmed products designated by ALS as the "examination" fixture direct light downwardly to a patient examination area. Those fixtures contain two lamps, positioned along each of the sides of the 2x4 product, and either one or two lamps, positioned along each of the the sides of the 2x2 product.

24. The fixture designated by ALS as the "reading" fixture of the MulTmed products direct light downwardly to a selected reading area under the fixture.

Respectfully submitted,

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC | ARCH LIGHTING GROUP |
| By Its Attorneys, | By its attorneys, |
|   s/ Robert J. Theuerkauf |   s/ Brett N. Dorny |
| James E. Milliman (Pro hac vice) | Brett N. Dorny, BBO# 628977 |
| James R. Higgins, Jr. (Pro hac vice) | LAW OFFICE OF BRETT N. DORNY |
| Robert J. Theuerkauf (Pro hac vice) | 321 Church Street |
| MIDDLETON REUTLINGER | Northborough, Massachusetts 01532 |
| 2500 Brown & Williamson Tower | Telephone: (508) 709-0501 |
| Louisville KY 40202 | Facsimile: (508) 519-9185 |
| Telephone: (502) 584-1135 | |
| Facsimile: (502) 561-0442 | |

-and-

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
Cesari and McKenna, llp
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927


Dated:  December 8, 2006

# EXHIBIT 2

EXHIBIT LIST

1. U.S. Patent No. 5, 038, 254 (original and copies)
2. The prosecutions history of the '254 Patent, including all assignment documents
A. The IESNA Lighting Handbook, Applications Volume, 1987, including p. 7-10 – 7-12
B. The IESNA Lighting Handbook, 8th Edition, including p. 559-560
C. Settlement agreement between Genlyte and Day-O-Lite/SCW
D. Settlement and license agreement between Genlyte and Cooper
E. Settlement and license agreement between Genlyte and Vista
F. Settlement agreement between Genlyte and Kenall
G. Summary of Genlyte sales for patented products from date of inception to current
3. Letter from Jim Higgins to ALS, dated 9/20/04
4. Letter from Elliot Salter to Jim Higgins, dated 9/30/04
5. Letter from Jim Higgins to Elliot Salter, dated 11/5/04
6. Letter from Elliot Salter to Jim Higgins, dated 11/8/04
7. Letter from Jim Higgins to Elliot Salter, dated 11/10/04
8. Letter from Elliot Salter to Jim Higgins, dated 11/29/04
9. Letter from Jim Higgins to Elliot Salter, dated 12/6/04
10. Letter from Elliot Salter to Jim Higgins, dated 12/20/04
11. Letter from Jim Higgins to Elliot Salter, dated 12/22/04
12. Letter from Elliot Salter to Jim Higgins, dated 12/23/04
13. Letter from Robert Theuerkauf to Elliot Salter, dated 2/4/05
14. Letter from Robert Theuerkauf to Elliot Salter, dated 2/22/05
15. Letter from Elliot Salter to Robert Theuerkauf, dated 2/28/05
16. Letter from Elliot Salter to Robert Theuerkauf, dated 3/22/05
H. Genlyte's demonstrative exhibits provided at the *Markman* hearing held on June 30, 2006
I. Genlyte's demonstrative exhibits provided at the Summary Judgment hearing held on November 28, 2006
J. A handheld compact fluorescent work light
K. An incandescent bulb
17. The MulTmed MT2 (physical sample)
18. Cart for mounting accused products
19. MulTmed Brochure
20. ALS' MulTmed powerpoint presentation
21. Large photos of MulTmed from ALS' powerpoint presentation
22. MulTmed MT2(A and B) applications/specification/photometry sheet
23. Photometric test report G2005043
24. Photometric test report G2005044
25. Photometric test report G2005045
26. ALS' photometric reports for the MT2
27. MulTmed photometric performance sheet
28. MulTmed wiring and control schematic worksheets
29. MulTmed installation instructions
30. The MulTmed MT1D (physical sample)

