UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>      Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP,<br><br>      Defendant/Counterclaimant. | Civil Action No. 05-CV-10945 WGY |

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

Defendant, Arch Lighting Group, Inc. ("ALS") hereby requests that the jury be given the following instructions.

**Introductory Instructions**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.  Remember that in a very real way you are the judges--judges of the facts. Your only interest is to seek the truth from the evidence in the case.

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence--such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Burdens of Proof No. 1**

**Preponderance of the Evidence**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first burden of proof is "by a preponderance of the evidence." When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

**Authority:**

Ninth Circuit Model Civil Jury Instructions; Federal Circuit Bar Model Patent Jury Instructions

**Burdens of Proof No. 2**

**Clear and Convincing Evidence**

The second burden of proof standard is a higher one. It is called "clear and convincing evidence." It requires that you must be persuaded by the evidence that it is highly probably that the claim is true.

**Authority:**

*Cruzan v. Director, Missouri Department of* Health, 497 U.S. 261, 282 (1990); *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984); Ninth Circuit Model Civil Jury Instructions; Federal Circuit Bar Model Patent Jury Instructions

**Claim Construction and Infringement No. 1**

**Claim Construction and Infringement - Generally**

Genlyte has accused ALS of infringing U.S. Patent No. 5,038,254 or the '254 patent. Genlyte has the burden of proving infringement by a preponderance of the evidence.

Before you decide whether or not ALS has infringed the claims of [the plaintiff's] patent, you will have to understand the patent "claims." The patent claims are numbered paragraphs at the end of the patent. The patent claims involved here are claims 1 and 3, beginning at column 3, line 36 of the patent, which is exhibit 1. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.  Each of the claims must be considered individually, and not all claims of a patent have to be infringed for the patent to be infringed. To prove patent infringement, Genlyte need only establish by a preponderance of the evidence that one claim is infringed.

You must compare ALS's accused products with the claims of the '254 patent when making your decision regarding infringement.

**Authority:**

35 U.S.C. 112; *Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 5 USPQ2d 1266 (Fed. Cir. 1987); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 8 USPQ2d 1468 (Fed. Cir. 1988); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 3 USPQ2d 1412 (Fed. Cir. 1987); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 11 USPQ2d 1321 (Fed. Cir. 1989), *cert. denied,* 493 U.S. 1024 (1990).

**Claim Construction and Infringement No. 2**

To decide the question of infringement, you must first understand what the claims of the patent cover, that is, what they prevent anyone else from doing.  In this case Genlyte and ALS agree about the meaning of several parts of the claims. Genlyte and ALS do not agree about the meaning of other parts of the claims. It is my duty to interpret these contested words and groups of words for you.

I will now tell you the meanings of the following words and groups of words from the patent claims. You must use these meanings in your deliberations concerning infringement.

With respect to the first fixture recited in claims 1 and 3, the terms "oriented to direct light downwardly to a selected reading area" means "set or arranged to direct or aim more light in a downward direction than in an upward or outward direction to a reading area."

With respect to the second fixture recited in clams 1 and 3, the terms "oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body" means "set or arranged to direct or aim more light in a downward and outward direction than in an upward direction to a wall."

**Authority:**

Transcript of Markman Hearing (June 30, 2006); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 8 USPQ2d 1468 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 223 USPQ 1264 (Fed. Cir. 1984); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 34 USPQ2d 1321 (Fed. Cir. 1995).

**Claim Construction and Infringement No. 3**

**Construction of Means-Plus-Function Claims**

The following clause used in claims 1-3 of the '254 patent is in a special form called a "means-plus-function" clause. "Means for ceiling mounting said body." This clause requires a special interpretation under the patent law. The law says that those words shall not cover all means which perform the recited function of "mounting the body on the ceiling", but shall cover only the structure or structures described in the patent specification and drawings that performs that function, or an equivalent of that structure. You must determine what structure or structures are disclosed in the '254 patent for mounting the body on the ceiling.

