UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC, a Delaware Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP, a Rhode Island Corporation<br><br>Defendant. | Civil Action No. 05-CV-10945 WGY |

## PLAINTIFF GENLYTE THOMAS GROUP LLC'S TRIAL BRIEF

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), hereby submits its trial brief pursuant to the Court's Procedural Order of November 28, 2006, and states:

**I.     INTRODUCTION**

This is an action for patent infringement brought by Genlyte against the Defendant, Arch Lighting Group ("ALS"). The patent-in-suit is U.S. Patent No. 5,038,254 ("the '254 Patent").

The '254 Patent is directed to an integrated medical light system containing multiple light fixtures within a ceiling-mounted body to provide the different types of illumination needed for a hospital patient room. The '254 Patent is a pioneering patent. As such, it is one of Genlyte's most valuable pieces of intellectual property. It is a pioneering patent because it revolutionized the lighting in patient hospital rooms.

Prior to the inventions disclosed in the '254 Patent there lacked a convenient and efficient way for providing the different types of illumination needed for a patient hospital bed. Generally, until the inventions of the '254 Patent were made available,

hospitals utilized a multitude of separate lighting fixtures, in combination, to provide the lighting that was required for a patient bed. These fixtures were either mounted on the wall or were bedside fixtures, while other fixtures were mounted on arms to extend over the patient bed. Using such fixtures in combination had many drawbacks such as: (1) requiring multiple electrical outlets; (2) having too few electrical outlets for both the light fixtures and medical equipment; (3) competition between the fixtures and medical equipment for wall space; and (4) impeding the movement of the patient, the patient's bed, or the surrounding medical equipment. The inventions disclosed in the '254 Patent solved these problems.

The specification of the '254 Patent teaches that the system is ceiling-mounted adjacent to a headwall over a patient bed in order to provide the necessary lighting for the patient. Generally, Claim 1 of the '254 Patent defines, in part, an integrated, ceiling-mounted system that contains two fixtures: a fixture that provides light downwardly to a reading area and a second fixture that provides light downwardly and outwardly to a vertical wall whereby light is reflected back to a broad area under the system.

Lightolier Fluorescent, a division of Genlyte, is located in Wilmington, Massachusetts and is the producer of the patented products. The two inventors of the '254 Patent, William Fabbri and Roy Crane, are employed at Lightolier. Mr. Fabbri is the Vice President and General Manager and Mr. Crane is the Director of Engineering.

## II.    THE MEANING OF THE CLAIMS OF THE '254 PATENT

The Court set forth the meaning of the claim terms in dispute during the June 20, 2005 *Markman* hearing. However, Genlyte recognizes that Federal Circuit precedent

permits the Court to engage in a "rolling claim construction." *Conoco, Inc. v. Energy & Environ. Int'l*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). The *Conoco* court stated:

> [A] district court may engage in claim construction during various phases of litigation, not just in a Markman order. We have recognized that district courts may engage in "rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."

460 F.3d at 1359, quoting *Guttmann, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002), which in turn cited *Sofamor Danek Group, Inc. v. Depuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996).

Consequently, Genlyte expects to provide evidence through the testimony of the inventors, William Fabbri and Roy Crane, related to the history and technology of the '254 Patent, including the development of the inventions disclosed and claimed.

## II.    THE '254 PATENT IS INFRINGED

Genlyte alleges that ALS has infringed, directly or indirectly, certain claims of the '254 Patent. Genlyte expects the evidence to show that ALS' MulTmed and Latitude products (collectively, "the Accused Products") literally contain, and/or contain an equivalent to, each and every element of at least Claim 1 of the '254 Patent.

Genlyte bears the burden of proof of infringement and will establish by a fair preponderance of the evidence that the asserted claims are infringed, either literally or under the doctrine of equivalents or both. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999); *Warner-Jenkinson Co. Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

Specifically, Genlyte expects the evidence to show that each of the Accused Products is a medical light system that contains, as required by Claim 1 of the '254 Patent, the following:

a. a body;

b. a means for ceiling-mounting said body;

c. a first light fixture within said body oriented to direct light downwardly to a selected reading area under said body; and

d. a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body.

In addition to Mr. Fabbri and Mr. Crane, who as persons skilled in the lighting arts are competent to testify whether the ALS Accused Products contain the above claim limitations, Genlyte expects to call Thomas M. Lemons, a registered professional engineer, who has practiced product and lighting installation design in the lighting field for 56 years and is a Fellow of the Illuminating Engineering Society of North America. Mr. Lemons will provide testimony regarding the technology and physics of lighting. In addition, Mr. Lemons has analyzed the Accused Products and through his expected testimony, and documentary evidence produced primarily by ALS, will show that each of the above claim elements are present in the Accused Products so consequently each of the asserted claims is infringed by the Accused Products. 35 U.S.C. § 271.

Additionally, Genlyte expects that the testimony of ALS' President and owner, Scott A. Davis, and ALS' own product documentation will show that the Accused Products contain all of the elements (or equivalents thereto) of at least Claim 1 of the '254 Patent.

