UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br>a Delaware Limited Liability Company<br>Plaintiff,<br><br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a<br>division of ARCH LIGHTING GROUP, a<br>Rhode Island Corporation<br><br>Defendant. | Civil Action No. 05-CV-10945 WGY |

## GENLYTE THOMAS GROUP LLC.'S
## REQUEST FOR PRE-TRIAL CHARGE

Pursuant to Fed.R.Civ.P. 51(a), Genlyte Thomas Group LLC. ("Genlyte Thomas") requests the Court give the following Pre-Trial Charge to the jury. ALS objected to the video prepared by the Federal Judicial Center which gave a non-partisan overview of the patent system. Genlyte Thomas believes that an overview given by the Court would be helpful to the jury's understanding of the patent system. The following Pre-Trial Charge has been adapted from the Model Patent Jury Instruction Subcommittee of the American Intellectual Property Law Association's Federal Litigation Committee.

### PRE-TRIAL CHARGE

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

**I.   THE NATURE OF THE ACTION AND THE PARTIES**

This is a patent case. The patent involved in this case relates to a ceiling-mounted integrated medical light system. During the trial, the parties will offer testimony to familiarize you with this technology.

The United States Patent and Trademark Office has granted a patent to William C. Fabbri and Roy Crane for inventions relating to this technology. The Plaintiff, Genlyte Thomas Group LLC, is the owner of the patent, which is identified by the Patent Office by number: No. 5,038,254 (which may be called "the '254 Patent").

### A.     The United States Patent

A valid United States patent gives its owner the right to exclude others from, making, using, offering to sell, or selling the patented invention within, or importing the patented invention into, the United States, its territories, and its possessions. During the trial, the parties will offer testimony to familiarize you with how one obtains a patent from the United States Patent and Trademark Office (sometimes referred to as "the PTO"), as well as with the contents of a patent, including the specification or written description and the claim or claims by which the applicant defines the subject matter of his or her invention.

I will briefly describe some of the terms for you so that you have some background in patent terminology. The Patent and Trademark Office, the PTO, is in the Washington, D.C. area and is an agency of the Federal Government. It has more than a thousand technically educated examiners who examine applications for patents.

The application is the initial set of papers filed with the PTO by the applicant. In addition to some other papers such as the inventor's oath, the application includes a specification, which must have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention. The specification concludes with one or more numbered

sentences. These are the claims. The purpose of the claims is to particularly point out what the applicant regards as his or her invention. When the patent is eventually issued by the PTO, the claims define the scope of the patent owner's exclusive rights during the life of the patent.

After the applicant files the application, a PTO patent examiner who examines the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner makes a search of the PTO records for prior art to the patent application claims. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. Prior art is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the effective filing date of the application.

Following the prior art search and examination of the application, the patent examiner then advises the applicant in writing what the examiner has found and whether he has "allowed" any claim. This writing from the PTO examiner is called an office action. More often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to this, and sometimes changes the claims or submits new claims. This process may go back and forth between the patent examiner in the PTO and the applicant for several months or even for years until the examiner is satisfied that the application and claims meet the conditions for patentability.

The papers generated during this time of corresponding back and forth between the PTO patent examiner and the applicant is what is called the prosecution history. This

history of written correspondence is contained in a file in the PTO, and consequently some people over the course of the trial may call this history the file wrapper.

### B. Patent Litigation

A company is said to be infringing on claims of a patent when they, without permission from the patent owner, make, use, import, offer to sell or sell the patented invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner that believes someone is infringing on his or her exclusive rights under a patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages. The patent owner has the burden to prove infringement of the claims of the patent. The patent owner also has the burden to prove damages caused by that infringement, which are adequate to compensate for the infringement. Damages may be measured by the patent owner's lost profits caused by the infringement. Damages may not be less than a reasonable royalty for the use made of the invention.

A person sued for allegedly infringing a patent can deny infringement. In evaluating infringement, each claim is to be evaluated independently. I will now briefly explain the parties' basic contentions in more detail.

## II. CONTENTIONS OF THE PARTIES

In this case, the plaintiff, Genlyte Thomas contends that the defendant, Architectural Lighting Systems, Inc. – who we will call ALS - makes, offers for sale and sells lighting products that infringe claim 1 of the '254 Patent. Genlyte Thomas has the burden of proving that ALS infringes the '254 patent by a preponderance of the evidence. That means that Genlyte Thomas must show that it is more likely that ALS' products infringe than they do not infringe.

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents," which I will address shortly.

To determine literal infringement, you must compare the accused product with each claim that Genlyte Thomas asserts is infringed. It will be my job to tell you what the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A claim of the '254 Patent is literally infringed only if ALS' products include each and every element of that patent claim. You must determine literal infringement with respect to each patent claim individually. If ALS' product does not contain one or more elements recited in a claim, ALS does not literally infringe that claim.

I will now explain the "Doctrine of Equivalents." You may find that ALS' products infringe a claim of Genlyte Thomas' patent, even if not every element of that claim is literally present in ALS' products. However, to do so, you must find that there is an equivalent component in ALS' products for each element of the patent claim that is not literally present in ALS' products. This is called infringement under the doctrine of equivalents.

Genlyte Thomas has the burden of proving by a preponderance of the evidence that ALS' products contain the equivalent of each element of the claimed invention that is not literally present in ALS' product.

ALS denies that it is infringing the '254 patent.

**III.    TRIAL PROCEDURE**

We are about to commence the opening statements in the case. Before we do that, I want to explain to you a little bit about the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six stages or phases. We have already been through the first phase, which is to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence in the case.

The evidence comes in the next phase, the third phase, when the witnesses will take the witness stand and the documents will actually be offered and admitted into evidence. In the third phase, the plaintiff goes first in calling witnesses to the witness stand. These witnesses will be questioned by the plaintiff's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After the plaintiff has presented its witnesses, the defendant will call its witnesses, who will also be examined and cross-examined.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an open mind as the evidence comes in. Wait until all the evidence comes in before you make any decision. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, after the evidence has been presented, then the lawyers again have an opportunity to talk with you in what's called closing argument, which is the fourth phase. Again, what the lawyers say is not evidence. The lawyers'

closing arguments to you are for the purpose of helping you in making your determination.

After that phase, we reach the fifth phase of the trial, which is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained a little bit about the law to you. But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a determination in the case. Remember that it will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You have to apply those facts to the law and the patent claims as I instruct you at the close of the evidence.

You are the judges of the facts. I will explain to you the rules of law which apply to this case, and I will also explain to you the meaning and scope of the patent claims. You must follow that law and claim interpretation whether you agree with it or not. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

        Respectfully submitted,

        /s/ Kevin Gannon
        James E. Milliman (Pro hac vice)
        James R. Higgins, Jr. (Pro hac vice)
        Robert J. Theuerkauf (Pro hac vice)
        MIDDLETON REUTLINGER
        2500 Brown & Williamson Tower
        Louisville KY  40202
        Telephone:  (502) 584-1135
        Facsimile:  (502) 561-0442

        -and-

        Thomas C. O'Konski  BBO#337475
        Kevin Gannon  BBO#640931
        CESARI AND MCKENNA, LLP
        88 Black Falcon Avenue
        Boston, MA  02210
        Telephone:  (617) 951-2500
        Facsimile:  (617) 951-3927

        *Counsel for Plaintiff, Genlyte Thomas Group LLC*

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 20th day of January, 2007.

        /s/ Kevin Gannon
        *Counsel for Plaintiff, Genlyte Thomas Group LLC*