UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,

       Plaintiff/Counterclaim Defendant,

   v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP,

       Defendant/Counterclaimant.

Civil Action No. 05-CV-10945 WGY

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**

Defendant, Arch Lighting Group, Inc. ("ALS") hereby opposes the various Motions In

Limine filed by Plaintiff, Genlyte Thomas Group LLC ("Genlyte") on January 19, 2007.

Genlyte filed three Motions in Limine to preclude (1) testimony regarding invalidity of the patent

in suit, (2) testimony regarding Genlyte's commercial embodiments of the patent in suit, and (3)

testimony of Dr. Ian Lewin, ALS's technical expert, regarding non-infringement.[1]  As discussed

in greater detail below, Genlyte's motions are baseless and only serve to increase the costs of

ALS in defending this action and waste the time of the parties and the Court.  Furthermore,

Genlyte's motions would require preclusion of substantially all of its own proffered testimony as

well.  Therefore, the motions should be denied.

A.    <u>Invalidity Is Not An Issue For Trial Under the Court's Claim Interpretation.</u>

ALS's counsel stated during the Final Pretrial Conference that ALS will not be

presenting evidence at trial of patent invalidity.  At the Markman Hearing on June 30, 2006, the

Court provided its interpretation of certain claim terms.  Specifically, the Court indicated that the

claims require (1) a first fixture which directs or aims more light in a downward direction than

---

[1] Genlyte had previously filed a motion in limine to preclude Dr. Lewin, which was denied.

outward or upward to a reading area and (2) a second fixture which directs or aims more light in a downward and outward direction than upward to a vertical wall. ALS does not intend to present evidence of prior art illustrating two fixtures which direct more light in different, specific directions under the Court's claim interpretation.

Despite the statements by ALS's counsel, Genlyte saw fit to file a Motion in Limine regarding evidence of patent invalidity. Allegedly, the motion was necessary in because Dr. Ian Lewin, ALS's technical expert, mentioned patent invalidity during his deposition. However, in its motion, Genlyte fails to disclose the specific statements made by Dr. Lewin or the context in which they were made. When Dr. Lewin referred to patent invalidity, Genlyte's counsel was questioning him regarding notes made in December 2005, six months before the claims were interpreted by the Court. In response to questioning by Genlyte's counsel, Dr. Lewin testified that in his reports on claim interpretation, submitted to the Court in preparation for the Markman hearing, he had indicated that the patent would be invalid if the second fixture were interpreted to be an ordinary fluorescent fixture instead of a fixture with specialized distribution towards a wall. Since the Court has interpreted the claim to clearly require directing more light towards a wall, Dr. Lewin's prior statements are no longer at issue. Accordingly, Genlyte's Motion in Limine as to Invalidity is unnecessary and not based upon any opinions expressed by Dr. Lewin with respect to the claims as interpreted by the Court.

B.    Genlyte's Commercial Embodiment Is Relevant.

Genlyte also seeks to preclude all testimony regarding its commercial embodiments of the '254 Patent. This motion is overly broad in application and would prevent substantially all of Genlyte's own witnesses.

ALS agrees that an infringement analysis requires a comparison of the accused products with properly interpreted claims and that the accused products are not to be compared to the patentee's products. *Nestier Corp. v. Menasha Corp.-Lewisystems Division*, 739 F.2d 1576, 1579 (Fed.Cir.1984), cert. denied, 470 U.S. 1053 (1985). However, this does not mean that a patentee's commercial embodiment cannot be mentioned. *See Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 274 (Fed. Cir. 1985) (patentee allegations of improper comparison to commercial embodiment not supported by record which showed expert testimony comparing accused products to claims); *Cf. Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135 (Fed. Cir. 1986) (court reference to commercial embodiment was not improper when claims properly compared with prior art for determining validity). There is no legal basis for preventing all reference to Genlyte's commercial embodiment.

On the other hand, much testimony, both from ALS and Genlyte, is likely to refer to Genlyte's commercial embodiment. Genlyte identified the inventors of the '254 patent as witnesses in the Joint Pretrial Memorandum to testify, among other things, as to "how and when the invention was conceived and developed", "Genlyte's efforts to … commercialize the invention", "the commercial success of Genlyte's patented products", and "attempts by other to copy the patented products." All of these issues would necessarily require testimony regarding the commercial embodiments of the '254 Patent. Genlyte also identified Michael Tate to testify as to alleged damages sustained by Genlyte. Mr. Tate's testimony also necessarily require reference to Genlyte's commercial embodiments of the '254 Patent. Finally, ALS expects its president, Scott Davis, to testify regarding development, marketing and sales of the accused products. Such testimony will necessarily require reference to Genlyte's commercial products as competitive products. All such testimony is proper although it includes information regarding

Genlyte's products.  Genlye's Motion in Limine regarding its commercial embodiment, which would preclude all of this testimony, should be denied.

