UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
          Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

          Defendant.

Civil Action No. 05-CV-10945 WGY

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE
REGARDING CLAIM TESTIMONY AND CROSS-MOTION IN LIMINE
TO RE-VISIT MARKMAN ISSUES
AND ENGAGE IN "ROLLING" CLAIM CONSTRUCTION**

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, opposes the motion in limine of Defendant, Arch Lighting Group, Inc. d/b/a Architectural Lighting Systems ("ALS") to restrict inventor testimony. Genlyte also cross-moves and invites the Court to re-visit its earlier *Markman* ruling, and engage in "rolling claim construction" as authorized (some say, encouraged) by the Federal Circuit in *Conoco, Inc. v. Energy & Env. Int'l, Inc.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). This response and cross-motion is filed well in advance of the final jury charge, to allow ALS to file its response to facilitate vigorous discussion.

As grounds for its cross-motion, Genlyte states as follows:

1.     At this Court's *Markman* hearing on June 30, 2006, this Court considered and adopted for use in this case the prior *Markman* ruling of Judge Ruben Castillo of the U.S. District Court for the Northern District of Illinois, with an additional interpretive element (*see* ¶ 6, *infra* regarding "aim"). However, Judge Castillo's Markman Order which this Court adopted was <u>vacated</u>. See, Exhibit A attached hereto. In view of the vacation of Judge

Castillo's Markman order, Genlyte invites this Court to perform "its own independent analysis" to reach its own Markman determinations. *MediaCom Corporation v. Rates Technology, Inc.*, 4. F.Supp. 2d 17, 24 (D. Mass. 1998) (MediaCom I), further proceedings, 34 F. Supp. 2d 76, 78 (*MediaCom II*)("my own independent conclusions").

2. In *MediaCom I*, this Court explicated its principles for conducting *Markman* proceedings. Particularly, this Court recognized that in patent cases, which "often implicate technical or highly specialized knowledge", *MediaCom I* at p.23, the Court finds itself "in the unaccustomed role of the layman." *Id.*, fn. 4. Thus, in some situations (particularly in *MediaCom*) this Court is "remiss to impose its lay understanding of this patent claim without the benefit of expert guidance." *MediaCom I* at p. 29. This is because "the assistance of skilled and knowledgeable artisans, of course, may prove invaluable in educating the judge in the nuances of the 'underlying technology.'" *MediaCom I*, at p. 24 (citation omitted). The Court finds that such assistance is particularly useful in "recondite fields of scientific endeavor [where] my own understanding is deficient." *MediaCom II* at p 78.

3. Further, Genlyte suggests that this is a case where "rolling" claim construction is particularly appropriate, because the intrinsic record of the '254 Patent is so sparse (the '254 Patent was allowed as filed in a first office action). *See Guttman, Inc. v. Kopykake Enters., Inc.* 302 F.3d 1352, 1361 (Fed. Cir. 2002). Because of the sparse intrinsic record, the Court does not have the benefit of how persons skilled in fluorescent lighting arts understand the term "oriented to direct." Genlyte submits that testimony (which the Court has not heard from witnesses or reviewed in the form of an expert Declaration) will show that the present

interpretation of "oriented to direct" is <u>contrary</u> to how a person skilled in fluorescent lighting understands, uses or applies that term. This of course invites error which Genlyte is trying to avoid.

4.  In *MediaCom I*, this Court expressed its belief that the most appropriate time to consider Markman issues (as it did to the parties in the present case), and at the same time avoid the prospect of an "elegant, but useless" claim construction (*MediaCom I* at 22) is in the context of "a hearing on a motion for summary judgment." *Id.*, <u>fn</u>. 2. Unfortunately, when this Court conducted the *Markman* hearing shortly after it assumed supervision of this case, there were no dispositive summary judgment motions pending. Consequently, the Court followed its usual practice of not considering any expert testimony regarding the underlying lighting technology (particularly, the Markman report of Genlyte's technical expert Thomas Lemons), because "there is no reason to receive 'expert opinion' by way of affidavits or testimony on the question of claim construction" (*MediaCom I* at p. 23). Thus, at the Markman hearing on June 30, the Court considered Lemons' report to be extrinsic evidence, despite Genlyte's invitation to consider the Lemons report only as a basis to increase the Court's cognitive awareness of the technology (*see*, Transcript of Proceedings, June 30 2006, p. 15, Line 22 – p. 16, Line 4), so that the Court would have an "adequate grounding in the relevant art to construe the claims definitively." *See MediaCom II* at p. 77, referring to *MediaCom I* at pp. 27-29.

