UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ARCH LIGHTING GROUP, INC. d/b/a<br>ARCHITECTURAL LIGHTING SYSTEMS<br><br>        Defendant. | Civil Action No. 05-CV-10945-WGY |

**PLAINTIFF'S MOTION TO CLARIFY
COURT'S INSTRUCTIONS TO JURY PRIOR TO FINAL CHARGE**

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, moves the Court to clarify the below three instructions to the jury prior to the Final Charge to the Jury. As grounds for this motion, Genlyte respectfully shows the Court:

1. During the Court's Preliminary Charge to the Jury, the Court stated,

> [T]he public is entitled, they're invited to teach a better mousetrap, to do it better but different, to improve or to do in a different way the invention. And so long as it's different, no infringement, no violation, nothing done wrong, because that's precisely what the whole idea of the law is.

Transcript of Proceedings, January 22, 2007, page 27, Lines 1-6[1].

Respectfully, this Statement by the court is error, for it does not pay proper attention to the role of the patent's <u>claims</u> in infringement litigation. "The 'coverage' provided by a patent is, of course, defined by the scope of its claims." *Zoltek Corp. v. U.S.*, 442 F.3d 1345, 1355 (Fed. Cir. 2006) (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("It

---

[1] A more complete excerpt of this portion of the Court's Preliminary Charge (pp. 26-27) is attached as Exhibit 1.

is the claims that measure the invention.")).  It is entirely possible that a product, such as ALS' MulTmed or Latitude product, would be "different" from the invention set forth in the written description (or Specification) of the '254 Patent, but still infringe a claim of the '254 Patent.  Infringement of an asserted patent is determined by comparing the accused device(s) to the claim(s) of a patent, not by determining whether or not the accused device is "different" from the invention described in the patent.

     Further, the instruction is error because it does not embrace the concept of a "blocking" patent, or as the Federal Circuit has termed it "dominance."   It is possible for the accused product to be so "different" from the patent that it is nonobviously different than the asserted patent so the accused product is awarded a patent itself.  However, so long as the accused product contains the elements of an asserted claim of the patent-in-suit, there is infringement *even if* the accused product has its own patent.  This is because a patent grants the holder only the negative right to exclude others from making, using, selling, offering to sell or importing into the United States items that are covered by one or more claims of the patent.  35 U.S.C. § 154.  A patent does not grant the holder any affirmative right to practice its own invention.  *See e.g., Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110, n. 9 (Fed. Cir. 1986) ("That someone has a patent right to exclude others from making the invention claimed in his patent does not mean his invention cannot infringe claims of another's patent broad enough to encompass, i.e., to "dominate," his invention."); *accord, U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247, 1253 n. 11 (Fed. Cir. 1989); *see also Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996)("That [the accused infringer] patented its unique purification method is irrelevant:  '[T]he existence of one's own patent does not constitute a defense to

infringement of someone else's patent. It is elementary that a patent grants only the right *to exclude others* and confers no right on its holder to make, use, or sell'")(*italics* in original; citation omitted).

    Respectfully, Genlyte requests the Court to clarify its instruction substantially as follows:

> [T]he public is entitled, they're invited to teach a better mousetrap, to do it better but different, to improve or to do in a different way the invention. And so long as it's different **in a way that does not violate any <u>claim</u> of the patent**, no infringement, no violation, nothing done wrong, because that's precisely what the whole idea of the law is.

Transcript of Proceedings, January 22, 2007, page 27, Lines 1-6 (**bold** and **<u>bold underline</u>** material suggested to be added, to correct error).

    2.   During the testimony of Mr. Lemons on January 24, 2007 regarding the Doctrine of Equivalents, the Court stated:

> THE COURT: Well, that's not right. So, if we're going to inquire about this, let me tell you what the law is.
>
> You started out right. You look at each element of the claim and then you see if that element is not literally present in the accused device, these devices that you've been testifying about, because the so-called accused devices, you look to see if there's something else that performs the same function in the same way by the same means. It's not just sort of a comparison how close it is.
>
> And of course I'm telling you that. You look to see if there's something else in the accused device that performs the same function in the same way using the same means, even though it's not literally the same.
>
> Now, that's the law … .

