IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP, <br><br> Defendants. | Civil Action No. 05-CV-10945 REK <br><br> **AFFIDAVIT OF MICHAEL E. TATE** |

STATE OF ILLINOIS      )
                                           )   ss.:
COUNTY OF COOK    )

MICHAEL E. TATE, being duly sworn, deposes and says:

1. I am a Vice President of CRA International, Inc. ("CRA").

2. I am the same Michael E. Tate who testified as an expert at trial in the above-referenced matter regarding the amount of economic harm that Genlyte Thomas Group, LLC ("Genlyte") suffered as a result of Architectural Lighting Systems' ("ALS") infringement of Genlyte's U.S. Patent No. 5,038,254 ("the '254 patent").

3. I understand that the jury in this matter found that ALS' MulTmed MT1D, MT2A and MT2B light fixtures infringed the '254 patent ("ALS' infringing product").

4. I further understand that the jury awarded Genlyte $207,554 in damages.

5.  As part of my testimony at trial, I presented evidence of the quantity of sales ALS made of its accused MulTmed product from June 2001 through September 30, 2006. I testified that ALS sold ~~[REDACTED]~~ between June 2001 and September 30, 2006 (see Trial Exhibit 72).

6.  Based on the jury's liability verdict and damages award, counsel for Genlyte has asked me to make a determination of the reasonable royalty rate that would apply to ALS' infringing sales not accounted for in the jury's damages award (i.e., sales of ALS' infringing products that were made after September 30, 2006).

7.  Counsel for Genlyte has also asked me to quantify the amount of prejudgment interest that Genlyte is owed on the reasonable royalty damages awarded by the jury.

8.  In order to determine the royalty rate that would be applied to ALS' infringing product sales made after September 30, 2006, I performed the following analyses:

   a.  I deducted from the total units of the accused MulTmed light fixtures that ALS sold during the period June 2001 through September 30, 2006, ALS' unit sales of MulTmed products that the jury found did not infringe the '254 patent.

   b.  The model numbers which I deducted included the MT1E and MT1F.

   c.  The result of the calculation described in paragraphs 8.a and 8.b is the number of infringing MulTmed light fixtures that ALS sold during the period June 2001 through September 30, 2006.

REDACTED

      d.      I determined that ALS sold ▮▮▮ infringing light fixtures during the period June 2001 through September 30, 2006 (see Appendix B as attached hereto).

      e.      Next, in order to determine the royalty rate that would apply to ALS' infringing sales made after September 30, 2006, I divided the jury's reasonable royalty award of $207,554 which covered ALS' infringing activity through September 30, 2006 by the infringing unit sales ALS made during the period June 2001 through September 30, 2006.

      f.      The result of the calculation described in paragraph 8.e above yields an effective royalty rate of $67 per infringing unit (see Appendix B as attached hereto).

      g.      Thus, the reasonable royalty that Genlyte is owed for ALS' infringing sales made after September 30, 2006 should be determined by applying a royalty rate of $67 per unit to ALS' unit sales of infringing products made after September 30, 2006.

      h.      Since ALS has not provided information relating to the number of infringing sales it has made after September 30, 2006, I am not able to quantify the total royalty amount owed Genlyte on these sales at this time.

      9.      In addition to the reasonable royalty ALS owes Genlyte on its infringing sales, at the discretion of the Court, Genlyte may be entitled to an award of prejudgment interest.

      10.      I would normally calculate the amount of prejudgment interest to which Genlyte is entitled by using ALS' cost of debt and applying it to the damages amount. However, ALS has not provided information regarding its cost of borrowing. Therefore, in order to calculate the prejudgment interest owed Genlyte, I utilized the prime bank rate as a proxy for ALS' cost of borrowing.

11. In calculating the prejudgment interest owed Genlyte, I assumed that ALS would have made quarterly royalty payments to Genlyte, and that such payment would have been received by Genlyte 45 days after the quarter in which ALS made its infringing sales. For example, the royalty for ALS' infringing sales in the first quarter of 2006 would be paid to Genlyte on May 15, 2006.

12. Based on the interest rate and assumptions described in paragraphs 10 and 11 above, I calculated the prejudgment interest on the royalty damages owed Genlyte (through September 30, 2006) for the period June 2001 through January 31, 2007 to be $30,089 (see Appendix C-1 as attached hereto).

13. As discussed in paragraph 8.h above, at this time I am unable to quantify the royalty amount ALS owes Genlyte on its infringing sales made after September 30, 2006. Thus, the prejudgment interest amount determined in paragraph 12 above does not include an amount of prejudgment interest on the royalties owed to Genlyte for ALS' infringing sales made after September 30, 2006.

_____
Michael E. Tate

Sworn to before me this
2nd day of February, 2007

_____
Notary Public

OFFICIAL SEAL
LESLIE M. SPILLER
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires August 17, 2010

– 4 –

# Appendix A

**REDACTED**

# Appendix B

REDACTED

# Appendix C

REDACTED