## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSSETTS

GENLYTE THOMAS GROUP LLC,

                Plaintiff,

v.

                                      Civil Action No. 05-CV-10945-WGY

ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS

                Defendant.

### PLAINTIFF'S MOTION TO ALTER OR AMEND THE AMENDED JUDGMENT, TO RECONSIDER SAME, FOR RELIEF FROM AMENDED JUDGMENT AND/OR FOR SANCTIONS

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, moves the Court under Fed.R.Civ.P. 59(e) and/or 60(b) to vacate the Court's April 11, 2007 Order [Doc. No. 88] amending the Final Judgment and Permanent Injunction (the "Amended Judgment"). Alternatively, Genlyte seeks sanctions for the Defendant Arch Lighting Group, Inc. d/b/a Architectural Lighting Systems' ("ALS") breach of its discovery obligations. The basis of this motion is the misconduct by ALS for failing to disclose and withholding sales information of the infringing products during the trial of this case.

ALS' misconduct was discovered for the first time on March 12, 2007 -- after ALS filed, on February 20, 2007, its Motion for Judgment as a Matter of Law, to Alter Judgment, and/or for a New Trial ("ALS' Motion", Doc. No. 81) and after Genlyte filed its Response to ALS' Motion on March 6, 2007. On March 12, 2007, Genlyte received for the first time information from ALS that ALS had sold an additional 412 infringing MulTmed products between October 1, 2006 and entry of the Final Judgment and Permanent Injunction on February 5, 2007. (See Certification of

Paul B. Northrup, attached as Exhibit A).  These additional fixtures are **13%** of ALS total infringing sales.

The 412 infringing fixtures had not previously been accounted for by ALS.  It is indisputable that neither the Jury, nor the Court, nor Genlyte knew about those sales during the trial.  In fact, only ALS knew about them, and chose to disclose those sales, **for the first time,** at the late date of March 12, 2007.  Therefore, it is clear that ALS intentionally withheld critical information as to the sales of ALS' accused products prior to, and during, the trial of this case.  This misconduct was compounded when ALS, in ALS' Motion, again failed to disclose the additional sales of 412 infringing fixtures and used its own misconduct as a shield to avoid payment of royalties as required by statute.  Consequently, application of the Amended Judgment, as requested by ALS, allows ALS to benefit from its own misconduct because it means that the sale of an additional 412 infringing MulTmed products are free of royalty, contrary to the finding of the Jury that these products infringed Genlyte's patent and contrary to the remedy mandated under our patent laws, specifically 35 U.S.C. § 284.

Genlyte requests this Court to grant Genlyte relief from the Amended Judgment by vacating the Court's April 11, 2007 Order and reinstating paragraph four of the Final Judgment and Permanent Injunction [Doc. No. 80].

Alternatively, Genlyte moves the Court to issue sanctions against ALS in the amount of $27,604.00 (412 infringing products x $67 royalty per unit) under Fed.R.Civ.P. 37(d) for willful breach of its discovery obligations in failing to disclose critical sales information related to ALS' infringing products.

As and for the factual basis of this motion, Genlyte states:

1.     During discovery, to support its damages case, Genlyte served Interrogatory No. 19 and Document Request No. 13, as follows:

> Interrogatory No. 19:  State separately ALS' expenses, revenues and gross and net profits from ALS' manufacture, use, sale or offer for sale of the Multmed and/or the ceiling-mounted medical lighting fixtures identified in the Answer to Interrogatory No. 1 since inception.

> Request No. 13:  Produce all documents regarding, referring or relating to, or otherwise evidencing sales of and/or offers to sell the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

(*See* Plaintiff's First Set of Interrogatories and Requests for Production of Documents propounded to Defendant ["Plaintiff's Discovery"], attached as Exhibit B).  Thereafter, ALS served its Answers and Responses, certified as true and accurate by ALS' President, Scott Davis, on January 3, 2005 (*see* Defendant's Responses to Plaintiff's Discovery, attached as Exhibit C) and later supplemented the same on October 28, 2006.  ALS' supplementation provided sales data only through September 30, 2006.  (*See* Letter from Brett Dorny to Robert Theuerkauf, dated October 28, 2006, attached as Exhibit D).  ALS never supplemented its sales information after October 28, 2006, as required by Fed.R.Civ.P. 26(e), and withheld its sales data from October 1, 2006 through the date of trial, despite the fact that Genlyte expressly requested supplementation before Genlyte put on its damages case at trial.  (*See* Email from Robert Theuerkauf to Brett Dorny, dated January 28, 2007, attached as Exhibit E).  Therefore, during trial, Genlyte, the Jury and the Court had every right to believe and assume that the sales information provided by ALS and certified by Scott Davis was true and accurate at the time of

trial, and that there were no sales of infringing product between October 1, 2006 and the date of trial.

In that regard, at trial, ALS and Scott Davis sat mute while Genlyte's damages expert Michael Tate informed the jury that he was only provided sales data by ALS through September 30, 2006 (Trial Transcript, Volume 4, p. 423, Lines 2-3, "The latest data that we had from ALS was only through September."). Yet, as Mr. Tate was testifying, ALS, and only ALS, knew it had sold an additional 412 MulTmed products that should have been subject to Mr. Tate's analysis, and that ALS had not provided that data, despite an express request from Genlyte, and despite a duty under the civil rules to supplement discovery responses to make them accurate and complete at the time of trial.

Because of ALS' misconduct the Jury did not know, nor did the Court or Genlyte know, that ALS had sold any MulTmed products from October 1, 2006 through the date of trial. Nevertheless, the Court gave its damages instruction to the jury on the assumption that the parties had fulfilled their discovery obligations. ALS' misconduct is even more egregious given that ALS sought amendment to the Final Judgment based on the claim that the Jury's damages *included* the sales data after September 30, 2006, when that information was intentionally withheld from the Court and Genlyte, not only during the trial, **but at the time the Motion to Amend the Judgment was filed by ALS!** ALS should not be allowed to be rewarded for its deceptive gamesmanship.

2.    The Jury determined that the ALS' MulTmed MT2A, MT2B and MT1D products infringe Genlyte's '254 Patent. Under 35 U.S.C. § 284, the sale of every infringing product

4

"shall" bear damages in an amount "no less than a reasonable royalty."  Since the amount of

infringing sales between October 1, 2006 and the date of trial was withheld by ALS, there is no

way that the Jury could have considered the 412 infringing products as part of its damages award.

However, premised upon ALS motion and misconduct, under the Amended Judgment the Court

has determined that the damages award was for infringement up to the date of verdict (February

1, 2007).   This means that the 412 infringing products sold between October 1, 2006 and the

time of trial will not bear a royalty, in violation of the damages statute.  *See J.R. Clark Co. v.

Jones & Laughlin Steel Corp.*, 186 F. Supp. 22, 29 (S.D. Ind. 1960), aff'd 228 F.2d 279 (7 th Cir.

1961), cert. denied 368 U.S. 828 (1961) (where the court stated that upon a finding of

infringement an award of damages is "a mandatory requirement that leaves no discretion with the

court").  Accordingly, to comply with 35 U.S.C. § 284, the Court should reinstate paragraph four

of the original Judgment.

> 3.  Fed.R.Civ.P. 60(b) provides as follows,

> > On motion … the court may relieve a party … from a final judgment
> > [or] order … for the following reasons (1) … surprise … ; (2) newly
> > discovered evidence which by due diligence could not have
> > discovered in time to move for a new trial … ; (3) fraud …
> > misrepresentation or other misconduct of an adverse party; (5) it is no
> > longer equitable that the judgment should have prospective
> > application; or (6) any other reason justifying relief from the
> > operation of the judgment.  The motion shall be made within a
> > reasonable time, and for reasons (1), (2) and (3) not more than one
> > year … .

The First Circuit has long-recognized that a party's failure to disclose or produce

materials requested in discovery constitutes "misconduct" for the purposes of a Rule 60(b)

motion. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988). The *Anderson* court acknowledged that:

> 'Misconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress . . . . The term can cover even accidental omissions . . . . We think such a construction not overly harsh; it takes scant imagination to conjure up discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial. Accidents-at least avoidable ones-should not be immune from the reach of the rule. Thus, we find ourselves in agreement with the Fifth Circuit that, depending upon the circumstances, relief on the ground of misconduct may be justified "whether there was evil, innocent or careless, purpose."

