UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>       Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP,<br><br>       Defendant/Counterclaimant. | Civil Action No. 05-CV-10945 WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO STAY JUDGMENT PENDING APPEAL**

Defendant Arch Lighting Group, Inc. ("ALS") has moved for a stay of the Judgment of February 5, 2007 ("the Judgment") pending a decision on the appeal of the Judgment to the U.S. Court of Appeals for the Federal Circuit. Specifically, ALS has moved to stay execution on the damage award, prejudgment interest and costs in paragraph 3 of the Judgment; for a waiver of a supersedeas bond; and to stay the injunction in paragraphs 6 and 7 of the Judgment. For the reasons set forth below, Defendant's Motion should be granted.

BACKGROUND

Genlyte Thomas Group LLC ("Genlyte") sued ALS for patent infringement with respect to U.S. Patent No. 2,038,254 ("the '254 Patent"). Genlyte accused all of ALS's MulTMed products and ALS's Exam/Ambient Lattitude product of infringing. ALS denied infringement of the '254 Patent with respect to all of the accused products.

Following trial, the jury issued a verdict of infringement with respect to only three of the five MulTMed products. The Latitude product was found not to infringe. The jury determined an amount of damages from the infringement to be $207,554. The jury further found the infringement not to be willful. On February 5, 2007, the Court issued a Judgment awarding

1

damages and prejudgment interest and enjoining ALS from future sales of the MulTMed products found to infringe. The Judgment did allow ALS to fulfill existing contracts for the MulTMed products with payment of additional damages of $67 per unit.

ALS timely filed a Motion for Judgment as a Matter of Law, to Alter Judgment and/or for New Trial. Specifically, ALS asserted that Genlyte had failed to provide any evidence that any of the ALS products include a structure for ceiling mounting the fixtures which is identical or equivalent to any structures in the specification of the '254 Patent. ALS further asserted that Genlyte had failed to provide any evidence that the accused products included a first fixture which aimed more light in a downward direction to a reading area and a second fixture which aimed more light in a downward and outward direction to a wall. Instead, all of ALS's products have fixtures which direct light identically – downward. ALS argued that judgment should be granted in favor of ALS or a new trial be ordered since the evidence did not support the verdict and was against the clear weight of the evidence. ALS further request a new trial based upon the Court's failure to instruct the jury with respect 35 U.S.C. §112, sixth paragraph regarding infringement of a claim limitation written in means-plus-function format.

The Court denied part of ALS's motion and granted part. Genlyte then moved to alter the part of the judgment changed by the Court's grant of ALS's motion. Genlyte's motion was denied. ALS has now appealed the judgment. The present motion seeks to preserve the status quo during the appeal.

ALS is a small company. It has approximately 25 employees. Declaration of Paul Northrup ("Northrup Decl."), Exhibit 1 hereto, ¶7. The Judgment and injunction will have a significant impact on the ongoing operations of ALS. Without the sales of the MulTMed products, ALS will likely have to lay off six employees. Northrup Decl. ¶6. In the event that ALS prevails on appeal, the layoffs will continue to have a detrimental effect on operations.

ALS's employees are very experienced. It is unlikely that ALS will be able to rehire those employees or other with similar experience. Declaration of Scott A. Davis ("Davis Decl."), Exhibit 2 hereto, ¶¶3, 4. Furthermore, ALS does not have funds on hand to pay the judgment. Northrup Decl. ¶2. The cost of a supersedeas bond to guarantee payment of the judgment following appeal is also a burden for ALS. On the other hand, ALS has obtained an agreement from its lender, Sovereign Bank, for an irrevocable letter of credit to cover the amount of the judgment. The irrevocable letter of credit from Sovereign Bank has a substantially lower cost to ALS. Northrup Decl. ¶¶3, 4.

## ARGUMENT

A.     <u>Execution Should be Stayed Without Bond</u>.

Fed. R. Civ. P. 62(d) allows an appellant to obtain a stay of a monetary judgment against it by posting a supersedeas bond. Furthermore, under Local Rule 62.2, posting of a supersedeas bond in the amount of the judgment plus ten percent results in an automatic stay of execution. *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir.2002). However, the Court has discretion to alter the supersedeas bond requirement. *Cipes v. Mikasa, Inc.*, 404 F.Supp.2d 367, 369 (D. Mass., 2005).

