UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br>a Delaware Limited Liability Company<br>Plaintiff,<br><br>v.<br><br>ARCH LIGHTING GROUP, INC. d/b/a<br>ARCHITECTURAL LIGHTING SYSTEMS<br>Rhode Island Corporation<br><br>Defendant. | Civil Action No. 05-CV-10945 WGY |

**PLAINTIFF GENLYTE THOMAS GROUP'S OPPOSITION TO
ALS' MOTION TO STAY JUDGMENT PENDING APPEAL**

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, for its opposition to the Motion of Defendant, Arch Lighting Group d/b/a Architectural Lighting Systems ("ALS"), to Stay Judgment Pending Appeal ("ALS' Motion"), states:

**I.   Waiver Of The Supersedeas Bond As Requested By ALS Fails To Properly Secure Genlyte.**

Although Genlyte would generally accept the concept of a true irrevocable letter of credit as security for the judgment, ALS' Motion does not provide the evidence necessary to show that Genlyte's right to collection of the judgment is adequately protected.

a.   ALS has not provided an irrevocable letter of credit. Instead of attaching the letter of credit to its motion, ALS merely provides to the Court and Genlyte a letter from Sovereign Bank stating that it has agreed to provide an irrevocable letter of credit in the amount of $260,000 on behalf of ALS as it pertains to the judgment. However, the letter from Sovereign Bank is not itself a letter of credit and fails to disclose any of the terms and conditions of the letter of credit, such as whether Genlyte is the sole named

beneficiary and under what terms the letter shall be payable upon Genlyte's proper demand. Consequently, without the actual letter of credit, it is impossible to determine whether Genlyte's rights will adequately be protected as mandated by Fed.R.Civ.P. 62.

      b.     ALS relies upon this Court's statement in *Cipes v. Mikasa, Inc.*, 404 F.Supp.2d 367 (D.Mass. 2005) that the Court has discretion to alter the supersedeas bond requirement. However, in that same case, this Court also stated that "[g]iven that the bond requirement is explicitly described in both the federal and local rules, an appellant should, as a general matter, be obliged to satisfy it." *Id.* at 369. By ALS' own admission it cannot pay the judgment. (*See* ALS' Motion, p. 3; Exhibit 1, ¶2, to ALS' Motion). And, despite the fact that ALS contends that a letter of credit would "protect Genlyte's right to the judgment," ALS fails to adequately demonstrate this to be accurate. Moreover, ALS contends that requiring it to post a supersedeas bond would be a "waste" because the same security can be obtained at a much lower cost. (*See* ALS' Motion, p. 3). Yet ALS fails to even identify what the difference in cost would be for a bond versus the letter of credit.

      c.     ALS requested a stay on the execution of the judgment only after Genlyte has incurred costs in initiating the execution process. On May 11, 2007, Genlyte wrote counsel for ALS and requested ALS to pay the judgment and notified ALS that if it failed to make payment that Genlyte would initiate execution on the judgment. (*See* Letter from Robert Theuerkauf to Brett Dorny, dated May 11, 2007, attached as <u>Exhibit A</u>.) ALS remained silent, so Genlyte initiated the execution process by filing its First Writ of Execution and by initiating service by Sherriff of the issued writ on ALS. Additionally, on May 21, 2007, Genlyte issued a subpoena on ALS for a post-judgment deposition and

also served a notice of the deposition on ALS' counsel. Not until after these actions were taken did ALS file, on May 23, 2007, its motion to stay execution. Had counsel for ALS contacted counsel for Genlyte, ALS' motion to stay execution without bond may have been unnecessary. In point of fact, Genlyte is willing to accept security by way of a proper letter of credit; and ALS did not need to resort to plead to this Court for a stay, had ALS only initiated discussion offering such letter and had ALS allowed Genlyte the opportunity to review same (as Genlyte is now requesting).