31. MulTmed MT1 (D, E and F) applications/specification/photometry sheet
32. ALS' photometric reports for the MT1D
33. The MulTmed MT1E (physical sample)
34. ALS' photometric reports for the MT1E
35. The Latitude (physical sample)
36. Latitude brochure
37. Latitude specification sheet, dated 3/1/06
38. Latitude applications/specification/photometry sheet
39. ALS' photometric reports for the Latitude
40. Summary of ALS' customer files
41. Letter from Scott Davis to Shrader Electric, dated 1/30/03
42. Memo from Scott Davis to All ALS Sales Reps, dated 5/15/03
43. MulTmed installations resume
44. Letter from Scott Davis to Jerry Cohen, dated 6/21/01
L.  Statement of Thomas M. Lemons, dated 5/18/06
M. IESNA Lighting Handbook, 1984, including pp. 1-11, 1-14, 1-17, 1-26, 1-31 and 1-32
N. Rebuttal Statement of Thomas M. Lemons, dated 6/5/06
O. IESNA Lighting Handbook, 1959, including pp. 3-14, 12-14
P.  Conwed Ceiling Products Brochure (1975)
Q. Rapid Lighting Design and Cost Estimating by Prafulla S. Sorcar, 1979, including pp. A-38, B-1, B-2, B-16, B-20, B-34, B-42, B-52 and C-22
R.  The Optical Design of Reflectors by William B. Elmer, 1980, including p. 29
S.  Expert Declaration of Thomas M. Lemons, dated 10/27/06
T.  Illustration of patient room, Exhibit E to Lemons Declaration
45. Drawing/spec sheet of MulTmed 2x2 (ALS0376)
46. Drawing/spec sheet of MulTmed 2x4 (ALS0377)
47. Photographs of MulTmed fixture in use (GTG00675-705)
U. Supplemental Expert Declaration of Thomas M. Lemons, to be produced, including all exhibits thereto
V.  Expert Report of Michael Tate, dated 10/24/06
W. A chart summarizing Genlyte's damages, including summary of ALS' dollar sales and quantification of reasonable royalty amount of damages
X. A list of the *Georgia-Pacific* factors
Y. Charts providing further detail of the *Georgia-Pacific* factors, including a summary of Genlyte's sales and profits
48. Genlyte 12/31/01 Form 10-K
49. Genlyte 12/31/02 Form 10-K
50. Genlyte 12/31/03 Form 10-K
51. Genlyte 12/31/04 Form 10-K
52. Genlyte 12/31/05 Form 10-K
53. Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, and supplements thereto
54. ALS Invoices
55. ALS Quotes
56. ALS 12/20/05 Inventory Transaction History

57. ALS General Ledger for 2/02 – 12/02
58. ALS Price List for MulTmed products
Z.  Lightolier Fluorescent Sales 2002-2005
AA. Vista Lighting and JJI Quarterly Royalty Payments to Lightolier
59. MD*4 / MD*Coffer Brochure
AB.  Lightolier price lists, effective 6/15/05, 1/2/03, 11/1/04, 9/27/02
AC.  Lightolier Quotes
AD.  Lightolier Fluorescent Sales Product Line 1994 through Feb. 2006
AE.  Lightolier PV% for 2004 and 2005
AF.  Lightolier PV% for 2001 through 6/30/2006
AG.  Lightolier Fluorescent Sales 2002 through 6/2006
AH.  Lightolier Analysis Package for 2006
AI.  Lightolier Analysis Package for 2005
AJ.  Lightolier Analysis Package for 2004
AK.  Lightolier Analysis Package for 2003
AL.  Lightolier Analysis Package for 2002
AM.  Supplemental Expert Report of Michael Tate, to be produced, including all exhibits thereto
60. Summary of MulTmed sales in numbers and dollars
61. Summary of revenue, expenses and profits for MulTmed
62. Perspective view of 2x4 MulTmed
63. Plan view of 2x4 MulTmed
64. Side sectional view of 2x4 MulTmed
65. End sectional view of 2x4 MulTmed
66. Perspective view of 2x2 MulTmed, Style D
67. Plan view of 2x2 MulTmed, Style D
68. Side sectional view of 2x2 MulTmed, Style D
69. Perspective view of 2x2 MulTmed, Style E
70. Plan view of 2x2 MulTmed, Style E
71. End sectional view of 2x2 MulTmed, Style E
72. Perspective view of 2x2 MulTmed, Style F
73. Plan view of 2x2 MulTmed, Style F
74. Side sectional view of 2x2 MulTmed, Style F
75. Lightolier Fluorescent Medical Luminaires Brochure
76. Letter from J. Remmers to M. Kaufman dated 7/19/90
77. Humana Hospital sketches
78. Memorandum from B. Fabbri to B. Kaufman dated 10/17/90
79. Letter from J. Remmers to M. Kaufman dated 7/24/90
80. What Is Medilyte? brochure
81. U.S. Patent No. 3,928,757
82. U.S. Patent No. 2,557,129
83. U.S. Patent No. 4,816,969
84. Humana Memo, dated 3/5/91