**Authority:**

35 U.S.C. 112; *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 223 USPQ 1264 (Fed. Cir. 1984); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 23 USPQ2d 1426 (Fed. Cir. 1992); *Valmont Indus., Inc. v. Reinke Mfg., Inc.,* 983 F.2d 1039, 1042-43, 25 USPQ2d 1451, 1454 (Fed. Cir. 1993); *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573 (Fed. Cir. 1993).

**Claim Construction and Infringement No. 4**

**Infringement - Generally**

I will now instruct you as to the rules you are to follow in arriving at your decisions as to whether ALS has infringed any of the claims of '254 patent.

The patent law gives the owner of a valid patent the right to exclude others from making, using offering for sale, or selling the patented invention during the term of the patent. The patent law provides that any person or business entity which, without the patent owner's permission, makes, uses, offers for sale, or sells within the United States any product that is covered by at least one claim of a patent before the patent expires, infringes the patent. Here, Genlyte alleges that several of ALS's products infringe one or more claims of U.S. Patent No. 5,038,254.

**Authority:**

35 U.S.C. 281, 271.


**Claim Construction and Infringement No. 5**

**Two Types of Direct Infringement; Literal Infringement**

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents," which I will address shortly.

To determine literal infringement, you must compare the accused product with each claim that Genlyte asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if ALS's product includes each and every element in that patent claim. If ALS's product does not contain one or more elements recited in a claim, ALS does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually and with respect to each product individually.

**Authority:**

*Martin v. Barber,* 755 F.2d 1564, 1567, 225 USPQ 233, 234-35 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1484, 221 USPQ 649, 655 (Fed. Cir.), *cert. denied,* 469 U.S. 924 (1984); *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1281-82, 230 USPQ 45, 46 (Fed. Cir. 1986).


**Claim Construction and Infringement No. 6**

**Infringement of Means-Plus-Function Claims**

I have previously instructed you that the claims of the '254 patent contain means-plus-function clauses. To determine whether Genlyte has proven infringement of these claims, you must first determine whether or not Genlyte has shown that any structure in ALS's product performs the function of "mounting the body on a ceiling." If you find that it does, you must then determine whether or not Genlyte has shown that that structure is identical to any structure disclosed in the patent specification for performing that function.  If you find that it is, then the means-plus-function clause of '254 patent is found in ALS's product.  If you find that the structure of ALS's product is not identical to a structure that performs that function in the patent specification, then you must consider whether or not ALS's product has a structure that is equivalent to any structure described in the patent specification for performing that function.

To show infringement, it is Genlyte's burden to prove, by a preponderance of the evidence, that the part of ALS's product that performs the function of "mounting the body on the ceiling" is identical to, or equivalent to, a structure described in the specification for performing that function.

**Authority:**

35 U.S.C. 112; *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 223 USPQ 1264 (Fed. Cir. 1984); *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n,* 805 F.2d 1558, 231 USPQ 833 (Fed. Cir. 1986); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 23 USPQ2d 1426 (Fed. Cir. 1992); *Valmont Indus., Inc. v. Reinke Mfg., Inc.,* 983 F.2d 1039, 1042-43, 25 USPQ2d 1451, 1454 (Fed. Cir. 1993); *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1583 (Fed. Cir. 1993); *Rite-Hite Corp. v. Kelley Co.,* 819 F.2d 1120, 1124-25, 2 USPQ2d 1915, 1918 (Fed. Cir. 1987).

**Doctrine Of Equivalents**

If you find that Genlyte has not proved that every part of a claim of the '254 patent is present in ALS's products, there is no literal infringement. You must then consider whether Genlyte has proved infringement under the doctrine of equivalents. Under the doctrine of equivalents, you must find that there is an equivalent part in ALS's product for each element of the patent claim that is not literally present in the ALS's product.