4

### III.    DAMAGES

Upon a finding of infringement, Genlyte is entitled to damages adequate to compensate Genlyte for the use made by ALS of the invention, in an amount no less than a reasonable royalty. 35 U.S.C. § 284. Genlyte will establish by a fair preponderance of the evidence that it is entitled to damages. Genlyte's damage expert, Michael Tate, is expected to testify regarding his computation of damages based on the reasonable royalty model under the factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.). Mr. Tate will show that in a hypothetical negotiation the parties would have agreed upon a royalty rate of 15% of ALS' revenue for the Accused Products, which is in the middle of a range of effective royalties for which Mr. Tate finds substantial support. In light of this rate, Mr. Tate is expected to testify that Genlyte is entitled to damages of at least $299,889. This amount accounts for sales of the Accused Products through September 2006. Such a showing will also entitle Genlyte to recover and the Court to award, pursuant to 35 U.S.C. § 284, prejudgment interest of at least $35,580. Genlyte further expects to call William Fabbri, the Vice-President of Lightolier, to provide evidence supporting Mr. Tate's damage analysis.

Further, upon a finding of infringement, Genlyte is entitled to injunctive relief from the Court, pursuant to 35 U.S.C. § 283, such that ALS will be permanently enjoined from manufacturing, selling, offering to sell or importing the Accused Products.

### IV.    ALS' INFRINGEMENT IS WILLFUL

Genlyte bears the burden of proof and will establish by clear and convincing evidence that ALS' infringement of the '254 Patent is willful within the meaning of 35

5

U.S.C. § 284.  *WMS Gaming Inc. v. International Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999).

Once an accused infringer receives notice of a patentee's rights that accused infringer has an affirmative duty to determine whether its acts will be infringing.  *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983).  The proper time for assessing willfulness is at the time of notice of infringement.  *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342 (Fed. Cir. 1998).

Genlyte expects to show at trial that ALS knew of the '254 Patent prior to manufacturing and selling the Accused Products and that ALS knew its actions could potentially be infringing.  In particular, Genlyte believes the evidence will show that ALS' President and owner, Scott Davis, was in possession of product literature for Genlyte's patented product which identified such product as being covered by the '254 Patent.  And, despite knowing of the '254 Patent, Mr. Davis failed to take <u>any</u> affirmative action to determine whether the Accused Products might infringe the '254 Patent before commencing or continuing activities related to the Accused Products, as USA patent law affirmatively requires him to do.  *Underwater Devices v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983).

Such evidence will show that ALS acted in conscious disregard of Genlyte's rights under the '254 Patent, which in turn entitles the Court to enhance the damages, pursuant to 35 U.S.C. §284, up to three times the amount found or assessed.  *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468-69 (Fed. Cir. 1997) (stating that a finding of willfulness supported a trebling of damages).

6

II.  **THE CASE IS EXCEPTIONAL**

Genlyte will establish by clear and convincing evidence that this case is exceptional, under 35 U.S.C. § 285, allowing the Court to award Genlyte its attorney fees. The circumstances that make a case exceptional for an award of attorney fees align with the circumstances that justify enhancing the damages. In other words, the evidence in which Genlyte intends to offer showing ALS willfully infringed the '254 Patent will likewise prove that the case is exceptional. *See e.g., Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 376 (Fed. Cir. 1994).

Nonetheless, Genlyte intends to show that in addition to ALS' willful infringement, its misconduct as a litigant likewise supports an award of attorney fees. In an attempt to determine its lost profits, as part of its damage case, Genlyte sought through discovery the identity of ALS' end customers (i.e., the healthcare facilities). ALS repeatedly stated, including in a court filing under oath, that any documents which would identify the end customer had already been produced to Genlyte. However, after Genlyte disputed ALS' contentions and its discovery responses, ALS eventually allowed Genlyte to inspect its files. A paralegal from Genlyte's counsel's office was required to spend five days, from November 27, 2006 to December 1, 2006, reviewing ALS' files relating to the Accused Products. Contrary to ALS' representations, the face of approximately 90% of those files revealed the identity of the healthcare facility that purchased the Accused Products.

ALS only made all the relevant information available when ALS allowed Genlyte to inspect its files despite the fact that ALS had repeatedly maintained that ALS did not have such information and had already produced what information it did have. The

information obtained during Genlyte's inspection could have, and should have, been produced in January 2006 when ALS first responded to Genlyte's discovery requests. ALS' misrepresentations prevented Genlyte from obtaining the needed information until December 2006, a month before trial, which has prevented Genlyte from timely developing its damage claim for lost profits.

        Respectfully submitted,

        /s/ Kevin Gannon
        James E. Milliman (Pro hac vice)
        James R. Higgins, Jr. (Pro hac vice)
        Robert J. Theuerkauf (Pro hac vice)
        MIDDLETON REUTLINGER
        2500 Brown & Williamson Tower
        Louisville KY  40202
        Telephone:  (502) 584-1135
        Facsimile:  (502) 561-0442

        -and-

        Thomas C. O'Konski  BBO#337475
        Kevin Gannon  BBO#640931
        CESARI AND MCKENNA, LLP
        88 Black Falcon Avenue
        Boston, MA  02210
        Telephone:  (617) 951-2500
        Facsimile:  (617) 951-3927

        *Counsel for Plaintiff,*
          *Genlyte Thomas Group LLC*

<u>Certificate of Service</u>

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 20th day of January, 2007.

                                                      /s/ Kevin Gannon
                                                      *Counsel for Plaintiff, Genlyte Thomas Group LLC*