C.    <u>Dr. Lewin Should Not Be Precluded From Testifying.</u>

Genlyte seeks to disqualify Dr. Lewin as an expert and preclude his testimony.  The sole basis for Genlyte's motion is that Dr. Lewin did not inspect or view any of the accused products in reaching his opinion of non-infringement.  Nevertheless, Dr. Lewin did review sufficient information regarding the accused products, including photometric testing by Genlyte of the accused product, to reach his conclusions.  Genlyte has failed to prove that Dr. Lewin's opinion is not proper and, therefore, its motion should be denied.

As noted by Genlyte, patent infringement is a two step process.  First, the Court must determine the meaning of the claims.  *Markman v. Westview Inst. Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)(en banc), aff'd 517 U.S. 370 (1996).  Second, the claims, as interpreted, are compared to the accused product to determine infringement.  *Allen Eng'g Corp. v. Bartell Indus. Inc*., 299 F.3d 1336, 1345 (Fed. Cir. 2002).  The language of the claims controls how the comparison is to be made.  *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.), cert. denied, 488 U.S. 986 (1988) (citing Autogiro Co. v. United States, 384 F.2d 391, 395-96 (Ct.Cl. 1967)).  As interpreted by the Court, the claims of the '254 Patent require (1) a first fixture which directs or aims more light in a downward direction than outward or upward to a reading area and (2) a second fixture which directs or aims more light in a downward and outward direction than upward to a vertical wall.  Thus, a determination of infringement requires a comparison of the how each fixture in the accused product directs light.

How a fixture directs light, and particularly more light, cannot be determined by viewing a fixture.  On the other hand, photometric testing of fixture does provide information about how

the fixture directs light.  Therefore, in light of the nature of the claims and the products, Dr. Lewin reviewed proper information for determining infringement.

Contrary to the assertions of Genlyte, a determination of infringement in this case does not require review of products under actual installed conditions.  As noted in the case cited by Genlyte, the language of the claims is controlling.  *Rawlplug Co., Inc. v. Illinois Tool Works, Inc.*, 11 F.3d 1036, 1041 (Fed. Cir. 1993).  In *Rawlplug*, the claim recited the structure of an anchor bolt when driven into a hole in masonry.  *Id.* at 1045.  On the other hand, the claims of the '254 Patent merely recite "a lighting system."  There is nothing in the claim which requires the product to be installed in order to determine how the light is directed by the fixture.

Similarly, Genlyte's quotes from Dr. Lewin's deposition regarding the effects of fixture installation are irrelevant to the claims.  Genlyte's counsel asked whether the placement of the fixture would have an effect on how light is distributed throughout the room.  However, the claims of the '254 Patent recite how the fixtures direct light, not how light is distributed within a room.

Finally, Genlyte's position as to the necessary review is disingenuous.  If, as Genlyte suggests, the law requires review of a product in actual operating conditions, then Genlyte's expert would also have to be excluded.  Mr. Lemons, Genlyte's expert testified that he only saw the accused product installed in a room at Genlyte's facility "where they conduct seminars, presentations and such as well as where products are able to be displayed."  Lemons Deposition, page 66, lines 8-12.  He has never seen an actual installation of the accused products in their standard conditions in a hospital room.  Lemons Deposition, page 68, lines 15-17.

Dr. Lewin based his opinion on review of appropriate materials regarding operation of the accused products in light of the claims at issue. Accordingly, Genlyte's Motion in Limine to exclude Dr. Lewin's testimony should be denied.

CONCLUSION

For the reasons discussed above, all of Genlyte's Motions in Limine should be denied.

Respectfully submitted,

Dated:  January 21, 2007

 s/ Brett N. Dorny
Brett N. Dorny,  BBO# 628,977
Law Office of Brett N. Dorny
386 West Main Street, Suite 12A
Northborough, Massachusetts  01532
508-709-0501
bndorny@dornylaw.com
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by facsimile to those indicated as non-registered participants on January 21, 2007.

 s/ Brett N. Dorny
Brett N. Dorny