5.  The Court has now had the opportunity to obtain the benefit of direct and cross-examination testimony from a number of skilled artisans in the fluorescent lighting field,

3

namely the scheduled witnesses in this case who can provide the Court with a proper understanding of the "nuances of the underlying technology" (*MediaCom I* at p. 24). Genlyte urges the Court to take advantage of the opportunity before it charges the jury.

6.      Genlyte respectfully submits that this Court's initial *Markman* rulings were *not* based on an adequate grasp of the underlying technology of fluorescent lighting, especially the differences between incandescent lighting (a "beam" of light which may be "aimed" if the light fixture is adjustable such as a flashlight, a spot light, or a sports field light) and fluorescent lighting (a "360 degree cone of energy" as characterized by Mr. Lemons, or a "blob" of light as testified to by ALS' Mr. Davis,

> It doesn't matter which way the lamps are oriented.  The light output
> is radially symmetric.  It's just a big round blob.] ).

Davis Depo. September 6, 2006, p. 77, Lines 16-18.  This is particularly relevant to this Court's construction that "to direct" includes an element of "aiming"--

> [S]ince he [Judge Castillo], it's somewhat tautological, he uses the
> same words where I thought you were supposed to substitute a word.
> I construe the word as equivalent to aim.  And if there's any problem
> with the jury, I'll explain it.  It's set or arrange[d] to aim more light[1].

Transcript June 30, 2006 page 8.  Persons skilled in the fluorescent lighting art understand that such a light source, including the "biax" compact fluorescent lamp ("CFL") light source of the preferred embodiment of the '254 Patent emit light in all directions, as even ALS' Mr. Davis concedes.  Given this acknowledged technological fact, surely the Court can appreciate that a "blob" of light of light cannot be aimed.

---

[1] The rest of the construction which was not included in the Court's quote is "more light in a downward and outward direction than in an upward direction."

4

7.      Persons skilled in the lighting arts also characterize light emitted from incandescent luminaries generally as a "beam"[2]. Testimony during trial will establish that only beams from an adjustable incandescent luminaire can be "<u>aimed</u>," whereas light from a fluorescent luminaire ("blob") can only be "<u>directed</u>." Thus, if the concept of "aim" remains as an element of claim construction, there is a considerable danger that the jury will be applying the claims of the '254 in a manner that is contrary to how a person of skill in fluorescent lighting would understand the terms. As stated, this invites error.

8.      This Court has acknowledged that patents are directed to persons skilled in the art. *See MediaCom I* at p. 24, "[p]atent specifications are written for persons of skill in the technical field", citing *Fromson v. Anitec Printing Plates, Inc.*, 132 F.3d 1437, 1442 (Fed. Cir. 1997). Here, where the Court has construed the patent claim term "to direct" as including "aiming" for the fluorescent luminaire disclosed in the '254 Patent, Genlyte suggests that the Court has construed a disputed, and critical, term of the '254 Patent in a manner inconsistent with how a person of ordinary skill in the lighting arts would understand the term "to direct" light. Perhaps this occurred because the Court was lulled by the simple words of the claims of the '254 Patent. But even apparently simple words can have, and in the case of the '254 Patent do have, specialized meanings to persons in the relevant technical field. Alternatively, perhaps the court was urged to adopt the "aiming" notion by ALS in its Markman papers (*see* <u>fn</u>. 2, *supra*). No matter how accomplished, Genlyte respectfully