Transcript of Proceedings, January 24, 2007 (pp. 265, Lines 18-25; 266, Lines 1-7)[2].

---

[2] A more complete excerpt of this portion of the Court's Instruction (pp. 265-266) is attached as Exhibit 2.

Respectfully, this Statement by the court is an inaccurate and incomplete expression of the doctrine of equivalents as expressed by the Federal Circuit (applying decisional law of the Supreme Court). The correct inquiry is whether the accused device contains an element that does not literally meet the claim language but nevertheless contains an element that "perform[s] **substantially** the same function in **substantially** the same way to obtain **substantially** the same result." *V-Formation Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1313 (Fed. Cir. 2005), citing *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.,* 520 U.S. 17, 40 (1997)(emphasis added).

Respectfully, Genlyte requests the Court to clarify its doctrine of equivalents instruction substantially as follows:

> You look at each element of the claim and then you see if that element is not literally present in the accused device, these devices that you've been testifying about, because the so-called accused devices, you look to see if there's something else that performs **substantially** the same function in **substantially** the same way ~~using the same means~~ **to obtain substantially** the same **result**. It's not just sort of a comparison how close it is.
>   And of course I'm telling you that. You look to see if there's something else in the accused device that performs **substantially** the same function in **substantially** the same way ~~using the same means~~ **to obtain substantially** the same **result**, even though it's not literally the same.

Transcript of Proceedings, January 24, 2007, p. 265, Line 21 – p. 266, Line 6 (**bold** material suggested to be added; ~~strike through~~ suggested to be deleted, to correct error).

3. During the cross-examination of Mr. Lemons on January 24, 2007, the Court stated,

> THE COURT: It really isn't rocket science what I do over there. And let me explain something and hopefully it will make the further cross-examination make more sense to you.
>
>   Understand in this case on the issue of infringement what you're comparing. You're comparing the patent, what the patent says, the '254 patent, what it says in comparing that to the particular

> equipment, the products that, I'll call it ALS, everyone is, that ALS is out there selling. That's the comparison, what the patent says, to the ALS products.
>
> Now, in the real world you don't sell the patent and have it flash light wherever. What you do is the patent holder develops a product and sells its product. But you're not comparing the Genlyte/Lightolier product to the ALS product. You're comparing the patent to the ALS product.
>
> That's the comparison. And it has to be of the – because it's the patent that has the legal significance.
>
>                                * * *
>
> Now, with that in mind, you just remember that the comparison that we're going to ask you to make is patent to the ALS products.

Transcript of Proceedings, January 24, 2007 (pp. 306, Line 7 - 307, Line 5)[3].

The same as for the first suggested error above, this Statement by the court is error, for it does not pay proper attention to the role of the patent's <u>claims</u> in infringement litigation. "The 'coverage' provided by a patent is, of course, defined by the scope of its claims." *Zoltek Corp. v. U.S.*, 442 F.3d 1345, 1355 (Fed. Cir. 2006).

Genlyte requests the Court to clarify its instruction substantially as follows:

> Understand in this case on the issue of infringement what you're comparing. You're comparing **claims of** the patent, what the patent **claim** says, the '254 patent, what it says in comparing that to the particular equipment, the products that, I'll call it ALS, everyone is, that ALS is out there selling. That's the comparison, what the **claim of the** patent says, to the ALS products.
>
> Now, in the real world you don't sell the patent and have it flash light wherever. What you do is the patent holder develops a product and sells its product. But you're not comparing the Genlyte/Lightolier product to the ALS product. You're comparing the patent **claim** to the ALS product.
>
> That's the comparison. And it has to be of the – because it's the

---
[3] A more complete excerpt of this portion of the Court's Instruction (pp. 306-07) is attached as Exhibit 3.

5

>patent **claim** that has the legal significance.
>
> * * *
>
>Now, with that in mind, you just remember that the comparison that we're going to ask you to make is patent **claim** to the ALS products.

Transcript of Proceedings January 26, 2007, p. 306, Line 7 – p. 307, Line 5 (**bolded** material suggested to be added, to correct error).