*Id.* (citations omitted). Accordingly, the *Anderson* court set out the following "guideposts" in entertaining a Rule 60(b)(3) motion: (1) the movant must demonstrate misconduct by clear and convincing evidence; (2) the movant must show that the misconduct substantially interfered with the full and fair preparation or presentation of its case; (3) the misconduct need not be result-altering for Rule 60(b)(3) relief; (4) the misconduct must have been harmful, i.e. it must have "affect[ed] the substantial rights" of the movant; and (5) "uncertainties attending the application of hindsight in this area should redound to the movant's benefit" (to avoid the nonmoving party benefiting from its own mis-, mal-, or nonfeasance). *Id.* at 924-926.

There can be no dispute that there is clear and convincing evidence of ALS' misconduct. ALS sold an additional 412 infringing products which it did not disclose until after the trial, and even after its Motion to Amend the Judgment (filed to avoid these very damages at issue), despite having an obligation to produce this information prior to trial. As the court found in *Anderson,* a party cannot "play possum" with respect to responding to discovery requests and comply with the

principles of fairness and the terms of the Civil Rules. *Id.* at 928. Further, there can be no

argument that ALS' misconduct prevented Genlyte from putting on a "full" case regarding its

damages. Had the additional infringing sales been disclosed by ALS, Genlyte's damages claim

would have been higher. Moreover, ALS' misconduct adversely affected Genlyte's "substantial

right" in receiving a royalty for the additional infringing sales pursuant to 35 U.S.C. § 284.

Therefore, Genlyte submits that it should have relief from the Amended Judgment by vacating

the Court's April 11, 2007 Order and reinstating paragraph four of the Final Judgment and

Permanent Injunction. In that way, the Jury's royalty rate of $67 per fixture (*see* Affidavit of

Michael E. Tate, dated February 2, 2007, [Doc. No. 76], attached as Exhibit F) can be applied by

the Court to the previously undisclosed infringing sales.

4.    Finally, a district court has wide discretion to remedy a litigant's failure to

supplement its discovery responses. *Sheek v. Asia Badger, Inc.*, 235 F.3d 687, 694 (1st Cir.

2000). Here, there is no dispute that ALS did not supplement its discovery responses beyond

September 30, 2006, even though it certainly possessed the information (*its own* sales records) to

do so. Therefore, ALS breached is discovery obligations under Fed.R.Civ.P. 26(e), and as a

result, Genlyte's rights were severely impacted in that it was unable to put on a full case of its

damages. In *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992), the First Circuit

stated that courts enforce civil rules "to ensure that the spirit of open discovery embodied in Rule

26 is not undermined either by evasion or dilatory tactics."[1]  Consequently, Genlyte requests that

this Court sanction ALS for its misconduct in the amount of $27,604.00, which is the amount

---

1 The *Thibeault* court affirmed this Court's sanction of a party for failure to supplement its discovery (expert)
responses.

7

equal to the per-fixture royalty rate found by the jury ($67) multiplied by the infringing fixture

sales (412) which ALS has belatedly admitted by its actions remained undisclosed to the Court,

the Jury and Genlyte despite obligation of disclosure.

## <u>CONCLUSION</u>

Respectfully, for the foregoing reasons and under the cited authorities Genlyte requests

this Court to grant Genlyte relief from the Amended Judgment by vacating the Court's April 11,

2007 Order and reinstating paragraph four of the Final Judgment and Permanent Injunction [D.E.

80]. Alternatively, Genlyte requests the Court to sanction ALS in the amount $27,604.00 for its

misconduct in breaching its discovery obligations. This action is necessary to prevent ALS from

benefiting from its own misconduct in this case.

Respectfully submitted,

GENLYTE THOMAS GROUP LLC

By Its Attorneys,


/s/ Kevin Gannon
James E. Milliman (Pro hac vice)
James R. Higgins, Jr. (Pro hac vice)
Robert J. Theuerkauf (Pro hac vice)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
Kevin Gannon BBO#640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

Dated:  April 13, 2007

9

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants, if any, on this 13th day of April, 2007.

/s/ Kevin Gannon

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                    Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

                    Defendant.

Civil Action No. 05-CV-10945 WGY

**[Proposed] ORDER GRANTING PLAINTIFF'S MOTION TO ALTER OR
AMEND THE AMENDED JUDGMENT, TO RECONSIDER SAME, FOR
RELIEF FROM THE AMENDED JUDGMENT AND/OR FOR SANCTIONS**

This matter is before the Court on the motion by Plaintiff, Genlyte Thomas Group

LLC ("Genlyte") To Alter Or Amend The Amended Judgment, To Reconsider Same, For

Relief From The Amended Judgment And/Or For Sanctions ("Genlyte's Motion"). The

Court, having reviewed and considered the parties' respective memoranda and supporting

material, and any responses thereto, and otherwise being duly and sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that Genlyte's Motion be, and it

hereby is, GRANTED;

IT IS HEREBY ORDERED AND ADJUDGED that the Court's Order of April

11, 2007 [Doc. No. 88] be, and it hereby is, VACATED; and

IT IS HEREBY ORDERED AND ADJUDGED that paragraph four of the Final

Judgment and Permanent Injunction [D.E. 80] be, and it hereby is, REINSTATED.

SO ORDERED this _____ day of _____, 2007.

_____
William G. Young, U. S. D. J.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                    Plaintiff,

v.                                                          Civil Action No. 05-CV-10945 WGY

ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS
Rhode Island Corporation

                    Defendant.

---

**[Proposed] ORDER GRANTING PLAINTIFF'S MOTION TO ALTER OR
AMEND THE AMENDED JUDGMENT, TO RECONSIDER SAME, FOR
RELIEF FROM THE AMENDED JUDGMENT AND/OR FOR SANCTIONS**

This matter is before the Court on the motion by Plaintiff, Genlyte Thomas Group

LLC ("Genlyte") To Alter Or Amend The Amended Judgment, To Reconsider Same, For

Relief From The Amended Judgment And/Or For Sanctions ("Genlyte's Motion").  The

Court, having reviewed and considered the parties' respective memoranda and supporting

material, and any responses thereto, and otherwise being duly and sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that Genlyte's Motion be, and it

hereby is, GRANTED; and

IT IS HEREBY ORDERED AND ADJUDGED that the Defendant, Arch

Lighting Group d/b/a  Architectural Lighting Systems be, and it hereby is,

SANCTIONED in the amount of $27,604.00, to be paid to Genlyte within _____ days of

entry of this Order.

SO ORDERED this ____ day of _____, 2007.

_____
William G. Young, U. S. D. J.

# EXHIBIT A

To: 502-561-0442     Case 1:05-cv-10945-WGY     Document 89-4     Filed 04/13/2007     Page 2 of 2
From:    .t N. Dorny                          Pg 3/ 3 b.. .2/07  2:53 pm
Mar. 12. 2007  3:15PM   Architectural Lighting Systems          Nc. 8451   P. 2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a<br>division of ARCH LIGHTING GROUP INC.,<br><br>    Defendant/Counterclaimant. | Civil Action No.  05-CV-10945 WGY |

## CERTIFICATION OF PAUL B. NORTHRUP

I, Paul B. Northrup, hereby declare as follows:

1.    I am controller of Defendant Arch Lighting Group, Inc. ("ALS"). I make this certification as required by paragraph 4 of the Final Judgment entered by the Court on February 5, 2007. All statements are made from my personal knowledge.

2.    In compliance with paragraph 4 of the Final Judgment, I conducted an accounting of sales of the MT2A, MT2B and MT1D products by ALS from October 1, 2006 through February 5, 2007. A total of 412 fixtures were sold.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of March, 2007.

Paul B. Northrup

1

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company

        Plaintiff,

v.

ARCHITECTURAL LIGHTING SYSTEMS a
division of ARCH LIGHTING GROUP, a
Rhode Island Corporation

        Defendant.

Civil Action No. 05-CV-10945 REK

## PLAINTIFF GENLYTE THOMAS GROUP LLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT ARCHITECTURAL LIGHTING SYSTEMS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff Genlyte

Thomas Group LLC ("Genlyte Thomas"), through counsel, directs the following Interrogatories

and Requests for Production of Documents to Defendant, Architectural Lighting Systems

("ALS"). All Interrogatories should be answered separately and fully in writing, under oath.

Both the Interrogatories and the Requests for Production of Documents are to be answered and

responded to within the time period permitted by Rules 33 and 34 after service hereof. These

Interrogatories and Requests for Production of Documents are deemed continuing and ALS

should serve upon Genlyte Thomas any additional information requested which shall become

available to ALS up to the time of trial pursuant to Rule 26(e) of the Federal Rules of Civil

Procedure.