In the present case, the Court should exercise its discretion to waive the requirement of a supersedeas bond in lieu of an irrevocable letter of credit. Sovereign Bank, ALS's current lender, has agreed to issue an irrevocable letter of credit in the amount of $260,000 to cover the judgment. The letter of credit provides sufficient security and will protect Genlyte's right to the judgment if it prevails on appeal. Furthermore, the letter of credit has a reduced cost to ALS as compared to a supersedeas bond. Requiring a bond would constitute a waste since the same security can be obtained at a much lower cost. Accordingly, ALS's motion should be granted and execution should be stayed without the requirement of a supersedeas bond.

B.    Injunction Should Also Be Stayed.

ALS further requests a stay of the injunction with respect to manufacture, sale and offer for sale of the MT2A, MT2B and MT1D products which the jury found to infringe the '254 Patent.  A four part test is applied to determine whether a stay is appropriate pending appeal. "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987);  *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278 (Fed.Cir.1987).  The factors are not to be applied mathematically nor necessarily given equal weight. *Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979).  In this case, consideration of the factors supports grant of a stay of the injunction pending appeal.

ALS has presented its position regarding the reasons for reversal in both its oral motion for a directed verdict and its post-trial Motion for Judgment as a Matter of Law, to Alter Judgment, and/or For a New Trial.  The fact that the Court denied ALS's motions does not prevent stay.  "When the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal." *Canterbury Liquors & Pantry v. Sullivan*, 999 F.Supp. 144, 150 (D. Mass. 1998).  A movant only need establish that the appeal raises serious questions of law.  *Id.*  ALS has shown such issues in its prior motions and further reiteration is unnecessary.  The issue of whether two identical distributions can meet claim limitations which require directing light in different directions is a serious and meaningful question.  Additionally, the Court's failure to instruct the jury with respect to the statutory requirement for determining infringement of a means-plus-function claim limitation is also a serious and meaningful question of law.

4

The second two factors involve consideration of the balance of the equities. When the balance weighs heavily in favor of the appellant, a stay should be granted with a lower showing under the first factor. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (strong showing of balance of equities favors stay); *Providence Journal Co.*, 595 F.2d at 890. ("Where ... the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay."). The equities in this case are clearly in favor of ALS. ALS will be significantly harmed by the injunction. It will have to lay off approximately 25% of its workforce. ALS's workers are extremely experienced and have long tenure with the company. Davis Decl. ¶3. The loss of these workers will be a substantial hardship on ALS if and when it prevails on appeal. Davis Decl. ¶4. On the other hand, a stay of the injunction will not greatly affect Genlyte. Genlyte is a large company with many resources and sources of income. As testified to at trial, Genlyte has licensed the '254 Patent to many competitors for a single payment. Genlyte receives no revenues from the sales of competitive products by those licensees. Furthermore, Genlyte sold more products than ALS prior to and during the pendency of the lawsuit. Any losses suffered by Genlyte can be compensated with monetary damages following the appeal. As stated above, ALS has arranged for a letter of credit from Sovereign Bank to cover the amount of the judgment. Therefore, the balance of equities favors ALS.

The final factor, the public interest, does not favor either party. The public has an interest in the enforcement of rights under the patent system. On the other hand, it also has an interest in preserving companies through a final decision on their rights.

A full consideration of the relevant factors shows that the injunction should be stayed pending appeal.

CONCLUSION

For the foregoing reasons, execution on the judgment should be stayed without the need for a supersedeas bond.  A letter of credit from Sovereign Bank is sufficient to protect Genlyte's right to payment with a substantially lower costs to ALS.  Also, the injunction should be stayed pending appeal to preserve the status quo.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated:  May 23, 2007 | _s/ Brett N. Dorny_____<br>Brett N. Dorny,  BBO# 628,977<br>Law Office of Brett N. Dorny<br>386 West Main Street, Suite 12A<br>Northborough, Massachusetts  01532<br>508-709-0501<br>bndorny@dornylaw.com<br>Attorney for Defendant |

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to those indicated as non-registered participants on May 23, 2007.