As a result, ALS' request to have this Court waive the supersedeas bond in lieu of an irrevocable letter of credit should be denied. However, if the Court is so inclined, Genlyte has no objection to a properly drafted irrevocable letter of credit so long as it fully secures payment of the judgment (including interest and costs) to Genlyte upon the Federal Circuit affirming the judgment, and Genlyte's right to approve the terms of such letter is preserved. The irrevocable letter of credit should be approved and signed before any stay is entered. There was no reason ALS could not have submitted this letter of credit previously.

**II.     ALS Should Not Be Allowed To Continue Its Infringing Activities During The Appeal.**

ALS has failed to show that the circumstances of this case favor a stay of the injunction. ALS had every opportunity to settle this case in a manner that would have allowed it to continue to sell its infringing products. In fact, Genlyte attempted to settle with ALS all the way up until the time the Jury returned its verdict. The Court will also remember that at the December 11, 2006 final pre-trial conference, ALS' settlement "offer" was to allow Genlyte to "walk away." ALS, however, decided to "roll the dice" and, consequently, any detriment suffered by ALS is of its own doing.

3

>The factors weighed in determining whether to issue a stay pending appeal are:
>
>(1) whether the stay applicant had made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Canterbury Liquors & Pantry v. Sullivan*, 999 F.Supp. 144, 149 (D.Mass. 1988). Under the first factor, ALS has completely failed to make a showing that it is likely to succeed on the merits. ALS, as it argued in its Motion for Judgment as a Matter of Law ("JMOL"), contends that Genlyte failed to provide evidence that ALS' products contained all of the patent claim limitations. (*See* ALS' Motion, p. 2). Of course, after instruction by this Court, the jury disagreed. But additionally, Genlyte has already demonstrated in response to ALS' JMOL, that Genlyte provided ample evidence during trial, through testimony and exhibits (including physical samples of ALS' products) that the ALS' products were infringing.

ALS also contends that the Court failed to instruct the jury with respect to 35 U.S.C. § 112. However, as Genlyte again pointed out in its response to ALS' JMOL, the Court was well within its discretion not to give ALS' proffered jury instruction when ALS' requested instruction was incorrect as a matter of law. As the *Canterbury* court stated with respect to the first factor, "the movant must . . . establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." *Canterbury*, 999 F.Supp. at 150. It is an understatement to say that ALS contentions do not involve an "unclear" area of the law or that its positions raise a "serious and difficult" question of law.

With respect to the second factor, ALS' contention that it will suffer hardship is belied by its own testimony. ALS' President, Scott Davis, testified as follows:

> Q. Do you consider the MulTMed to be a successful product, MulTMed?
>
> A. I guess success is a relative thing. In certain ways, it's been a successful product.
>
> Q. And in what ways has it been successful?
>
> A. It's given our company a good level of credibility because people like the design of it and it has enhanced the perception of our company in the market.
>
> Q. I thought you said earlier you don't make money on it? Did I hear you say that?
>
> A. I don't think I said, but I probably could have said it. I don't know that we don't make money period, but it is not a money-maker for us.

(Deposition of Scott A. Davis, September 6, 2006, 107:3-16, excerpt attached as Exhibit B). In light of this testimony, it is hard to imagine ALS suffering irreparable harm from being enjoined from manufacturing and selling a product from which it does not make money.

Nonetheless, ALS fails to show that any harm it may suffer would be irreparable. ALS contends that if the injunction is not stayed that it would have to lay off six employees. (*See* ALS' Motion, p. 2; Exhibit 1, ¶6, to ALS' Motion). However, ALS states that if the injunction is reversed that it is only "unlikely" that it could rehire those employees. (*See* ALS' Motion, p. 2; Exhibit 2, ¶4, to ALS' Motion). Consequently, ALS has not shown the alleged harm to be irreparable. Regardless, if ALS were required to hire and train new employees, this is hardly the irreparable harm needed to support a stay of the injunction. ALS further contends that a lay off of six employees would

5

"impact" or have a "detrimental effect" on ALS, but wholly fails to identify or provide any evidence of what the "impact" or "effect" might be. As a result, ALS' alleged harm is merely speculative and fails to justify a stay.