Genlyte has the burden of proving by a preponderance of the evidence that the ALS's products contain the equivalent of each element of the claimed invention that is not literally present in ALS's products. You are to determine whether there is infringement under the doctrine of equivalents based upon the claims of the patent as I have interpreted them for you. If you find that any element of a claim of the patent is simply not present in ALS's products, either literally or equivalently, then you may not find that the claim is infringed.

In deciding whether there is infringement under the doctrine of equivalents, each element contained in a patent claim is important. Therefore, the question is whether ALS's products contain an equivalent for each element of the claim. The question is not whether the products overall is equivalent to the invention as a whole.

You should consider whether a substituted element represents a change that a person of ordinary skill in the art would have considered insubstantial at the time of the infringement. Another test you may apply to determine equivalence is whether one of ordinary skill in the art would consider that a component of ALS's products performs substantially the same function in substantially the same way to produce substantially the same result compared to the corresponding element of the claim.

**Authority:**

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 117 S.Ct. 1040 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 607-610 (1950); *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,* 62 F.3d 1512, 1520 (Fed. Cir. 1995), *rev'd on other grounds,* 117 S.Ct. 1040 (1997); *Athletic Alternative, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1581 (Fed. Cir. 1996); *Corning Glass Works v. Sumitomo Elec., U.S.A.,* 868 F.2d 1251, 9 U.S.P.Q.2d 1962 (Fed. Cir. 1989); *Moeller v. Ionetics, Inc.,* 794 F.2d 1565, 229 U.S.P.Q. 992, 995 (Fed. Cir. 1986).


**Patent Damages No. 1**

**General**

If you do not find that any of ALS's products infringe at least one claim of the '254 patent, you are not to consider the issue of damages. However, if you find that any of ALS's products infringe at least one of the claims of the patent in suit, you must determine the amount of damages to be awarded Genlyte for the infringement.

The amount of those damages must be adequate to compensate Genlyte for the infringement. Your damage award should put Genlyte in approximately the financial position it would have been in had the infringement not occurred; but in no event may the damage award be less than a reasonable royalty.

I will now explain how you should determine an appropriate damage award.

**Authority:**

35 U.S.C. 284; *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1574, 7 USPQ2d 1606, 1612 (Fed. Cir. 1988); *Milgo Elec. Corp. v. United Business Communications, Inc.,* 623 F.2d 645, 664, 206 USPQ 481, 496 (10th Cir.), *cert. denied,* 449 U.S. 1066, 208 USPQ 376 (1980); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507, 141 USPQ 681, 694 (1964); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326, 5 USPQ2d 1255, 1259-60 (Fed. Cir. 1987).


**Patent Damages No. 2**

**Burden of Proof**

Genlyte has the burden of proving each element of its damages by a preponderance of the evidence.

7

**Patent Damages No. 3**

**Lost Profits ("But-For" Test)**

Here, Genlyte is seeking its lost profits as part of its patent damages. Genlyte must prove the amount of its lost profits. Your determination of that amount must not be based on speculation or guess. However, the law does not require mathematical precision in this proof of loss, but only proof to a reasonable, although not absolute, certainty. To recover lost profits for some or all of the infringing sales, Genlyte must show that if defendant had not infringed, Genlyte would have made those sales that ALS made with the infringing product. You must determine what the customers who purchased the infringing product would have done if the infringement had not occurred.