---

2  An incandescent luminaire distributes (or "aims") its light to a well-defined area, whereas a wide beam fluorescent luminaire distributes (or "directs") its light over a wide area. An example of a well-known narrow beam device is defined in the IESNA hand book (Handbook and definition of "spot light" available when this motion is argued). A small version of a spot light is a flashlight, urged by ALS' expert Ian Lewin as an example of how light is "directed" during the Markman phase of this case. Perhaps this is what invited, Genlyte suggests inappropriately,

suggests that adoption of the "aiming" concept for the '254 Patent is decidedly at odds with how persons of skill in the fluorescent lighting arts would interpret and apply the term "to direct" the light emanating from a fluorescent luminaire.

9. During the June 30 Markman hearing, the Court determined at least in part to adopt the "aiming" concept to avoid a tautology (*i.e.*, declining to define a word by using the word itself). However, in technology areas in general, and with reference to "direct" in particular in the fluorescent lighting arts, avoiding a tautology with regard to a term that has specialized meaning in the relevant field, has the effect of <u>changing</u> the meaning of the term. Since patent terms are to be construed by a person skilled in the art after reading the entire patent in context, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)(*en banc*), adopting a meaning of a claim term that is inconsistent with how that term is understood by persons skilled in the relevant art merely to avoid a "tautology" is contrary to the *en banc* instruction of the Federal Circuit in *Phillips*.

10. Further, ALS suggests that Genlyte has agreed to the prior Markman ruling. Genlyte only stated that it could "live with" Judge Castillo's construction (now vacated), but that was before this Court added the notion of "aiming." Genlyte's objection to "aiming" was stated in Tom Lemons Expert Declaration of October 27, 2006 (*see* p. 7, fn. 5).

11. There are other aspects of this Court's *Markman* ruling that should be re-visited, namely

    a. "<u>More</u>" or "<u>highest intensity</u>" light in a certain "direction" than another. The '254 Patent does not discuss or suggest that "more" light must be

---

this Court to embrace the "aiming" notion.

6

sent in any direction than any other. People skilled in the lighting arts understand in that the '254 Patent discloses and claims a fluorescent luminaire containing different task lighting fixtures. There is not a single word in the '254 Patent that states that "more" light has to be directed anywhere. All that is disclosed and claimed in the '254 Patent is a fluorescent luminaire containing multiple and different light fixtures to accomplish the lighting tasks of providing "reading" light, "ambient" light and "examination" light. A person skilled in the fluorescent lighting art understands, after reading the entire '254 Patent in context, that a luminaire is provided with multiple fluorescent light fixtures to provide light to accomplish these well-understood tasks[3], not that "more" light is sent in any particular "direction." This is especially true where skilled artisans understand that the fluorescent light fixtures emit a "blob" of light from a fixed non-adjustable location, not narrow "aimable" beams from an adjustable incandescent fixture. If the claim terms of the '254 Patent are construed to require "more" or "highest intensity" light in a certain direction than another, the '254 Patent is easily avoided by persons who can arrange reflectors to send "more" or "more intense" light in another direction, yet still accomplish the main tasks of the light fixtures, *i.e.*, reading light, ambient light, examination light and nurse's

---

3  The claims themselves do not recite a "task" associated with any particular fixture. Instead, the claims recite/require a "first light fixture," "second light fixture," "third light fixture," unassociated with any particular task.

night light. Such a construction is squarely at odds with how the U.S. Patent & Trademark Office ("PTO") viewed the claims of the '254 Patent (*i.e.*, the PTO allowed all claims of the '254 Patent in a rare first office action allowance, without amendment[4]).