## CONCLUSION

Respectfully, for the foregoing reasons and under the cited authorities Genlyte requests this Court clarify the above instructions as promptly as possible and in all events prior to the final Jury Charge in this case.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | GENLYTE THOMAS GROUP LLC |
|  | By Its Attorneys, |
|  |  |
|  | /s/ Kevin Gannon |
|  | James E. Milliman (Pro hac vice) |
|  | James R. Higgins, Jr. (Pro hac vice) |
|  | Robert J. Theuerkauf (Pro hac vice) |
|  | MIDDLETON REUTLINGER |
|  | 2500 Brown & Williamson Tower |
|  | Louisville KY  40202 |
|  | Telephone:  (502) 584-1135 |
|  | Facsimile:  (502) 561-0442 |
| -and- |  |
|  | Thomas C. O'Konski  BBO#337475 |
|  | Kevin Gannon BBO#640931 |
|  | Cesari and McKenna, LLP |
|  | 88 Black Falcon Avenue |
|  | Boston, MA  02210 |
|  | Telephone:  (617) 951-2500 |
|  | Facsimile:  (617) 951-3927 |
|  |  |
|  | Dated:  January 28, 2007 |

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants, if any, on this <u>28th</u> day of January, 2007.

                <u>/s/ Kevin Gannon    </u>

```
                                                           Page 1

             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

                                       Civil Action
                                       No. 05-10945-WGY



* * * * * * * * * * * * * * * * * *
GENLYTE THOMAS GROUP LLC,          *
a Delaware Limited Liability Company, *
                                   *   DAILY TRANSCRIPT
              Plaintiff,           *   OF PRETRIAL MATTERS,
    v.                             *   PRELIMINARY JURY
                                   *   INSTRUCTIONS,
ARCHITECTURAL LIGHTING SYSTEMS,    *   OPENING STATEMENTS
a division of ARCH LIGHTING GROUP, *   and THE EVIDENCE
a Rhode Island Corporation,        *
                                   *
              Defendant.           *
* * * * * * * * * * * * * * * * * *


          BEFORE:  The Honorable William G. Young,
                   District Judge, and a Jury




APPEARANCES:

        MIDDLETON REUTLINGER (By James E. Milliman,
   Esq., James R. Higgins, Jr., Esq. and Robert J.
   Theuerkauf, Esq.), 2500 Brown & Williamson Tower,
   Louisville, Kentucky 40202-3410, on behalf of the
   Plaintiff

        LAW OFFICE OF BRETT N. DORNY (By Brett N.
   Dorny, Esq.), 386 West Main Street, Suite 12A,
   Northborough, Massachusetts 01532, on behalf of
   Defendant


                                    1 Courthouse Way
                                    Boston, Massachusetts

                                    January 22, 2007
```

Page 26

1  things the Patent Office does, which really aren't disputed
2  here, about whether a patent should issue.  It's really not
3  disputed about whether this patent is valid or whether the
4  patent should have issued.  There are some cases like that.
5  But this isn't one of them.
6          So, in this case the Patent Office grants a patent.
7  And I don't think it's disputed but what Genlyte owns the
8  rights under that patent.  Whether they developed it or
9  whether they came to own it makes no difference in this
10 case.  But Genlyte owns the rights under the patent.  And
11 here's the deal under the law.
12         Genlyte gets the exclusive right to practice the
13 invention that is described, precisely described in the
14 patent.  No one else can practice the invention unless they
15 enter into a license agreement with Genlyte.  Now, that may
16 be valuable.  That may be an economic asset because the law
17 enforces that.  And that's what Genlyte is seeking here,
18 enforcement of its rights under a patent.
19         But there's another side to the deal.  The other
20 side to the deal is in order to get that right for the
21 period of time under the law you have that exclusive right,
22 you have to teach the world how to do what you do.  If
23 there's an invention you have to teach how to perform it.
24 And the advantage of that is when we know, when we, the
25 public, when people generally know how an invention is