## DEFINITIONS AND INSTRUCTIONS

1.     "ALS" means (a) Defendant Architectural Lighting Systems, a division of Arch

Lighting Group, its predecessor corporations, successor corporations, parent corporations, and

each subsidiary, affiliated or related company; (b) each of its present or past directors, officers,

employees, agents, consultants, accountants, attorneys and independent contractors which have

contractual relations with it; and (c) any person acting or purporting to act or, at the time of the

stated subject matter, was acting or purporting to act for or on behalf of ALS or anyone under its

control, direction or instruction.

      2.      "Multmed" means <u>both</u> ALS' MulTmed™ MT1 series and MulTmed™ MT2

series lighting fixtures manufactured for, or by ALS, and/or sold by ALS.

      3.      "Genlyte Thomas" means (a) Plaintiff Genlyte Thomas Group LLC, its

predecessor corporations, successor corporations, parent corporations, and each subsidiary,

affiliated or related company; (b) each of its present or past directors, officers, employees,

agents, consultants, accountants, attorneys and independent contractors which have contractual

relations with it; and (c) any person acting or purporting to act or, at the time of the stated subject

matter, was acting or purporting to act for or on behalf of Genlyte Thomas Group LLC or anyone

under its control, direction or instruction.

      4.      "'254 Patent" means United States Patent No. 5,038,254.

      5.      "Document" shall be construed in its broadest sense and shall mean all written,

printed, typed, recorded, graphic, stenographic, computer-generated, computer-stored and

electronically stored matter of every kind and description, however and by whomever produced,

prepared, reproduced, disseminated, or made, including all originals, copies and drafts thereof

and all attachments and appendices thereto and shall also include audiovisual works and

magnetic recordings of any type such as video tape recordings, slides, floppy and hard disks,

audio recordings, and photographic pictures or movies. A copy of any document that contains

notes, sketches, annotations, highlighting, underlining or any other markings, comments or

modifications on or of another document shall be considered a separate document.

6.    "Person" means the plural as well as the singular and includes any natural person and any firm, corporation, association, partnership or other form of legal entity.

7.    With respect to a person, "identify" means to state the name, title and present address of the person, or if unknown, the last known address of such person.

8.    With respect to a document, "identify" means to state the document's date, title, author, addresses, copies' recipients, other persons who have read (or have been provided with) a copy, and to describe its character and substance sufficiently to make clear what the document is.

9.    "Or" is inclusive referring to any one or more of the disjoined words or phrases listed.

10.    If you contend that any requested information is privileged or otherwise not subject to discovery, or if any information is withheld for any other reason, please state the following as to the withheld information:

      a.    the nature and date of the subject matter;

      b.    the author;

      c.    the person or persons to whom the subject matter was conveyed, either orally or in writing, together with their job title or position;

      d.    a sufficient description of the subject matter such that the Court will be able to rule on a motion to compel the withheld information;

      e.    the specific basis upon which the privilege is claimed; and

      f.    the Interrogatory to which each claim of privilege applies.

11.    If you contend that any requested document is privileged or otherwise not subject to discovery, or if any document is withheld for any other reason, please state the following as to each such document:

-3-

      a.     the name of each signatory and the capacity in which each signed;

      b.     the date;

      c.     the name of each author and the capacity in which each was acting at the time he or she addressed or created the document;

      d.     the name of each addressee;

      e.     the name of each person copied on the document;

      f.     the subject matter;

      g     the specific grounds or reasons asserted for withholding the document; and

      h.     the present location of the document.

12.     If any information is withheld in reliance on an asserted objection to a portion of an Interrogatory or Request for Production of Documents, please produce information responsive to all other portions of the Interrogatory or Request for Production of Documents to which no objection has been made.

13.     These Interrogatories and Requests for Production of Documents request responsive information in the possession, custody or control of the requested party or its attorneys, agents, or affiliated or related entities.

INTERROGATORIES

<u>INTERROGATORY NO. 1</u>:  Identify all ceiling-mounted medical lighting systems, including make and/or model number, manufactured for, or by ALS, and/or sold by ALS wherein said lighting system includes more than one light source.

     <u>ANSWER:</u>

INTERROGATORY NO. 2: Identify all customers and/or purchasers of the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

ANSWER:

INTERROGATORY NO. 3: State separately for each customer and/or purchaser of the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, ALS' expenses, revenues and gross and net profits.

ANSWER:

INTERROGATORY NO. 4: Identify all distributors, retailers and/or sales representatives of the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

ANSWER:

INTERROGATORY NO. 5: Identify all persons to whom ALS has offered for sale the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

ANSWER:

INTERROGATORY NO. 6:  Identify all written communications between ALS and its customers, purchasers, retailers and/or distributors relating to the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

    ANSWER:

INTERROGATORY NO. 7:  Identify all written communications between ALS and its customers, purchasers, retailers, distributors and/or sales representatives relating to the ceiling-mounted medical lighting systems manufactured by Genlyte Thomas, including but not limited to the MD*4 and MD*Coffer.

    ANSWER:

INTERROGATORY NO. 8:  Identify all patents owned by, assigned to, and/or under license to ALS relating to ceiling-mounted medical lighting systems.

    ANSWER:

INTERROGATORY NO. 9:  State when ALS first learned of the '254 Patent, and state in detail the circumstances in which ALS learned of the '254 Patent.

    ANSWER:

INTERROGATORY NO. 10: Identify whether ALS, prior to its first sale of the Multmed and/or any of the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, ever examined, or had examined for it, the '254 Patent and, if so, state in detail the persons involved in such examination(s), the date upon which the examination(s) took place, the purpose such examination(s) took place and identify any documents relating to any such examination(s) that were prepared during or after the examination(s).

    ANSWER:

INTERROGATORY NO. 11: Identify whether ALS has ever performed, or had performed for it, a patent search or other examination of the records of the United States Patent and Trademark Office related to Genlyte Thomas' MD*4 or MD*Coffer, the '254 Patent, the subject matter of the '254 Patent, and/or the infringement of or validity of the '254 Patent, and identify any and all documents related to such search(es).

    ANSWER:

INTERROGATORY NO. 12: Identify the person(s) who designed, and/or developed, the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, and identify all documents relating to the design and/or manufacturing of such ceiling-mounted medical lighting systems.

    ANSWER:

INTERROGATORY NO. 13:  Identify all employees and former employees of ALS who have worked on the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, and identify the present custodian of any and all files of each of the employees and former employees referring or relating in any way to ALS' conception, reduction to practice, development, construction, manufacture and sale of such ceiling-mounted medical lighting systems.

    ANSWER:


INTERROGATORY NO. 14:  If ALS does not manufacture the Multmed and/or any of the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, identify ALS' source for each such ceiling-mounted lighting system.

    ANSWER:


INTERROGATORY NO. 15:  Separately set forth in detail ALS' reason why it contends that its Multmed does not infringe any claim of the '254 Patent, and provide a claim chart setting forth each alleged functional and structural difference.

    ANSWER:


INTERROGATORY NO. 16:  State each and every claim or claim term of the '254 Patent which ALS believes requires claim construction, and set forth ALS' proposed construction of each such

claim or claim term and the basis for such construction, including the support for ALS'

construction in the claims, specification and/or prosecution history and any extrinsic evidence

relied upon by ALS to support its construction.

    ANSWER:


INTERROGATORY NO. 17:  State whether any change in design, materials of construction

and/or method for construction have been made in the Multmed and/or the ceiling-mounted

lighting fixtures identified in the Answer to Interrogatory No. 1 since their inception, and set

forth separately in detail what change was made and why such change was made.

    ANSWER:


INTERROGATORY NO. 18:  Identify and give the dates of all attempts by, or for, ALS to copy,

duplicate, surpass or design around the '254 Patent or the technology of the '254 Patent.

    ANSWER:


INTERROGATORY NO. 19:  State separately ALS' expenses, revenues and gross and net

profits from ALS' manufacture, use, sale or offer for sale of the Multmed and/or the ceiling-

mounted medical lighting fixtures identified in the Answer to Interrogatory No. 1 since

inception.

    ANSWER:

INTERROGATORY NO. 20: Please set forth all facts which support ALS' belief that ALS does not willfully infringe any claim of the '254 Patent, including identification of any opinions (oral or written) of counsel that ALS intends to rely upon.

ANSWER:


INTERROGATORY NO. 21: Please set forth all facts which ALS intends to rely upon to support its affirmative defense of laches as stated in ALS' Answer and Counterclaims.

ANSWER:


INTERROGATORY NO. 22: Please set forth all facts which ALS intends to rely upon to support its claim of patent misuse as stated in ALS' Answer and Counterclaims.

ANSWER:


INTERROGATORY NO. 23: Please set forth all facts which ALS intends to rely upon to support its claim of interference with business relations as stated in ALS' Answer and Counterclaims.