_s/ Brett N. Dorny_____
Brett N. Dorny

# EXHIBIT 1

Case 1:05-cv-10945-WGY     Document 95-2     Filed 05/23/2007     Page 1 of 5

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP INC.,<br><br>    Defendant/Counterclaimant. | Civil Action No.  05-CV-10945 WGY |

## DECLARATION OF PAUL B. NORTHRUP

I, Paul B. Northrup, hereby declare as follows:

1. I am controller of Defendant Arch Lighting Group, Inc. ("ALS"). I make this declaration in support of Defendant's Motion for Stay of Judgment Pending Appeal. Unless indicated otherwise, all statements are made from my personal knowledge.

2. ALS does not have cash or liquid assets sufficient to pay the damage award of $207,544, nor prejudgment interest.

3. Following issuance of the Judgment on February 5, 2007, I contacted Sovereign Bank regarding funding of the damage award. ALS has an existing line of credit with Sovereign Bank. Sovereign Bank has agreed to provide an irrevocable letter of credit in the amount of $260,000 to cover the damage award and interest amounts. A copy of a letter from Christopher M. Thomas, Vice President at Sovereign Bank regarding the irrevocable letter of credit is attached as Exhibit A.

1

4.      I also checked on obtaining a supersedeas bond in the amount of $260,000. The cost to ALS for the letter of credit from Sovereign Bank is significantly less than for a supersedeas bond.

5.      Also, following issuance of the Judgment on February 5, 2007, I determined the effect on ALS of the injunction with respect to manufacture and sale of the MulTMed MT2A, MT2B, and MT1D products.

6.      In 2006, ALS had sales of approximately $600,000 of the enjoined products. In order to accommodate such a significant drop in sales and corresponding workload, ALS would have to eliminate six employment positions – five in manufacturing and one in administrative.

7.      ALS currently only has 24.5 full time equivalent positions. A reduction of six employees, about 25% of its employees, would have a significant affect on ALS.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of May, 2007.

_s/ Paul B. Northrup_____<br>Paul B. Northrup

# EXHIBIT A


## Sovereign Bank

Christopher M. Thomas
Vice President
Sovereign Bank
One Financial Plaza 4th Floor
Providence, RI 02903

May 17, 2007

Mr. Scott Davis
Arch Lighting Group Inc. d/b/a Architectural Lighting Systems
30 Sherwood Drive
Taunton, MA 02780

Dear Mr. Davis:

Please accept this letter as confirmation that Sovereign Bank has agreed to provide an irrevocable letter of credit in the amount of $260,000 on behalf of Arch Lighting Group Inc. d/b/a Architectural Lighting Systems as it pertains to the United States District Court Judgment dated February 5, 2007.

If you have any questions regarding this matter I can be contacted at 401-752-1823.

Regards,

Christopher M. Thomas
Vice President

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br><br>      Plaintiff/Counterclaim Defendant,<br>v.<br><br>ARCHITECTURAL LIGHTING SYSTEMS, a division of ARCH LIGHTING GROUP INC.,<br><br>      Defendant/Counterclaimant. | Civil Action No.  05-CV-10945 WGY |

### DECLARATION OF SCOTT A. DAVIS

I, Scott A. Davis, hereby declare as follows:

1. I am president of Defendant Arch Lighting Group, Inc. ("ALS").  I make this declaration in support of Defendant's Motion for Stay of Judgment Pending Appeal.  Unless indicated otherwise, all statements are made from my personal knowledge.

2. Following issuance of the injunction on February 5, 2007, I asked Paul Northrup, controller for ALS, to determine the financial impact of the injunction.  He determined that ALS would have to eliminate six employees.  The elimination of six employees would represent virtually ½ of the thirteen person manufacturing crew.  With each individual uniquely skilled in different manufacturing functions, such a labor reduction will significantly threaten the short-term viability of the company.

3. ALS is a small company with a very low turnover of employees.  On average, manufacturing employees have worked at ALS for 12 years.  They have extensive experience in manufacturing of all of ALS's products, most of which require the unique and different capabilities of every manufacturing worker.

1

2

    4.      If ALS loses five manufacturing employees at this time, it is unlikely that it would be able to rehire those employees at a later date. If the injunction were to be reversed on appeal, it is likely that ALS would have to hire inexperienced employees to replace the lost employees. The hiring of inexperienced employees would continue to reduce ALS's productivity for years to come.

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of May, 2007.

                                                          __s/ Scott A. Davis_____
                                                          Scott A. Davis