On the other hand, and with respect to the third factor, Genlyte will be substantially injured if ALS is allowed to continue to sell the infringing products. Genlyte, as the patent owner, has the statutory right, under 35 U.S.C. § 154, to exclude ALS from manufacturing and selling the infringing products. A stay of the injunction will deprive Genlyte of this statutory right.

Moreover, in support of its argument for a waiver of the supersedeas bond, ALS admits that it cannot pay the judgment. (*See* ALS' Motion, p. 3). Yet in its argument to avoid the injunction, ALS states that "[a]ny losses suffered by Genlyte can be compensated with monetary damages following the appeal." (*See* ALS' Motion, p. 5). How can this be true if ALS cannot pay the judgment? Even assuming ALS obtains a letter of credit, that letter of credit cannot be said to account for any future sales of the infringing products when we do not know how many sales ALS may make. Consequently, if the stay is granted Genlyte will likely suffer substantial harm because ALS may not be able to compensate Genlyte for sales of the infringing products.

Finally, in contradiction to ALS' assertions, the fourth factor, the public interest, favors denying the motion to stay. A jury has found ALS to be an infringer of Genlyte's patent rights and this Court was well within its right to issue the permanent injunction. And, as pointed out by ALS, the public has a substantial interest in the enforcement of rights under the patent system. A stay of the injunction, on the other hand, would destroy this public interest by depriving Genlyte of its statutory right to exclude ALS from

6

manufacturing and selling the infringing products.  Moreover, any infringing sales made by ALS will potentially confuse the public as to the source of the products.

ALS merely argues that the public has an interest in "preserving companies through a final decision on their rights."  (*See* ALS' Motion, p. 5).  However, ALS fails to provide any evidence that maintenance of the injunction during the appeal would cause it to cease doing business.

ALS has failed to (1) make a "strong showing" that it is likely to succeed on the merits, (2) that it will be irreparably harmed, or (3) that the public interest favors a stay.  Consequently, ALS' motion to stay the injunction must be denied.

### III.    Conclusion

For the foregoing reasons, Genlyte respectfully requests the Court to deny ALS' Motion to Stay Judgment Pending Appeal.  In the event the Court waives the requirement of a supersedeas bond in lieu of an irrevocable letter of credit, Genlyte respectfully requests the Court to only allow such so long as the letter of credit fully secures payment of the judgment (including interest and costs) to Genlyte upon the Federal Circuit affirming the judgment.

Dated:  May 25, 2007

Respectfully submitted,

GENLYTE THOMAS GROUP LLC

By Its Attorneys,

/s/ Kevin Gannon
James E. Milliman (*Pro hac vice*)
James R. Higgins, Jr. (*Pro hac vice*)
Robert J. Theuerkauf (*Pro hac vice*)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
Kevin Gannon BBO#640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as on registered participants, if any, on this 25th day of May, 2007.

/s/ Kevin Gannon

# EXHIBIT A



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower

Louisville, Kentucky
40202

502.584.1135

502.561.0442 fax

www.middreut.com

Robert J. Theuerkauf

Direct Dial: (502) 625-2747

rtheuerkauf@middreut.com

May 11, 2007

*Via Tele-Fax and First Class Mail*

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:   *Genlyte Thomas Group LLC v. Architectural Lighting Systems*,
      U.S. District Court, District of Massachusetts
      Civil Action No. 05-CV-10945 WGY

Dear Brett:

   Now that the Court has entered an Order for Costs, there are no issues as to the amount (other than any amounts due under paragraph 8 of the Judgment) Arch Lighting Group ("ALS") owes Genlyte Thomas Group LLC ("Genlyte"). We expect that ALS will immediately pay the judgment of $207,554, prejudgment interest of $30,089, costs of $5,490.35 and post judgment interest at the rate of 5.10% (per the Court's Post Judgment Interest Rate Table). Otherwise, Genlyte has instructed us to proceed with execution of the judgment.

   The total amount due and owing Genlyte, as of today, is $246,321.02 which includes post judgment interest in the amount of $3,187.67. Thank you for you attention to this matter.