**Authority:**

*King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 863-64, 226 USPQ 402, 409-10 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 633 F. Supp. 1047, 229 USPQ 873 (D. Del. 1986); *Cashman v. Allied Prods. Corp.,* 761 F.2d 1250, 1253 (8th Cir. 1985); *Leoni v. Bemis Co.,* 255 N.W.2d 824 (Minn. 1977); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428, 8 USPQ2d 1323, 1331-32 (Fed. Cir. 1988); *Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 785 F.2d 1013, 228 USPQ 938 (Fed. Cir. 1986); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1365, 220 USPQ 763, 774-75 (Fed. Cir.), *cert. denied,* 469 U.S. 821 (1984); *Central Soya Co. v. Geo A Hormel & Co.,* 723 F.2d 1573, 220 USPQ 490 (Fed. Cir. 1983); *Milgo Elec. Corp. v. United Business Communications, Inc.,* 623 F.2d 645, 663, 206 USPQ 481, 495 (10th Cir.), *cert. denied,* 449 U.S. 1066, 208 USPQ 376 (1980); *Photo Elecs. Corp. v. England,* 581 F.2d 772, 784, 199 USPQ 710, 721 (9th Cir. 1978).

**Patent Damages No. 4**

**Reasonable Royalty**

The patent law specifically provides that the amount of damages that the accused infringer must pay the patentee for infringing patent may not be less than a reasonable royalty.

**Authority:**

35 U.S.C. 284; *Hickory Springs Mfg. Co. v. Fredman Bros. Furniture Co.*, 509 F.2d 55, 184 USPQ 459 (7th Cir. 1975).

**Patent Damages No. 5**

**Reasonable Royalty**

If you find that Genlyte has not proved its claim for lost profits, or if you find that Genlyte has proved its claim for lost profits for only a portion of the infringing sales, you must then determine what a reasonable royalty would be for that portion of the infringer's sales for which you have not awarded lost profit damages. Genlyte is entitled to a reasonable royalty for all infringing sales for which it is not entitled to lost profits damages.

**Authority:**

*Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 491 F. Supp. 996, 1006, 206 USPQ 976, 984 (D. Ariz. 1980); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577, 12 USPQ2d 1026, 1028-29 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022, 17 USPQ2d 1706 (1990); *Orthman Mfg. v. Chromalloy Am. Corp.*, 512 F. Supp. 1284, 210 USPQ 364 (C.D. Ill. 1981); *Bio-Rad Lab. v. Nicolet Instrument Corp.*, 739 F.2d 604, 616, 222 USPQ 654, 663 (Fed. Cir. 1984).


**Patent Damages No. 6**

**Definition of Reasonable Royalty**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between Genlyte and a company in the position of ALS taking place at the time that the infringement began in May of 2001. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and that the licensee would respect the patent.

**Authority:**

*State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1579, 12 USPQ2d 1026, 1030 (Fed. Cir. 1989), *cert. denied,* 493 U.S. 1022, 17 USPQ2d 1706 (1990); *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 166 USPQ 235 (S.D.N.Y. 1970), *modified and aff'd sub nom.,Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295, 170 USPQ 369 (2d Cir.), *cert. denied,* 404 U.S. 870, 171 USPQ 322 (1971); *Trio Process Corp. v. L Goldstein's Sons, Inc.,* 533 F.2d 126, 129, 189 USPQ 561, 563-64 (3d Cir. 1976).

**Patent Damages No. 7**

**Reasonable Royalty (Relevant Factors)**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors.

1. Any royalties received by Genlyte from other for the licensing of the patent in suit.
2. The rates, if any, paid by ALS to license other patents.
3. Genlyte's established policy and marketing program to maintain his right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.
4. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.
5. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such collateral sales.
6. The duration of the patent.
7. The established profitability of the product made under the patent; its commercial success; and its current popularity.
8. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.
9. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.
10. The extent to which the accused infringer has made use of the invention; and any evidence that shows the value of that use.
11. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
12. The portion of the profit that arises from the patented invention itself as opposed to profit arising from features unrelated to the patented invention, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

**Authority:**

*Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 166 USPQ 235 (S.D.N.Y. 1970), *modified and aff'd sub. nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295, 170 USPQ 369 (2d Cir.), *cert. denied,* 404 U.S. 870, 171 USPQ 322 (1971); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 898-900, 229 USPQ 525, 526-28 (Fed. Cir. 1986).