b. "<u>Oriented</u>." It should be noted that the claims recite that the <u>light fixture</u> is what is "oriented to direct" light as recited in the claims of the '254 Patent, not the lamps or any reflector. This is important, because as stated persons skilled in the fluorescent lighting art understand that the usual technique to direct the "blob" of light flux in a certain "direction" is to utilize <u>reflectors</u> (or in some cases refractors, or diffusers [*e.g.*, lamp shades, *etc.*) to redirect the light as desired (*see* IESNA definition of "reflector" and "refractor", also to be available at argument on this motion), or to use shields to prevent light from going to a particular location. In this regard, it is important to note that "reflectors" are not recited in the independent claims 1 or 3, but rather are recited only in dependent claims 2 and 4. Thus, Genlyte suggests that the proper construction of the claim term "oriented to direct" should consider how to "orient" a light fixture to direct light <u>without</u> utilizing reflectors, which Genlyte does not believe has occurred to date.

---

[4] In this regard, Genlyte suggests that this is why the '254 Patent has to date received such broad respect in the industry. Genlyte has successfully asserted the '254 Patent against multiple other competitors in the lighting industry. These competitors certainly understand the general principles of lighting technology which are discussed herein, and they also appreciate the strength of the '254 Patent as evidenced by the PTO's first office action allowance.

12.     Genlyte suggests that all of the foregoing considerations can, and should, be considered by this Court, now that it has more information on the context of lighting technology involved in this case.  Particularly, in *Conoco*, *supra*, the Federal Circuit stated,

> A district court may engage in claim construction during various phases of litigation, not just in a Markman order.  We have recognized that district courts may engage in "rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.

460 F.3d at 1359, quoting *Guttmann, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002), which in turn cited *Sofamor Danek Group, Inc. v. Depuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996).

13.     In *MediaCom*, this Court did not construe certain disputed claim terms until it considered itself "firmly grounded in an adequate understanding of the subject matter of the patent."  *MediaCom I* at p. 24; *MediaCom II* at 78.  Genlyte suggests that the above paragraphs evince a situation where this Court's prior construction was proffered without such an adequate understanding.  Therefore, Genlyte suggests that the Court should use the actual testimony at trial as an opportunity to revisit and discuss and determine whether its prior constructions were, and remain, consistent which how a person skilled in the fluorescent lighting arts would understand the terms after reading the entire '254 Patent in context.  *Phillips* at *Id*.

WHEREFORE, Genlyte requests that this Court use a portion of the trial of this cause to consider the actual testimony from persons skilled in the fluorescent lighting art and revisit its prior Markman rulings and engage in "rolling claim construction" to arrive at a proper construction of disputed claim terms to be used by the jury in their deliberations of this cause.

Respectfully submitted,

/s/ Kevin Gannon
James E. Milliman (Pro hac vice)
James R. Higgins, Jr. (Pro hac vice)
Robert J. Theuerkauf (Pro hac vice)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
Kevin Gannon  BBO#640931
CESARI AND MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

*Counsel for Plaintiff, Genlyte Thomas Group LLC*

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 21st day of January, 2007.

/s/ Kevin Gannon
*Counsel for Plaintiff, Genlyte Thomas Group LLC*



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 1138 | **DATE** | 10/26/2006 |
| **CASE TITLE** | Kenall Manufacturing vs. Genlyte Thomas Group | | |

**DOCKET ENTRY TEXT**

The parties' joint motion for entry of consent judgment and dismissal order (doc. # 138) is GRANTED. Enter attached consent judgment and dismissal order. Pursuant to the consent judgment and dismissal order, the case is dismissed with prejudice and without costs, with the Court retaining jurisdiction for purposes of enforcing the consent judgment and the parties' settlement agreement. The two opinions issued in this case that are reported at 439 F. Supp. 2d 854 (N.D. Ill. 2006) and 413 F. Supp. 2d 937 (N.D. Ill. 2006) are hereby vacated and de-published. The status conference set in the case for 11/02/06 is STRICKEN.

■ [ For further detail see separate order(s).]    Docketing to mail notices.

| | Courtroom Deputy Initials: | mm |
|---|---|---|

U.S. District Court
2006 OCT 27 PM 8:53
FILED