1  performed the public is entitled, they're invited to teach a
2  better mousetrap, to do it better but different, to improve
3  or to do in a different way the invention.  And so long as
4  it's different, no infringement, no violation, nothing done
5  wrong, because that's precisely what the whole idea of the
6  law is.  We'll give the exclusive right to the owner of the
7  patent, but in return the owner of the patent is going to
8  teach us all how to do it.  Now, they're the only ones who
9  can do it the way they do it, but the world is invited to
10 build a better mousetrap.
11         So, a patent necessarily includes the description
12 of how to do it.  And this patent is no different than other
13 ones I've seen.  It has these diagrams and then it's got
14 some descriptions, it says here integrated medical light
15 system.  You'll hear people talk about the specifications.
16 That's the teaching how to do it.
17         Then on the last page in what is called for ease of
18 reference column 3, there is, it's fairly fine print, but it
19 says what is claimed.  And then there follows numbered
20 paragraphs of various claims.  A patent case focuses on
21 those claims.  Because what is claimed and granted by the
22 patent is what Genlyte -- I'm assuming they own the
23 patent -- has the exclusive right to perform.
24         So, the first thing Genlyte has to prove is they're
25 the owner of a patent.  Evidently this patent, that's going

Page 228

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action
No. 05-10945-WGY

* * * * * * * * * * * * * * * * * * *
GENLYTE THOMAS GROUP LLC,            *
a Delaware Limited Liability Company,*
                                     *
          Plaintiff,                 *   TRANSCRIPT OF
   v.                                *   THE EVIDENCE
                                     *      (Volume 3)
ARCHITECTURAL LIGHTING SYSTEMS,      *
a division of ARCH LIGHTING GROUP,   *
a Rhode Island Corporation,          *
                                     *
          Defendant.                 *
* * * * * * * * * * * * * * * * * * *


          BEFORE:  The Honorable William G. Young,
                   District Judge, and a Jury


APPEARANCES:

        MIDDLETON REUTLINGER (By James E. Milliman,
   Esq., James R. Higgins, Jr., Esq. and Robert J.
   Theuerkauf, Esq.), 2500 Brown & Williamson Tower,
   Louisville, Kentucky 40202-3410, on behalf of the
   Plaintiff

        LAW OFFICE OF BRETT N. DORNY (By Brett N.
   Dorny, Esq.), 386 West Main Street, Suite 12A,
   Northborough, Massachusetts 01532, on behalf of
   Defendant


                              1 Courthouse Way
                              Boston, Massachusetts

                              January 24, 2007

1  Latitude product infringes claim 1 literally of the '254
2  patent?
3  A    Yes.
4  Q    What is that opinion?
5  A    That it does.
6  Q    Does the ALS Latitude product that is on display here
7  contain each and every element and limitation of claim 1 as
8  construed by the Court?
9  A    Yes.
10 Q    Mr. Lemons, are you familiar with the doctrine of
11 equivalents under patent law?
12 A    Yes.
13 Q    And what is your understanding of the doctrine of
14 equivalents under patent law?
15 A    That if you have an element that is literally identified
16 in the patent that is substituted by another element you
17 look to see if there's any substantive difference.
18         THE COURT:  Well, that's not right.  So, if we're
19 going to inquire about this, let me tell you what the law
20 is.
21         You started out right.  You look at each element of
22 the claim and then you see if that element is not literally
23 present in the accused device, these devices that you've
24 been testifying about, because the so-called accused
25 devices, you look to see if there's something else that

Page 266

1  performs the same function in the same way by the same
2  means.  It's not just sort of a comparison how close it is.
3  And of course I'm telling you that.  You look to see if
4  there's something else in the accused device that performs
5  the same function in the same way using the same means, even
6  though it's not literally the same.
7          Now, that's the law and Mr. Higgins can ask you
8  questions if he wishes.
9          THE WITNESS:  Thank you.
10         MR. HIGGINS:  Very well, sir.
11 Q   I would like to redisplay the ALS MulTmed two by four
12 product.  Take this one down and put up the two by four.
13         (Pause in proceedings.)
14 Q   Would you please illuminate what ALS calls its ambient
15 fixture.
16 A   (Witness complied.)
17 Q   Mr. Lemons, if the jury were to decide that the ambient
18 fixture --
19         MR. HIGGINS:  Could you please display claim 1.
20 Q   -- were to decide that the ambient fixture, the second
21 light fixture of the patent, were not literally present, do
22 you have an opinion as to whether or not the ambient fixture
23 that is illuminated here meets the criteria that Judge Young
24 just explained under the doctrine of equivalents?
25 A   Yes.