ANSWER:

INTERROGATORY NO. 24:  Please set forth all facts which ALS intends to rely upon to support its claim that the '254 Patent is invalid as stated in ALS' Answer and Counterclaims.

ANSWER:


## REQUESTS FOR PRODUCTION OF DOCUMENTS

REQUEST NO. 1:  Produce all documents which were referred to and/or relied upon in preparing the Answer and Counterclaims by ALS.

RESPONSE:


REQUEST NO. 2:  Produce all documents relied upon and/or identified in answering the above Interrogatories.

RESPONSE:


REQUEST NO. 3:  Produce all documents regarding, referring or relating to, or otherwise evidencing the '254 Patent.

RESPONSE:


REQUEST NO. 4:  Produce all documents regarding, referring or relating to, or otherwise evidencing any communications between ALS and Genlyte Thomas.

RESPONSE:

REQUEST NO. 5:  Produce all documents regarding, referring or relating to, or otherwise evidencing correspondence or communications among or between ALS and any third party concerning the '254 Patent.

RESPONSE:

REQUEST NO. 6:  Produce all documents regarding, referring or relating to, or otherwise evidencing any ALS internal, interdepartmental or intradepartmental correspondence, communications or memoranda concerning the '254 Patent.

RESPONSE:

REQUEST NO. 7:  Produce all documents regarding, referring or relating to, or otherwise evidencing any prior art search or investigation in connection with the '254 Patent, or with any invention described or claimed in the '254 Patent, including, without limitation, all patents, publications, and other prior art located or identified through any such search or investigation.

RESPONSE:

REQUEST NO. 8:  Produce all documents regarding, referring or relating to, or otherwise evidencing the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the Multmed.

RESPONSE:

REQUEST NO. 9:  Produce all documents regarding, referring or relating to, or otherwise evidencing the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 10:  Produce all documents regarding, referring or relating to, or otherwise evidencing ALS':

(a)     failed or successful attempts to copy the lighting system(s) disclosed in the '254 Patent;

(b)     failed or successful attempts to design around the lighting system(s) disclosed in the '254 Patent; and

(c)     failed or successful attempts to copy or duplicate any product covered by the '254 Patent, including but not limited to Genlyte Thomas' MD*4 and MD*Coffer.

RESPONSE:

REQUEST NO. 11:  Produce separately all documents regarding, referring or relating to, or

otherwise evidencing ALS' revenues and expenses, including ALS' gross and net profits, for

ALS' business of manufacturing, selling and/or offering for sale the Multmed for all years since

the first sale of the Multmed.

     RESPONSE:

REQUEST NO. 12:  Produce separately for each ceiling-mounted lighting system identified in

the Answer to Interrogatory No. 1 all documents regarding, referring or relating to, or otherwise

evidencing ALS' revenues and expenses, including ALS' gross and net profits, for ALS'

business of manufacturing, selling and/or offering for sale the identified ceiling-mounted medical

lighting systems for all years since the first sale of each system.

     RESPONSE:

REQUEST NO. 13:  Produce all documents regarding, referring or relating to, or otherwise

evidencing sales of and/or offers to sell the Multmed and/or the ceiling-mounted medical lighting

systems identified in the Answer to Interrogatory No. 1.

     RESPONSE:

REQUEST NO. 14:  Produce all documents regarding, referring or relating to, or otherwise

evidencing sales of the Multmed and/or the ceiling-mounted medical lighting systems identified

in the Answer to Interrogatory No. 1 at a sale price which is lower than the pricing offered by

Genlyte Thomas for Genlyte Thomas' corresponding competitive product (including the MD*4

and MD*Coffer), including but not limited to documents regarding, referring or relating to, or

otherwise evidencing the name of the current, potential or prior customer, the name of the

ceiling-mounted lighting system offered by ALS and Genlyte Thomas to that customer, and the

pricing per unit offered to that customer by either ALS or Genlyte Thomas.

RESPONSE:

REQUEST NO. 15: Produce all documents regarding, referring or relating to, or otherwise

evidencing marketing and/or promotional material for the Multmed and/or the ceiling-mounted

medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 16: Produce all written opinions identified above in ALS' answers to the above

Interrogatories, including all drafts of such opinions, all notes relating to or regarding such

opinion and all information relied upon in preparing such opinion.

RESPONSE:

REQUEST NO. 17:  Produce all documents regarding, referring or relating to, or otherwise evidencing any marketing studies, customer studies or surveys conducted by, or on behalf of, ALS involving ceiling-mounted medical lighting systems.

RESPONSE:

REQUEST NO. 18:  Produce all documents regarding, referring or relating to, or otherwise evidencing ALS' decision to design, develop, manufacture, import, offer for sale and/or sell the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 19:  Produce all documents regarding, referring or relating to, or otherwise evidencing Genlyte Thomas' MD*4 and/or MD*Coffer.

RESPONSE:

REQUEST NO. 20:  Produce all documents regarding, referring or relating to, or otherwise evidencing industry and/or customer response to the Multmed and/or the ceiling-mounted medical lighting fixtures identified in the Answer to Interrogatory No. 1.

RESPONSE:

REQUEST NO. 21:  Produce all documents regarding, referring or relating to, or otherwise
evidencing any comparisons between Genlyte Thomas' ceiling-mounted medical lighting
systems (including the MD*4 and MD*Coffer) and ALS' ceiling-mounted medical lighting
systems (including the Multmed).

RESPONSE:


REQUEST NO. 22:  Produce a copy of each patent, printed publication or other document or
thing, if any, which ALS contends constitutes material prior art to the '254 Patent.

RESPONSE:


Respectfully submitted,

James E. Milliman (*pro hac vice*)
James R. Higgins, Jr. (*pro hac vice*)
Robert J. Theuerkauf (*pro hac vice*)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville, Kentucky  40202-3410
(502) 584-1135
(502) 561-0442 (Facsimile)

and

Thomas C. O'Konski  BBO#337475
John L. Capone  BBO#656150
CESARI AND MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927
*Counsel for Plaintiff,*
    *Genlyte Thomas Group LLC*

## CERTIFICATE

It is hereby certified that a copy of the foregoing was mailed this 21st day of November, 2005, to:

Brett N. Dorny
LAW OFFICE OF BRETT N. DORNY
321 Church Street
Northborough, Massachusetts  01532
*Counsel for Defendant*

*Counsel for Plaintiff*

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,

               Plaintiff/Counterclaim Defendant,

    v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP,

               Defendant/Counterclaimant.

Civil Action No.  05-CV-10945 REK

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant, Arch Lighting Group, Inc. ("ALS"), hereby submits its objections and responses to the First Set of Interrogatories and Requests for Production of Documents.

GENERAL OBJECTIONS:

1.      Defendant objects to the definition of "ALS" since Architectural Lighting Systems is not a division of Arch Lighting Group, Inc.  Architectural Lighting Systems and ALS are business names of Arch Lighting Group, Inc.  Defendant further objects to the definition to the extent it includes persons purporting to act on behalf of ALS, since ALS does not have knowledge of persons who might purport to act on its behalf.  Defendant further objects to the definition to the extent it includes independent contractors.  Defendant will respond to the discovery requests with the understanding that ALS refers to defendant and all predecessor corporations, successor corporations, parent corporations, and subsidiary, affiliated or related company, as well as past and present directors, officers, employees, agents, consultants, accountants, and attorneys, persons acting on its behalf.

2.     Defendant objects to the definition of "Genlyte Thomas" as including any entity

other than Plaintiff Genlyte Thomas Group LLC and persons purporting to act on behalf of

Genlyte Thomas Group LLC. Plaintiff lacks sufficient knowledge of the corporate structure of

any parent, subsidiary, affiliated or related company, and of the employment or contractual status

of persons acting on behalf of Genlyte Thomas Group LLC in order to determine which entities

are or are not within the definition.

3.     Defendant objects to the interrogatories and requests to the extent that they seek

information or documents which is subject to attorney-client privilege, or the attorney work

product doctrine. Defendant will provide a privilege log with respect to any document or

information withheld on such basis.

4.     Defendant objects to the interrogatories and requests to the extent they seek

information or documents which constitute trade secrets or confidential business information.

The parties have submitted a Stipulated Protective Order to the Court and Defendant will provide

information and documents once the order is issued by the Court.

5.     Defendant objects to the interrogatories and requests to the extent they seek to

impose a greater burden on defendant than is required by the Federal Rules of Civil Procedure.