                                           Very truly yours,

                                           MIDDLETON REUTLINGER

                                           Robert J. Theuerkauf

RJT

cc:   Daniel R. Fuller, Esq.
      James E. Milliman, Esq.
      James R. Higgins, Jr., Esq.

# EXHIBIT B

1

Volume: I

Pages: 1 - 165

**CERTIFIED ORIGINAL
LEGALINK BOSTON**

Exhibits: 1 - 13

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-10945 REK

- - - - - - - - - - - - - - - - - - - - - x

GENLYTE THOMAS GROUP, LLC,

a Delaware Limited Liability Company,

    Plaintiff,

V.

ARCHITECTURAL LIGHTING SYSTEMS

a division of ARCH LIGHTING GROUP,

a Rhode Island Corporation,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - x

    VIDEOTAPED 30(b)(6) DEPOSITION OF ALS

    Through SCOTT A. DAVIS

Wednesday, September 6, 2006, 9:12 a.m.

    Cesari and McKenna LLP

    88 Black Falcon Avenue

    Boston, Massachusetts

  Reporter: Rosemary F. Grogan, CSR, RPR

LegaLink Boston, a Merrill Communications Company

Scott A. Davis                                                    09/06/2006

2

1  APPEARANCES:

2  Representing the Plaintiff:

3     MIDDLETON REUTLINGER

4     2500 Brown & Williamson Tower

5     Louisville, KY  40202

6     (502)584-1135

7     BY:  JAMES E. MILLIMAN, ESQUIRE

8     BY:  ROBERT J. THEUERKAUF, ESQUIRE

9

10 Representing the Defendants:

11    Law Offices of BRETT N. DORNY

12    386 West Main Street, Suite 12A

13    Northborough, MA  01532

14    (508)709-0493

15    BY:  BRETT N. DORNY, ESQUIRE

16

17 Also present:

18    Thomas Shahood, Videographer

19    Steve Hartman, Videographer

20

21

22

23

24

1   tell you?

2   A. No, we don't.

3   Q. Do you consider the MulTMed to be a successful

4   product, MulTMed?

5   A. I guess success is a relative thing. In

6   certain ways, it's been a successful product.

7   Q. And in what ways has it been successful?

8   A. It's given our company a good level of

9   credibility because people like the design of it and it

10  has enhanced the perception of our company in the

11  market.

12  Q. I thought you said earlier you don't make

13  money on it? Did I hear you say that?

14  A. I don't think I said, but I probably could

15  have said it. I don't know that we don't make money

16  period, but it is not a money-maker for us.

17  Q. Do you lose money on it?

18  A. We haven't done the greatest -- there's a lot

19  of ways to analyze whether you're making or losing

20  money. I would say that we probably lose money on many

21  of the sales that we make.

22  Q. Why is that?

23  A. Because there's a tremendous amount of

24  pressure, pricing pressure. The world of lighting is

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
            Plaintiff,

v.

ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS
Rhode Island Corporation

            Defendant.

Civil Action No. 05-CV-10945 WGY

### [Proposed] ORDER DENYING DEFENDANT'S MOTION TO STAY JUDGMENT PENDING APPEAL

This matter is before the Court on the motion by Defendant, Arch Lighting Group, Inc. ("ALS") To Stay Judgment Pending Appeal. The Court, having reviewed and considered the parties' respective memoranda and supporting material, and any responses thereto, and otherwise being duly and sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that ALS' motion to stay the injunction entered on February 5, 2007 be, and it hereby is, DENIED; and

IT IS HEREBY ORDERED AND ADJUDGED that ALS' motion to stay execution of the damage award and for waiver of the supersedeas bond be, and it hereby is, DENIED. Said denial of the motion to stay execution of the damage award and for waiver of the supersedeas bond will be reconsidered upon (1) ALS' submission to the Court and Plaintiff, for review, an irrevocable letter of credit which fully and properly secures Genlyte's right to collection of the Judgment (including interest and costs); and (2) any objections by Plaintiff are heard.

SO ORDERED this ____ day of _____, 2007.

                                                _____
                                                Hon. William G. Young, U. S. D. J.