**Willful Infringement**

Genlyte has asserted that ALS's infringement of the '254 patent was "willful" under the patent laws. If you find infringement, you must determine whether or not the infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

A. ALS had actual knowledge of the '254 patent, and
B. ALS had no reasonable basis for believing that its products did not infringe the '254 patent.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether ALS intentionally copied the product covered by the plaintiff's patent, whether the defendant exercised due care to avoid infringing the patent, whether the defendant relied on competent legal advice, and the defendant's behavior as a party to the litigation.

**Authority:**

*Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1583 (Fed.Cir. 1996); *Gustafson, Inc. v. Intersystems Industrial Products, Inc.,* 897 F.2d 508, 510-11 (Fed.Cir. 1990); *Ortho Pharmaceutical Corporation v. Smith,* 959 F.2d 936, 944 (Fed.Cir. 1992); *In re Hayes Microcomputer Products, Inc.,* 982 F.2d 1527, 1543 (Fed.Cir. 1992); *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1571 (Fed.Cir. 1996); *Ryco, Inc. v. Ag-Bag Corporation,* 857 F.2d 1418, 1428 (Fed.Cir. 1988); *Ortho,* 959 F.2d at 944.


**Interference with Business Relations No. 1**

**Elements of Claim**

One of the contentions of plaintiff is that defendant tortiously interfered with plaintiff's contractual relations with other potential purchasers of the assets and liabilities of plaintiff.

To establish tortious interference with contractual relations, plaintiff must show:

    1. Existence of a contractual or business relationship or expectancy;

    2. An intentional act of interference by a party outside that relationship or expectancy;

    3. Proof that the interference caused the harm sustained; and,

    4. Damages.

**Authority:**

Restatement, Second, Torts §§ 766B, 767; *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272, 571 N.E.2d 1363 (1991). *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20 (1990)


**Interference with Business Relations No. 2**

**Factors for Consideration**

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration may be given to the following factors:

> The nature of the actor's conduct;
>
> The actor's motive;
>
> The interest of the other with which the actor's conduct interferes;
>
> The interest sought to be advanced by the actor;
>
> The social interests in protecting the freedom of action of the actor and the contractual interests of the other;
>
> The proximity or remoteness of the actor's conduct to the interference; and
>
> The relations between the parties.


**Authority:**

Restatement, Second, Torts § 767.


**Interference with Business Relations No. 3**

 **Manner of Interference**

One who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of that relation, whether the interference consists of:

    1. Inducing or otherwise causing a third person not to enter into or continue the prospective relation; or

    2. Preventing the other from acquiring or continuing the prospective relation.

**Authority:**

Restatement, Second, Torts § 766B.


**Interference with Business Relations No. 4**

**Damages**

If you find that Genlyte improperly interfered with ALS's prospective business relations,, you must determine ALS's damages. ALS has the burden of proving damages by a preponderance of the evidence and it is for you to determine what mages have been proved. Damages means the amount of money which will reasonably and fairly compensate the ALS for any injury you find was caused by the Genlyte. You should consider the value of any business that was lost and/or the damage to ALS's reputation which resulted from the improper acts of Genlyte.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.


**Authority:**

*Mailhiot v. Liberty Bank & Trust Co.*, 24 Mass.App.Ct. 525, 528, 510 N.E.2d 773 (1987); *Gould v. Kramer*, 253 Mass. 433, 440, 149 N.E. 142 (1925).

                                                    Respectfully submitted,

Dated:  January 19, 2007             _s/ Brett N. Dorny_____
                                               Brett N. Dorny,  BBO# 628,977
                                               Law Office of Brett N. Dorny
                                               386 West Main Street, Suite 12A
                                               Northborough, Massachusetts  01532
                                               508-709-0501
                                               bndorny@dornylaw.com
                                               Attorney for Defendant

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by facsimile and mail to those indicated as non-registered participants on January 19, 2007.

                                               _s/ Brett N. Dorny_____
                                               Brett N. Dorny