Page 228

```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

                                   Civil Action
                                   No. 05-10945-WGY


* * * * * * * * * * * * * * * * *
GENLYTE THOMAS GROUP LLC,        *
a Delaware Limited Liability Company, *
                                 *
            Plaintiff,           *   TRANSCRIPT OF
     v.                          *   THE EVIDENCE
                                 *     (Volume 3)
ARCHITECTURAL LIGHTING SYSTEMS,  *
a division of ARCH LIGHTING GROUP, *
a Rhode Island Corporation,      *
                                 *
            Defendant.           *
* * * * * * * * * * * * * * * * *



         BEFORE:  The Honorable William G. Young,
                  District Judge, and a Jury


APPEARANCES:

        MIDDLETON REUTLINGER (By James E. Milliman,
   Esq., James R. Higgins, Jr., Esq. and Robert J.
   Theuerkauf, Esq.), 2500 Brown & Williamson Tower,
   Louisville, Kentucky 40202-3410, on behalf of the
   Plaintiff

        LAW OFFICE OF BRETT N. DORNY (By Brett N.
   Dorny, Esq.), 386 West Main Street, Suite 12A,
   Northborough, Massachusetts 01532, on behalf of
   Defendant


                                   1 Courthouse Way
                                   Boston, Massachusetts

                                   January 24, 2007
```

Page 306

1          MR. DORNY:  Okay.
2          (Whereupon the sidebar conference concluded.)
3          THE COURT:  It really isn't rocket science what I
4  do over there.  And let me explain something and hopefully
5  it will make the further cross-examination make more sense
6  to you.
7          Understand in this case on the issue of
8  infringement what you're comparing.  You're comparing the
9  patent, what the patent says, the '254 patent, what it says
10 in comparing that to the particular equipment, the products
11 that, I'll call it ALS, everyone is, that ALS is out there
12 selling.  That's the comparison, what the patent says, to
13 the ALS products.
14         Now, in the real world you don't sell the patent
15 and have it flash light wherever.  What you do is the patent
16 holder develops a product and sells its product.  But you're
17 not comparing the Genlyte/Lightolier product to the ALS
18 product.  You're comparing the patent to the ALS product.
19 That's the comparison.  And it has to be of the -- because
20 it's the patent that has the legal significance.
21         So, the cross-examination here is designed -- it's
22 not for me to say what it's designed for.  Mr. Dorny can
23 design it any way he wants.  But listen -- you've been shown
24 various mockups here.  And he wants to ask some questions
25 about the mockups and the like so that you can better

1  evaluate the testimony of the witness, its accuracy, its
2  persuasiveness.
3            Now, with that in mind, you just remember that the
4  comparison that we're going to ask you to make is patent to
5  the ALS products.
6            Go ahead, Mr. Dorny.
7            MR. DORNY:  Thank you, your Honor.
8  Q   Now my question.  Does this mockup that you had made by
9  Genlyte reflect what is shown in Figure 2 of the patent?
10 A   To a degree.
11 Q   Okay.
12 A   There is not two cross members.  The patent shows in
13 Figure 2 just below item 20, or just below the item 24, this
14 shows four lamps.  The ability to have four lamps.  There's
15 four lamps.  It shows a box.  The mockup shows a box.
16 Q   Okay.  Now, in the patent are the lamps as close
17 together as they are in the mockup?
18 A   No.
19 Q   Okay.  You referred to items 20 and 24.  Do you know
20 what 20 and 24 are?
21 A   I believe that they are what is called out as
22 luminaire -- light fixture 1, light fixture 2, light fixture
23 3.
24 Q   All right.  I would like you to turn to Figure 1 of the
25 patent.  The patent is Exhibit 1.