SPECIFIC OBJECTIONS AND RESPONSES:

INTERROGATORY NO. 1: Identify all ceiling-mounted medical lighting systems, including

make and/or model number, manufactured for, or by ALS, and/or sold by ALS wherein said

lighting system includes more than one light source.

ANSWER:     MulTMed is the only ceiling-mounted medical lighting system which includes

more than one light source. There are hundreds of model numbers which depend upon the

options selected. Pursuant to Rule 33(d), Fed. R. Civ. P., ALS will produced documents from

which the potential model numbers can be determined.

INTERROGATORY NO. 2: Identify all customers and/or purchasers of the Multmed and/or the

ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

ANSWER:     Pursuant to Rule 33(d), Fed. R. Civ. P., ALS will produce invoices identifying

customers of the MulTMed products.

INTERROGATORY NO. 3: State separately for each customer and/or purchaser of the

Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to

Interrogatory No.1, ALS' expenses, revenues and gross and net profits.

OBJECTION:          ALS objects to this interrogatory as being overly broad and unduly

burdensome to the extent that it seeks information regarding expenses and profits separately by

customer. ALS does not track this information.

ANSWER:     Pursuant to Rule 33(d), Fed. R. Civ. P., ALS will produce invoices identifying

revenues for each customer of the MulTMed products.

INTERROGATORY NO. 4: Identify all distributors, retailers and/or sales representatives of the

Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to

Interrogatory No.1.

ANSWER:     ALS has no distributors or retailers. Pursuant to Rule 33(d), Fed. R. Civ. P., ALS

will produce documents identifying its independent sales representatives.

INTERROGATORY NO. 5: Identify all persons to whom ALS has offered for sale the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

ANSWER:    ALS has offered to sell its products through its independent sales representatives on the basis of a standard price list. Pursuant to Rule 33(d), Fed. R. Civ. P., ALS will produce copies of any quotes by ALS for the MulTMed products identifying persons to whom ALS has made specific offers for sale.

INTERROGATORY NO. 6: Identify all written communications between ALS and its customers, purchasers, retailers and/or distributors relating to the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

ANSWER:    Pursuant to Rule 33(d), Fed. R. Civ. P., ALS will produce all responsive written communications.

INTERROGATORY NO. 7: Identify all written communications between ALS and its customers, purchasers, retailers, distributors and/or sales representatives relating to the ceiling-mounted medical lighting systems manufactured by Genlyte Thomas, including but not limited to the MD*4 and MD*Coffer.

OBJECTION:      ALS objects to this Interrogatory as being vague and indefinite. The Interrogatory fails to adequately define any ceiling-mounted medical lighting systems manufactured by Genlyte Thomas. ALS further objects to this Interrogatory as being irrelevant to any issue in this case and unlikely to lead to admissible evidence.

ANSWER:    Without waiving the foregoing objections, ALS will produce, pursuant to Rule

4

33(d), Fed. R. Civ. P., any written communications regarding the MD*4 and MD*Coffer products.

INTERROGATORY NO. 8:  Identify all patents owned by, assigned to, and/or under license to ALS relating to ceiling-mounted medical lighting systems.

OBJECTION:        ALS objects to this Interrogatory as being irrelevant to any issue in this case and unlikely to lead to admissible evidence.

ANSWER:    Without waiving the foregoing objection, ALS answers that it is not the owner, assignee nor licensee of any patents relating to ceiling-mounted medical lighting systems.

INTERROGATORY NO. 9:  State when ALS first learned of the '254 Patent, and state in detail the circumstances in which ALS learned of the '254 Patent.

OBJECTION:        ALS objects to this Interrogatory as being irrelevant to any issue in this case and unlikely to lead to admissible evidence.

ANSWER:    Without waiving the foregoing objection, ALS responds that it does not recall the time nor circumstances under which it learned of the '254 Patent.

INTERROGATORY NO. 10:        Identify whether ALS, prior to its first sale of the Multmed and/or any of the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, ever examined, or had examined for it, the '254 Patent and, if *so,* state in detail the persons involved in such examination(s), the date upon which the examination(s) took place, the purpose such examination(s) took place and identify any documents relating to any such examination(s) that were prepared during or after the examination(s).

OBJECTION:    ALS objects to this Interrogatory as being irrelevant to any issue in this case and unlikely to lead to admissible evidence.

ANSWER:    Without waiving the foregoing objection, ALS responds that it does not recall whether it was aware of the '254 patent prior to the first sale of the MulTMed product. Upon becoming aware of the '254 patent, Scott Davis and possibly other employees of ALS reviewed the '254 patent and determined that the claims did not apply to the MulTMed product.

INTERROGATORY NO. 11:    Identify whether ALS has ever performed, or had performed for it, a patent search or other examination of the records of the United States Patent and Trademark Office related to Genlyte Thomas' MD*4 or MD*Coffer, the '254 Patent, the subject matter of the '254 Patent, and/or the infringement of or validity of the '254 Patent, and identify any and all- documents related to such search(es).

OBJECTION:    ALS objects to this Interrogatory as requesting information subject to attorney-client privilege and the work product doctrine.

INTERROGATORY NO. 12:    Identify the person(s) who designed, and/or developed, the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, and identify all documents relating to the design and/or manufacturing of such ceiling-mounted medical lighting systems.

ANSWER:    Long Dam Quang (deceased); Jan Uryase (deceased), Michael Robbins (current ALS employee); and Scott Davis (President of ALS). Pursuant to Rule 33(d), Fed. R. Civ. P., ALS will produce all documents relating to the design and/or manufacturing of the MulTMed products.

INTERROGATORY NO. 13:        Identify all employees and former employees of ALS who have worked on the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No.1, and identify the present custodian of any and all files of each of the employees and former employees referring or relating in any way to ALS' conception, reduction to practice, development, construction, manufacture and sale of such ceiling-mounted medical lighting systems.

OBJECTION:        ALS objects to this Interrogatory as being vague, indefinite, overly broad, unduly burdensome and unlikely to lead to admissible evidence.  The Interrogatory is unclear as to the meaning of "worked on."  ALS has had many employees involved in manufacturing, constructing and shipping the MulTMed products, as well as participating in marketing, sales, and accounting for sales.  To the extent that this Interrogatory requests information regarding employees involved in the design and development of MulTMed products, it is duplicative of Interrogatory No. 12.

ANSWER:    Without waiving the foregoing objection, ALS responds that all of its current and former employees have had some involvement with the MulTMed products.  The files of the company, including all of these employees, are kept at the offices of ALS and at off-site storage.

INTERROGATORY NO. 14:        If ALS does not manufacture the Multmed and/or any of the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1, identify ALS' source for each such ceiling-mounted lighting system.

ANSWER:    ALS manufactures the MulTMed products.

<u>INTERROGATORY NO. 15:</u>        Separately set forth in detail ALS' reason why it contends

that its Multmed does not infringe any claim of the '254 Patent, and provide a claim chart setting

forth each alleged functional and structural difference.

<u>OBJECTION:</u>        ALS objects to this interrogatory as being premature in that discovery is

ongoing in this case. ALS reserves the right to supplement its answer to this interrogatory as

new information becomes available.

<u>ANSWER:</u>    The '254 patent is invalid under one or more of 35 U.S.C. §§ 102, 103, and 112.

The MulTMed product does not include at least: means for ceiling mounting, a first light fixture,

and a second light fixture as required by all of the claims of the '254 patent. See the

accompanying claim chart.


<u>INTERROGATORY NO. 16:</u>        State each and every claim or claim term of the '254 Patent

which ALS believes requires claim construction, and set forth ALS' proposed construction of

each such claim or claim term and the basis for such construction, including the support for ALS'

construction in the claims, specification and/or prosecution history and any extrinsic evidence

relied upon by ALS to support its construction.

<u>OBJECTION:</u>        ALS objects to this Interrogatory as being overly broad and unduly

burdensome. Construction of a claim is a necessary part of determining infringement and every

term must be construed. ALS will limit its answer to construction of the terms which, when

properly interpretd, exclude the MulTMed products from the claims.

<u>ANSWER:</u>

| "means for ceiling mounting" | This term is construed under 35 U.S.C. §112, ¶6 to include the structures shown in the specification, and equivalents, for |
|---|---|

| | |
|---|---|
| | performing the function of ceiling mounting the fixture body. The specification does not disclose any structures. Therefore, the patent is indefinite and invalid. |
| "oriented to direct light" | This term requires a fixture structure to control light in a specified direction to a specified location relative to the body of the lighting system without substantial light outside of the specified area. The specification discloses using specific types of fluorescent lights and reflectors for directing the light. (Abstract; column 1, lines 14-20 and 43-50; column 2, lines 3-17 and 42-57; Fig. 1). The specification further states that the fixtures are to limit light in other locations. (column 2, lines 58-65; Fig. 1) |
| "downwardly" | Light directed below the body (Fig. 1) |
| "downwardly and outwardly" | Light directed towards a wall adjacent to, below, and outside of the body. This is a direction different from "downwardly." (Fig. 1) |
| "vertical wall outwardly adjacent from said body" | The wall adjacent to the body. (column 2, lines 6-10 and 50-57; Fig. 1) |
| "whereby light is reflected back to a broad area under said body" | Light provided to the broad area is not directly from the fixture, but reflected from the vertical wall. (column 1, lines 14-16; column 2, lines 6-10 and 50-65) |
| "reading area" | A specific area under the lighting system body usable for a patient to read. (column 1, lines 46-48; column 2, lines 42-49 and 58-65; Fig. 1) |

| "broad area" | An area including a patient's bed, but not surrounding areas nor the head of the bed. (column 1, lines 45-46; column 2, lines 50-65). |
|---|---|
| "examination area" | An area including all of the patient's bed under the body of the lighting system. (column 1, lines 18-20 and 48-50; column 2, lines 10-17; column 2, line 66 to column 3, line 7) |

**INTERROGATORY NO. 17:**        State whether any change in design, materials of construction and/or method for construction have been made in the Multmed and/or the ceiling-mounted lighting fixtures identified in the Answer to Interrogatory No. 1 since their inception, and set forth separately in detail what change was made and why such change was made.

**ANSWER:**    There were slight changes to the design of the lens on the examination light. It was changed because ALS began having the lens custom manufactured rather than purchasing a stock lens. No other meaningful changes have been made to the design of the MulTMed products.

**INTERROGATORY NO. 18:**        Identify and give the dates of all attempts by, or for, ALS to copy, duplicate, surpass or design around the '254 Patent or the technology of the '254 Patent.

**OBJECTION:**        ALS objects to this interrogatory as being vague, indefinite and unlikely to lead to admissible evidence. "The '254 Patent or the technology of the '254 Patent" does not have sufficiently clear meaning in connection with this interrogatory.

ANSWER:    ALS never attempted to copy, duplicate, surpass or design around the '254 patent. ALS independently designed the MulTMed product which has different features than the claims of the '254 patent.

INTERROGATORY NO. 19:        State separately ALS' expenses, revenues and gross and net profits from ALS' manufacture, use, sale or offer for sale of the Multmed and/or the ceiling-mounted medical lighting fixtures identified in the Answer to Interrogatory No.1 since inception.

ANSWER:    The Answer to this Interrogatory is designated as "**Highly Confidential**" pursuant to the Protective Order.

| | |
|---|---|
| Sales: | $1,422,314 |
| COGS: | $   763,150 |
| Gross Profit: | $   659,164 |
| Sales, admin. and overhead: | $   740,698 |
| Net Loss: | $    (81,534) |

INTERROGATORY NO. 20:        Please set forth all facts which support ALS' belief that ALS does not willfully infringe any claim of the '254 Patent, including identification of any opinions (oral or written) of counsel that ALS intends to rely upon.

ANSWER:    ALS does not infringe the '254 patent.  ALS reasonably reviewed the '254 patent upon notice of the infringement allegation and determined it did not infringe.  Letter of Elliot Salter to James R. Higgins, Jr. dated November 8, 2004.  Letter of Elliot Salter to Robert J. Theuerkauf dated March 22, 2005.

INTERROGATORY NO. 21:    Please set forth all facts which ALS intends to rely upon to support its affirmative defense of laches as stated in ALS' Answer and Counterclaims.

ANSWER:    The '254 patent issued in 1991. ALS began selling the MulTMed products in June 2001. Genlyte did not assert infringement until September 2004 and did not file suit until May 6, 2005.

INTERROGATORY NO. 22:    Please set forth all facts which ALS intends to rely upon to support its claim of patent misuse as stated in ALS' Answer and Counterclaims.

ANSWER:    The MulTMed products do not infringe the '254 patent. ALS informed Genlyte of the reasons its products do not infringe the '254 patent on November 8, 2004. Genlyte tested the MulTMed product in February 2005. The photometric data from testing of the MulTMed product shows that it does not infringe the '254 patent. Nevertheless, Genlyte brought this suit with knowledge that it was not supported by the facts. Genlyte also informed others of its baseless allegation of infringement.

INTERROGATORY NO. 23:    Please set forth all facts which ALS intends to rely upon to support its claim of interference with business relations as stated in ALS' Answer and Counterclaims.

ANSWER:    Genlyte, through counsel, contacted Reflex Lighting Group, Inc. and St. Luke's Hospital of New Bedford, Inc. on November 23, 2004 regarding its baseless allegation of infringement. It sought to have St. Luke's Hospital and/or Reflex Lighting Group, terminate its contract to purchase the MulTMed product from ALS. Genlyte knew at the time that its allegation of infringement was baseless.

INTERROGATORY NO. 24:    Please set forth all facts which ALS intends to rely upon to support its claim that the '254 Patent is invalid as stated in ALS' Answer and Counterclaims.

ANSWER:    The '254 patent is invalid under 35 U.S.C. §112, second paragraph and sixth paragraph, for failing to distinctly claim the invention. Specifically, independent claims 1 and 3 require "means for ceiling-mounting said body." The specification fails to disclose any structure for performing this function. Thus, the claim is indefinite. If interpreted as proposed by Genlyte to cover the MulTMed products, the '254 patent is invalid under 35 U.S.C. §102 and 103 as being anticipated by an obvious over various prior art which includes a ceiling mounted lighting fixture with multiple, independently controlled lights. Relevant prior art will be produced.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

REQUEST NO. 1:    Produce all documents which were referred to and/or relied upon in preparing the Answer and Counterclaims by ALS.

RESPONSE:  Subject to the general objections, ALS will produce the requested documents.


REQUEST NO. 2:    Produce all documents relied upon and/or identified in answering the above Interrogatories.

RESPONSE:  ALS objects to this request as being overly broad and unduly burdensome to the extent it seeks production of ALS's computerized accounting system from which the financial information was retrieved and/or all of the documents providing support for the financial information in the accounting system. Subject to the foregoing objection and the general objections, ALS will produce the requested documents.

<u>REQUEST NO. 3:</u>    Produce all documents regarding, referring or relating to, or otherwise evidencing the '254 Patent.

<u>RESPONSE:</u>  Subject to the general objections, ALS will produce the requested documents.

<u>REQUEST NO. 4:</u>    Produce all documents regarding, referring or relating to, or otherwise evidencing any communications between ALS and Genlyte Thomas.

<u>RESPONSE:</u>  ALS objects to this request since all documents relating to communications with Genlyte Thomas are equally in the possession of Genlyte Thomas.  Nevertheless, subject to the general objections, ALS will produce the requested documents.

<u>REQUEST NO. 5:</u>    Produce all documents regarding, referring or relating to, or otherwise evidencing correspondence or communications among or between ALS and any third party concerning the '254 Patent.

<u>RESPONSE:</u>  ALS objects to this request as being duplicative of Request No. 3.  Nevertheless, subject to the general objections, ALS will produce the requested documents.

<u>REQUEST NO. 6:</u>    Produce all documents regarding, referring or relating to, or otherwise evidencing any ALS internal, interdepartmental or intradepartmental correspondence, communications or memoranda concerning the '254 Patent.

<u>RESPONSE:</u>  ALS objects to this request as being duplicative of Request No. 3.  Nevertheless, subject to the general objections, ALS will produce the requested documents.

REQUEST NO. 7:    Produce all documents regarding, referring or relating to, or otherwise evidencing any prior art search or investigation in connection with the '254 Patent, or with any invention described or claimed in the '254 Patent, including, without limitation, all patents, publications, and other prior art located or identified through any such search or investigation.

RESPONSE:    Subject to the general objections, ALS will produce the requested documents. Furthermore, ALS's investigations regarding prior art are ongoing in connection with this lawsuit. ALS reserves the right to supplement its production as more information becomes known.

REQUEST NO. 8:    Produce all documents regarding, referring or relating to, or otherwise evidencing the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the Multmed.

RESPONSE:    Subject to the general objections, ALS will produce the requested documents.

REQUEST NO. 9:    Produce all documents regarding, referring or relating to, or otherwise evidencing the means, process, method, technique, design or equipment employed by ALS to manufacture, use, sell or offer for sale the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No. 1.

RESPONSE:    ALS objects to this request as being duplicative of Request No. 8.

REQUEST NO. 10:    Produce all documents regarding, referring or relating to, or otherwise evidencing ALS':

(a) failed or successful attempts to copy the lighting system(s) disclosed in the '254 Patent;

15

(b) failed or successful attempts to design around the lighting system( s) disclosed in the '254 Patent; and

(c) failed or successful attempts to copy or duplicate any product covered by the '254 Patent, including but not limited to Genlyte Thomas' MD*4 and MD*Coffer.

RESPONSE:  ALS objects to this request as vague and indefinite since it includes faulty assumptions as to fact and law.  Patent law allows products and patent disclosures to be freely copied as long as the claimed invention is not copied.  Furthermore, ALS did not attempt to copy the lighting system disclosed in the '254 Patent, to design around the lighting system disclosed in the '254 Patent, or to copy or duplicate any products.  ALS has no responsive documents.


REQUEST NO. 11:  Produce separately all documents regarding, referring or relating to, or otherwise evidencing ALS' revenues and expenses, including ALS' gross and net profits, for ALS' business of manufacturing, selling and/or offering for sale the Multmed for all years since the first sale of the Multmed.

RESPONSE:  ALS objects to this request as being vague and indefinite in that it is unclear how the requested documents are to be produced "separately."  ALS objects to this request as being duplicative, in part, to Request No. 2.  ALS further objects to this request for the same reasons as Request No. 2. This request is overly broad and unduly burdensome in that it requests ALS's entire computerized accounting system and all documents used in entering information into the accounting system.  ALS will produce invoices relating to the MulTMed product.

REQUEST NO. 12:    Produce separately for each ceiling-mounted lighting system identified in

the Answer to Interrogatory No. 1 all documents regarding, referring or relating to, or otherwise

evidencing ALS' revenues and expenses, including ALS' gross and net profits, for ALS'

business of manufacturing, selling and/or offering for sale the identified ceiling-mounted medical

lighting systems for all years since the first sale of each system.

RESPONSE:    ALS objects to this request as being duplicative of Request No. 11.


REQUEST NO. 13:    Produce all documents regarding, referring or relating to, or otherwise

evidencing sales of and/or offers to sell the Multmed and/or the ceiling-mounted medical lighting

systems identified in the Answer to Interrogatory No.1.

RESPONSE:    ALS objects to this request as being overly broad and unduly burdensome to the

extent that it seeks documents relating to sales or offers to sell the MulTMed products by entities

other than ALS.  Subject to the general objections, ALS will produce the requested documents

relating to its sales or offers to sell.


REQUEST NO. 14:    Produce all documents regarding, referring or relating to, or otherwise

evidencing sales of the Multmed and/or the ceiling-mounted medical lighting systems identified

in the Answer to Interrogatory No. 1 at a sale price which is lower than the pricing offered by

Genlyte Thomas for Genlyte Thomas' corresponding competitive product (including the MD*4

and MD*Coffer), including but not limited to documents regarding, referring or relating to, or

otherwise evidencing the name of the current, potential or prior customer, the name of the

ceiling-mounted lighting system offered by ALS and Genlyte Thomas to that customer, and the

pricing per unit offered to that customer by either ALS or Genlyte Thomas.

RESPONSE:  ALS objects to this request in that is seeks information not within the possession, custody or control of ALS.  ALS is unaware of the actual sale prices of Genlyte Thomas' products.  Nevertheless, ALS believes that the MulTMed product is never sold at a price lower than the pricing offered by Genlyte Thomas.  Thus, ALS has no responsive documents.

REQUEST NO. 15:  Produce all documents regarding, referring or relating to, or otherwise evidencing marketing and/or promotional material for the Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No.1.

RESPONSE:  Subject to the general objections, ALS will produce the requested documents.

REQUEST NO. 16:  Produce all written opinions identified above in ALS' answers to the above Interrogatories, including all drafts of such opinions, all notes relating to or regarding such opinion and all information relied upon in preparing such opinion.

RESPONSE:  ALS objects to this request as seeking information and documents subject to attorney client privilege and the work product doctrine.

REQUEST NO. 17:  Produce all documents regarding, referring or relating to, or otherwise evidencing any marketing studies, customer studies or surveys conducted by, or on behalf of, ALS involving ceiling-mounted medical lighting systems.

RESPONSE:  ALS has no responsive documents.

REQUEST NO. 18:  Produce all documents regarding, referring or relating to, or otherwise evidencing ALS' decision to design, develop, manufacture, import, offer for sale and/or sell the

Multmed and/or the ceiling-mounted medical lighting systems identified in the Answer to Interrogatory No.1.

RESPONSE:  Subject to the general objections, ALS will produce responsive documents.

REQUEST NO. 19:  Produce all documents regarding, referring or relating to, or otherwise evidencing Genlyte Thomas' MD*4 and/or MD*Coffer.

RESPONSE:  Subject to the general objections, ALS will produce responsive documents.

REQUEST NO. 20:  Produce all documents regarding, referring or relating to, or otherwise evidencing industry and/or customer response to the Multmed and/or the ceiling-mounted medical lighting fixtures identified in the Answer to Interrogatory No.1.

RESPONSE:  Subject to the general objections, ALS will produce responsive documents.

REQUEST NO. 21:  Produce all documents regarding, referring or relating to, or otherwise evidencing any comparisons between Genlyte Thomas' ceiling-mounted medical lighting systems (including the MD*4 and MD*Coffer) and ALS' ceiling-mounted medical lighting systems (including the Multmed).

RESPONSE:  Subject to the general objections, ALS will produce responsive documents.

REQUEST NO. 22:  Produce a copy of each patent, printed publication or other document or thing, if any, which ALS contends constitutes material prior art to the '254 Patent.

RESPONSE:  ALS will produce responsive documents.

Respectfully submitted,

Dated:  January 3, 2005

Brett N. Dorny,  BBO# 628,977
Law Office of Brett N. Dorny
386 West Main Street, Suite 12A
Northborough, Massachusetts  01532
508-709-0501

Attorney for Defendant

## VERIFICATION

I hereby certify that the foregoing Answers to Interrogatories are true and correct.

Scott A. Davis

Date:  12/30/05

## CLAIM CHART

| Claim Elements | MulTMed Products |
|---|---|
| 1. A medical lighting system comprising: | |
| a body; | |
| means for ceiling-mounting said body; | The MulTMed products do not include the structures disclosed in the specification for ceiling mounting the body, or equivalents, because no structures are disclosed. |
| a first light fixture within said body oriented to direct light downwardly to a selected reading area under said body; | The reading light of the MulTMed products does not direct light. It does not direct light only to a selected reading area. |
| a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body. | The ambient light of the MulTMed products does not direct light. It does not direct light downwardly and outwardly. The light from the ambient light is essentially the same as that of the reading light. Any light reflected from a wall does not cover a broad area under the body. |
| | |
| 3. A medical lighting system comprising: | |
| a body; | |
| means for ceiling-mounting said body; | The MulTMed products do not include the structures disclosed in the specification for ceiling mounting the body, or equivalents, because no structures are disclosed. |
| a first light fixture within said body oriented to direct light downwardly to a selected reading area under said body; | The reading light of the MulTMed products does not direct light. It does not direct light only to a selected reading area. |
| a second light fixture within said body oriented to direct light downwardly and outwardly to a vertical wall surface outwardly adjacent from said body whereby light is reflected back to a broad area under said body; | The ambient light of the MulTMed products does not direct light. It does not direct light downwardly and outwardly. The light from the ambient light is essentially the same as that of the reading light. Any light reflected from a wall does not cover a broad area under the body. |
| a third light fixture within said body oriented to direct light downwardly under said body to a selected patient examination area. | The examination light of the MulTMed products consist of two asymmetrically directed lights which cross light to portions of an examination area. |

21

# EXHIBIT D



RECEIVED

OCT 3 0 2006

**Law Office of Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

*Brett N. Dorny*
*bndorny@dornylaw.com*

*508-709-0493 Direct*
*508-519-9185 Fax*

October 28, 2006

**VIA OVERNIGHT COURIER**

Robert J. Theuerkauf, Esquire
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

      Re:    Genlyte Thomas Group LLC v. Arch Lighting Group, Inc.
              Civil Action No.  05-CV-10945 REK

Dear Robert:

    Enclosed are documents, bates Nos. ALS0389-ALS0485, responsive to your various requests for documents. These documents include sales of the MulTMed products for 2006, advertisements, photopia reports for the MulTMed products, and installation instruction sheets. I have also enclosed a color copies of the MulTMed brochure and advertisements. These are not bates numbered, but are color copies of what has already been produced in another form, with a bates number.

    Also, enclosed is a supplement to ALS's response to Interrogatory No. 19, including all sales through September 2006. This information is designated "Highly Confidential" under the protective order.

    Further, in response to your email of October 25, 2006 regarding outstanding discovery, we respond as follows:

    ALS has produce all documents which exist regarding the development of the MulTMed product. Mr. Davis did testify that the design began in 1991 or 1992. However, no product was ever developed until 2001. No documents exist regarding prior development activities.

    ALS's statements regarding the Latitude Exam/Ambient fixture are consistent. You have taken Mr. Davis' testimony out of context and misread the information on the Latitude fixture. As Mr. Davis testified, the Latitude fixture includes an ambient light and an examination light. Of course, anyone can use any light for any purpose. Mr. Davis testified that the light from the

*Specializing In Intellectual Property Law*

Robert J. Theuerkauf, Esq.
October 28, 2006
Page 2

ambient fixture would be sufficient for the amount of reading to be done. The light is for treatment rooms. If used in a patient room, a separate fixture would be used to provide the reading function. Again, information relating to the Latitude Exam/Ambient fixture is irrelevant to the patent at issue. To the extent that you believe your requests were so broad as to cover all fixtures regardless of the patent, they are overly broad and we hereby object to them. We did not understand them to include such fixtures at the time of the response, and responded accordingly.

Further, your suggestion that the Latitude Exam/Ambient fixture was developed before ALS provided its original responses to Genlyte's discovery requests is baseless. Mr. Davis testified that he had thoughts about designing the Latitude Exam/Ambient when he created the single function Latitude. However, nothing was done with those thoughts until spring 2006. When ALS responded to the discovery in January 2006, no development on a two function Latitude product had taken place. No product existed.

With respect to customer files, I have reviewed the sections of the deposition testimony referred to in your email and do not find any request for all of ALS's customer files. Further, we stand by the objection that a request for all of ALS's customer files is overly broad and unduly burdensome. As Mr. Davis testified, it keeps files by distributors, who are its customers. Therefore, the customer files would include all documents relating to every sale ever made by ALS, regardless of whether the MulTMed product is involved. ALS has produce the documents found in the customer files which relate to MulTMed. Your suggestions of additional information relating to MulTMed in the customer files is erroneous. End customer information, to the extent known to ALS, and other product sold with the MulTMed product would be on either a quote or invoice. ALS has produced all of its quotes and invoices. While Mr. Davis testified that on occasion ALS may receive a specification which would be in the customer files, ALS has not located any for the MulTMed products. Notwithstanding the objection, ALS is willing to make its files available for review and copying at a mutually convenient time.

Finally, with respect to sales and expense information, what I indicated was that production of all backup information for the numbers is not practical. It would require production of ALS's entire accounting system and all financial documents. I did, however, offer to make all of that material available for your review and copying. It can be done at the same time as the customer files, if you so desire.

Very truly yours,

Brett N. Dorny

Enclosures

ALS Answer to Interrogatory No. 19, to replace the answer previously provided in order to account for additional information through September 2006:

| | |
|---|---|
| Sales: | $1,927,928 |
| COGS: | $1,033,348 |
| Gross Profit: | $  894,580 |
| Sales, admin. and overhead: | $ 1,046,416 |
| Net Loss: | $  (151,836) |

# EXHIBIT E

**From:** Robert J Theuerkauf
**Sent:** Sunday, January 28, 2007 11:32 AM
**To:** bndorny@dornylaw.com
**Cc:** James E. Milliman; James R. Higgins, Jr.
**Subject:** Genlyte v. ALS

Dear Brett:
The most recent sales data we received from ALS only included sales of the accused
products through September 2006.  Please provide ALS' sales data from September to date.
Thanks:
Robert

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP, LLC, | |
| Plaintiff, | |
| vs. | Civil Action No. 05-CV-10945 REK |
| ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP, | **AFFIDAVIT OF MICHAEL E. TATE** |
| Defendants. | |

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | |
| | ) | ss.: |
| COUNTY OF COOK | ) | |

MICHAEL E. TATE, being duly sworn, deposes and says:

1.      I am a Vice President of CRA International, Inc. ("CRA").

2.      I am the same Michael E. Tate who testified as an expert at trial in the above-referenced matter regarding the amount of economic harm that Genlyte Thomas Group, LLC ("Genlyte") suffered as a result of Architectural Lighting Systems' ("ALS") infringement of Genlyte's U.S. Patent No. 5,038,254 ("the '254 patent").

3.      I understand that the jury in this matter found that ALS' MulTmed MT1D, MT2A and MT2B light fixtures infringed the '254 patent ("ALS' infringing product").

4.      I further understand that the jury awarded Genlyte $207,554 in damages.

– 1 –

5.  As part of my testimony at trial, I presented evidence of the quantity of sales ALS made of its accused MulTmed product from June 2001 through September 30, 2006. I testified that ALS sold ██████████████████████████ between June 2001 and September 30, 2006 (see Trial Exhibit 72). **REDACTED**

6.  Based on the jury's liability verdict and damages award, counsel for Genlyte has asked me to make a determination of the reasonable royalty rate that would apply to ALS' infringing sales not accounted for in the jury's damages award (i.e., sales of ALS' infringing products that were made after September 30, 2006).

7.  Counsel for Genlyte has also asked me to quantify the amount of prejudgment interest that Genlyte is owed on the reasonable royalty damages awarded by the jury.

8.  In order to determine the royalty rate that would be applied to ALS' infringing product sales made after September 30, 2006, I performed the following analyses:

   a.  I deducted from the total units of the accused MulTmed light fixtures that ALS sold during the period June 2001 through September 30, 2006, ALS' unit sales of MulTmed products that the jury found did not infringe the '254 patent.

   b.  The model numbers which I deducted included the MT1E and MT1F.

   c.  The result of the calculation described in paragraphs 8.a and 8.b is the number of infringing MulTmed light fixtures that ALS sold during the period June 2001 through September 30, 2006.

# REDACTED

d.    I determined that ALS sold ▮▮▮▮ infringing light fixtures during the period June 2001 through September 30, 2006 (see Appendix B as attached hereto).

e.    Next, in order to determine the royalty rate that would apply to ALS' infringing sales made after September 30, 2006, I divided the jury's reasonable royalty award of $207,554 which covered ALS' infringing activity through September 30, 2006 by the infringing unit sales ALS made during the period June 2001 through September 30, 2006.

f.    The result of the calculation described in paragraph 8.e above yields an effective royalty rate of $67 per infringing unit (see Appendix B as attached hereto).

g.    Thus, the reasonable royalty that Genlyte is owed for ALS' infringing sales made after September 30, 2006 should be determined by applying a royalty rate of $67 per unit to ALS' unit sales of infringing products made after September 30, 2006.

h.    Since ALS has not provided information relating to the number of infringing sales it has made after September 30, 2006, I am not able to quantify the total royalty amount owed Genlyte on these sales at this time.

9.    In addition to the reasonable royalty ALS owes Genlyte on its infringing sales, at the discretion of the Court, Genlyte may be entitled to an award of prejudgment interest.

10.    I would normally calculate the amount of prejudgment interest to which Genlyte is entitled by using ALS' cost of debt and applying it to the damages amount. However, ALS has not provided information regarding its cost of borrowing. Therefore, in order to calculate the prejudgment interest owed Genlyte, I utilized the prime bank rate as a proxy for ALS' cost of borrowing.

11.    In calculating the prejudgment interest owed Genlyte, I assumed that ALS would have made quarterly royalty payments to Genlyte, and that such payment would have been received by Genlyte 45 days after the quarter in which ALS made its infringing sales. For example, the royalty for ALS' infringing sales in the first quarter of 2006 would be paid to Genlyte on May 15, 2006.

12.    Based on the interest rate and assumptions described in paragraphs 10 and 11 above, I calculated the prejudgment interest on the royalty damages owed Genlyte (through September 30, 2006) for the period June 2001 through January 31, 2007 to be $30,089 (see Appendix C-1 as attached hereto).

13.    As discussed in paragraph 8.h above, at this time I am unable to quantify the royalty amount ALS owes Genlyte on its infringing sales made after September 30, 2006. Thus, the prejudgment interest amount determined in paragraph 12 above does not include an amount of prejudgment interest on the royalties owed to Genlyte for ALS' infringing sales made after September 30, 2006.


_Michael E. Tate_
_____
Michael E. Tate

Sworn to before me this
2nd day of February, 2007

_____
Notary Public

OFFICIAL SEAL
LESLIE M. SPILLER
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires August 17, 2010

– 4 –

# Appendix A

## REDACTED

# Appendix B

## REDACTED

# Appendix C

## REDACTED