UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,

        Plaintiff/Counterclaim Defendant,

    v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP,

        Defendant/Counterclaimant.

Civil Action No. 05-CV-10945 WGY

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR TEMPORARY STAY OF EXECUTION
AND TO QUASH DEPOSITION SUBPOENA**

Defendant Arch Lighting Group, Inc. ("ALS") has moved for a temporary stay of

execution of the Judgment of February 5, 2007 ("the Judgment") in order to obtain a supersedeas

bond and approval of the bond by the Court.  ALS has also moved to quash a deposition

subpoena issued in furtherance of execution of the Judgment.  In the interest of justice, as set

forth below, Defendant's motions should be granted.

BACKGROUND

Genlyte Thomas Group LLC ("Genlyte") sued ALS for patent infringement with respect

to U.S. Patent No. 2,038,254 ("the '254 Patent").  Genlyte accused all of ALS's MulTMed

products and ALS's Exam/Ambient Lattitude product of infringing.  ALS denied infringement of

the '254 Patent with respect to all of the accused products.

Following trial, the jury issued a verdict of infringement with respect to only three of the

five MulTMed products.  The Latitude product was found not to infringe.  The jury determined

an amount of damages from the infringement to be $207,554.  The jury further found the

infringement not to be willful.  On February 5, 2007, the Court issued a Judgment awarding

damages and prejudgment interest and enjoining ALS from future sales of the MulTMed

products found to infringe. The Judgment did allow ALS to fulfill existing contracts for the MulTMed products with payment of additional damages of $67 per unit.

On May 23, 2007, ALS timely appealed the Judgment. ALS also filed a motion to stay execution pending appeal. In that motion, ALS requested a waiver of a supersedeas bond in lieu of an irrevocable letter of credit. The motion was denied on June 5, 2007.

Since issuance of the Judgment, Genlyte has continually and improperly harassed ALS and its attorney regarding the Judgment. ALS has complied with the Judgment issued by the Court. Nevertheless, Genlyte's counsel has accused ALS of failing to properly report post-Judgment sales in accordance with paragraph 8 despite having received those reports. Declaration of Brett N. Dorny ("Dorny Decl.") (attached as Exhibit 1) ¶4. Genlyte's counsel has further accused ALS of failing to comply with the injunction, demanded all ALS documents regarding existing contracts, and threatened to move for contempt and sanctions unless Genlyte's demands were met. Dorny Decl. ¶8. Genlyte's counsel specifically referred to an ongoing project at Adventist Bollingbrook Hospital, for which ALS had an existing binding contract. Dorny Decl. ¶¶8-9. When Mr. Milliman was assured that the referenced project was one for which ALS had a binding contract, he misstated, without any support, the law regarding binding contracts in an attempt to force ALS to submit. Dorny Decl. ¶10.

On March 12, 2007, ALS reported the sales of the MulTMed products between September 2006 and February 2007 as required by paragraph 4 of the Judgment. ALS also requested that Genlyte agree to deferral of payment in view of the then pending Motion to strike paragraph 4 of the Judgment. Dorny Decl. ¶7. Mr. Milliman refused to agree to such a deferral. *Id.* However, the refusal became moot when the Court did strike paragraph 4 and those money no longer were due.

Finally, on May 23, 2007, ALS received a deposition subpoena from a new, seventh attorney for Genlyte, Richard E. Gentilli of Bartlett Hackett Feinberg PC.  Dorny Decl. ¶11.  The deposition was scheduled a mere eight days hence.  Ostensibly, the deposition subpoena is to aid in execution of the Judgment.  However, it includes many categories of information which are irrelevant to collection of damages under the Judgment.  In view of the then pending Motion to Stay Execution, Mr. Gentilli graciously agreed to postpone the deposition pending a decision on that motion.  *Id.*  However, about an hour after issuance of the order denying ALS's motion, Mr. Gentilli sent an email requesting rescheduling of the deposition, in either three or seven days.  Shortly after ALS's counsel informed Mr. Gentilli that he was unavailable either of the suggested days but would provide proposed dates soon, Mr. Milliman sent an email accusing ALS of refusing to comply and causing improper delay, and threatened to bring action against ALS.  Action by the Court is necessary to protect ALS from ongoing harassment by Genlyte.

## ARGUMENT

A.     Execution Should be Stayed To Allow ALS to Obtain A Supersedeas Bond.

Fed. R. Civ. P. 62(d) allows an appellant to obtain a stay of a monetary judgment against it during the pendency of an appeal by posting a supersedeas bond.  Furthermore, under Local Rule 62.2, posting of a supersedeas bond in the amount of the judgment plus ten percent results in an automatic stay of execution.  *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir.2002).  However, the Court has discretion to issue stays and to alter the requirement of a supersedeas bond and/or to allow for other security for payment of a judgment.  *Cipes v. Mikasa, Inc.*, 404 F.Supp.2d 367, 369 (D. Mass., 2005).

All requests for a stay are governed by a four part test:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v.*

*Braunskill*, 481 U.S. 770, 776 (1987); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835

F.2d 277, 278 (Fed.Cir.1987). All of these factors support issuance of the requested temporary

stay.

First, ALS has a likelihood of success on the merits of the underlying issue. Specifically,

once ALS obtains a supersedeas bond, it is entitled to a stay of execution under Rule 62(d), Fed.

R. Civ. P. ALS previously sought to provide security for payment by means of an irrevocable

letter of credit from its current lender. The letter of credit would have guaranteed payment at a

much lower expense to ALS. Since the Court denied ALS's motion, ALS is in the process of

obtaining a supersedeas bond as required by Rule 62(d) and Local Rule 62.2. However,

obtaining a bond does require some time. Once the bond is obtained and approved, ALS will be

entitled to an ongoing stay during the already noticed appeal.

Second, ALS will be irreparably harmed without the requested temporary stay. Genlyte

is seeking to proceed with enforcement of the judgment. Execution at this time would be very

damaging to ALS's business. Since issuance of the judgment, Genlyte has repeatedly harassed

ALS, despite ALS's compliance with the Judgment. Genlyte has also refused to be even a little

accommodating with respect to the Judgment. It demanded payment of the additional royalties

under paragraph 4 of the Judgment despite a pending motion to strike that paragraph.

Notwithstanding Genlyte's demand, that motion was granted and the additional royalties were

stricken from the Judgment. Therefore, a temporary stay of execution from the Court is

necessary in order to protect ALS while it obtains the necessary bond and approval of the bond

from the Court for a stay under Rule 62(d).

Third, the requested temporary stay would have no significant effect on Genlyte. The

time period for the stay will be short. The amount of money at issue is very small when

compared to Genlyte's income and worth.  Once ALS obtains the bond, it will be entitled to the stay of execution anyway.  Thus, the only effect of a stay on Genlyte is its inability to execute on a Judgment which is likely to be stayed shortly.

Fourth, the stay would be in the public interest.  The public has an interest in the fair operation of the judicial system.  In that regard, a defendant is entitled to stay of execution during appeal once a supersedeas bond is obtained.  Accordingly, allowing a defendant time to obtain such a bond is also within the public interest.

Since all of the relevant factors support issuance of a temporary stay, ALS's motion should be granted.

B.     Deposition Subpoena Should Be Quashed.

Genlyte has issued a deposition subpoena in connection with execution of the Judgment. If ALS's motion for a temporary stay is granted, then the deposition subpoena should be quashed as being contrary to that stay.  Additionally, even if ALS's motion is not granted, the deposition subpoena should be quashed and/or modified because it fails to comply with the Federal Rules.

First, a subpoena may be quashed or modified if it fails to allow reasonable time for compliance.  Fed. R. Civ. P. 45(c)(3)(a)(i).  As originally issued, the subpoena scheduled a deposition eight days after issuance.  While Genlyte's counsel agreed to a postponement pending resolution of the motion for stay, he immediately requested the deposition within three or seven days of the Court's decision.  On both of the suggested days, ALS's counsel had commitments to previous matters.   Three, seven or even eight days is not reasonable time, particularly in light of the extensive financial and sales information to be covered by the deposition.  As set forth in the Federal Rules, ALS should be given a reasonable time to respond to the subpoena.

Second, the subpoena unduly burdens ALS contrary to Fed. R. Civ. P. 45(c)(3)(a)(iv). While ostensibly to aid in execution of the Judgment, the subpoena requests deposition testimony

regarding information irrelevant to execution.  The subpoena identifies six categories of

information for which ALS is to designate someone to testify.  Only the first category relates to

the assets of ALS available for execution on the Judgment.  Categories 2 and 3 request extensive

information on existing orders for the MulTMed products which can be supplied by ALS

pursuant to paragraph 8 of the Judgment. Categories 4-6 seek information relating to invoices,

accounts receivables, and revenues from products found to infringe since January 1, 2006.  Such

information has no relevance to collection of the Judgment.  It is just another tactic by Genlyte to

harass and burden ALS and should not be condoned by the Court.

Accordingly, the deposition subpoena should be quashed or modified to allow ALS

reasonable time to respond and to eliminate categories 2-6 which are irrelevant to execution of

the Judgment.

## CONCLUSION

For the foregoing reasons, execution on the judgment should be temporarily stayed to

allow ALS to obtain a supersedeas bond.  Additionally, the subpoena should be quashed.

Respectfully submitted,

Dated:  June 8, 2007

_s/ Brett N. Dorny_____
Brett N. Dorny,  BBO# 628,977
Law Office of Brett N. Dorny
386 West Main Street, Suite 12A
Northborough, Massachusetts  01532
508-709-0501
bndorny@dornylaw.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent by mail to those indicated as non-registered participants on June 8,
2007.

_s/ Brett N. Dorny_____
Brett N. Dorny

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,

       Plaintiff/Counterclaim Defendant,

    v.

ARCHITECTURAL LIGHTING SYSTEMS, a
division of ARCH LIGHTING GROUP,

       Defendant/Counterclaimant.

Civil Action No. 05-CV-10945 WGY

## DECLARATION OF BRETT N. DORNY

I, Brett N. Dorny, hereby declare as follows:

1.      I represent Defendant Arch Lighting Group, Inc. ("ALS") with respect to this matter. I submit this declaration in support of Defendant's Motion For Temporary Stay of Execution and to Quash Deposition Subpoena.

2.      Pursuant to paragraph 8 of the Judgment of February 5, 2007 ("the Judgment"), I sent a letter to James Milliman, counsel for Genlyte Thomas Group LLC ("Genlyte"), by facsimile and mail on March 7, 2007 reporting on sales of the MulTMed products in February. A copy of that letter is attached as Exhibit A.

3.      On April 18, 2007, I sent a letter to James Milliman by facsimile and mail reporting that ALS had made no sales in March. A copy of this letter is attached as Exhibit B. This letter had been delayed from the court ordered report date because my daughter was in the hospital with pneumonia for the first two weeks of April.

4.      On April 18, 2007, I also received a facsimile from Robert Theuerkauf, another attorney for Genlyte, asserting the ALS had violated the Judgment by failing to provide the reports required by paragraph 8. A copy of Mr. Theuerkauf's letter is attached as Exhibit C.

1

5.      On April 19, 2007, I responded to Mr. Theuerkauf that the reports had been made and enclosed a copy of my March 7, 2007 letter to Mr. Milliman.  A copy of my letter is attached as Exhibit D.  Genlyte's counsel later located my letter to Mr. Milliman and apologized for the erroneous accusation.

6.      I also reported sales for April and May by letters to Mr. Milliman on May 7, 2007 and June 7, 2007, respectively.  Copies of those letters are attached as Ehxibit E and F.

7.      On March 12, 2007, I reported to Mr. Milliman the amount of sales by ALS between September 2006 and February 2007 as required by paragraph 4 of the order.  A copy of my letter is attached as Exhibit G.  At the time, ALS had a pending motion to alter the Judgment to strike paragraph 4.  I requested Genlyte's indulgence in postponing the payment of the amounts due under paragraph 4 pending resolution of ALS's motion.  Mr. Milliman responded that Genlyte would not agree to any delay in payment of any amounts.  A copy of his response is attached as Exhibit H.  The Court did strike paragraph 4.

8.      Paragraph 8 of the Judgment permitted ALS to sell MulTMed MT2A, MT2B and MT1D products in connection with binding contracts as of February 5, 2007.  On February 28, 2007, I received a letter from Mr. Milliman asserting that ALS was continuing to sell the enjoined products.  This letter specifically mentioned a project at Adventist Bollingbrook Hospital.  This letter further demanded all of ALS's documents relating to any contract it had or intended to fulfill.  Mr. Milliman also threatened to hold ALS in contempt unless Genlyte's demands were met.  A copy of this letter is attached as Exhibit I.

9.      I responded that ALS had and would comply with its obligations under the Judgment  and that ALS had a binding contract for the Adventist Bollingbrook Hospital.  I further pointed out that the Judgment required only notice of sales made under binding contracts

and did not require ALS to provide Genlyte with all documents in its possession relating to such sales. A copy of my response is attached as Exhibit J.

10.    Undeterred, Mr. Milliman asserted that he understood the Adventist Bollingbrook Hospital order to have been a "hold for release", which was not a binding contract. A copy of his letter is attached as Exhibit K. I responded that my research indicated that a "hold for release" purchase order was a binding contract and requested any legal support for his position to the contrary. A copy of my response is attached as Exhibit L. I received no further communications on that matter.

11.    On May 23, 2007, ALS received a subpoena from Richard E. Gentilli of Bartlett Hackett Feinberg PC, a new attorney for Genlyte (the seventh one), to appear for deposition on May 31, 2007. A copy of the subpoena is attached as Exhibit M. I spoke with Mr. Gentilli and requested a postponement of the deposition in view of the then pending Motion to Stay Execution of the Judgment. Mr. Gentilli agreed.

12.    ALS's Motion for a Stay was denied on June 5, 2007. About an hour after that order issued, Mr. Gentilli sent me an email seeking to reschedule the deposition of ALS for either June 8 or June 12. A copy of this email is attached as Exhibit N. I was out of the office most of the day on June 5 and then was traveling out of the state on other matters until the morning of June 7. I responded by email to Mr. Gentilli that I was unavailable on both of the dates he proposed, but that I had talked with my client and would present him with possible dates shortly.

13.    On June 7, 2007, I receive an email from Mr. Milliman accusing me and ALS of delay with respect to the deposition. He incorrectly asserted that I had previously said ALS would not comply with the deposition subpoena and threatens to seek Court sanctions. A copy

of Mr. Milliman's email is attached as Exhibit O.

14.     On the afternoon of June 5, 2007, I informed ALS that the Court had denied the Motion for a Stay of Execution.  ALS immediately began the process for issuance of a supersedeas bond.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th day of June, 2007.

_s/  Brett N. Dorny_____
Brett N. Dorny

EXHIBIT A



**Law Office of Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

Brett N. Dorny
bndorny@dornylaw.com

508-709-0493 Direct
508-519-9185 Fax

March 7, 2007

VIA FACSIMILE AND MAIL

James E. Milliman, Esquire
Middleton Reutliner
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

> Re:  Genlyte Thomas Group LLC v. Architectural Lighting Systems
>       Civil Action No. 05-CV-10945 WGY

Dear Jim:

Enclosed is Defendant's Certification filed today as required by Paragraph 7 of the Final Judgment. With respect to paragraph 8 of the Final Judgment, ALS sold 146 of the MT2A, MT2B and MT1D products during February in connection with legally enforceable contracts existing as of February 5, 2007. ALS has not yet received payment for these product and will pay the required royalty after payment is received.

Very truly yours,

Brett N. Dorny

*Specializing In Intellectual Property Law*

EXHIBIT B

**Law Office**
**of**
**Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

Brett N. Dorny
bndorny@dornylaw.com

508-709-0493 Direct
508-519-9185 Fax

April 18, 2007

VIA FACSIMILE AND US MAIL

Robert J. Theuerkauf, Esquire
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

Re:    Genlyte Thomas Group LLC v. Arch Lighting Group, Inc.
Civil Action No.  05-CV-10945 WGY

Dear Robert:

Pursuant to paragraph 8 of the Final Judgment, ALS reports that it made no sales of the MT2A, MT2B or MT1D products in March 2007 and received no payments for sales made in February 2007.

Very truly yours,

Brett N. Dorny

EXHIBIT C



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202

502.584.1135
502.561.0442 fax
www.middreut.com

Robert J. Theuerkauf
Direct Dial: (502) 625-2747
rtheuerkauf@middreut.com

April 18, 2007

**Via Tele-Fax and First Class Mail**

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:   *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
U.S. District Court, District of Massachusetts
Civil Action No. 05-CV-10945 WGY

Dear Brett:

As you are aware, paragraph eight of the Final Judgment and Permanent Injunction ("the Order") requires Arch Lighting Group ("ALS") to submit periodic reports to Genlyte Thomas Group LLC ("Genlyte"). Specifically, ALS is to submit every thirty (30) days after entry of the Order a report to Genlyte accounting for the number of sales made of infringing product to which a legally enforceable contract existed at the time of entry of the Order.

As of the writing of this letter, ALS has not submitted any reports in accordance with paragraph eight of the Order and is therefore in violation of the Order. Consequently, Genlyte hereby demands that ALS immediately provide such reports.

Thank you for your attention to this matter.

Very truly yours,

MIDDLETON REUTLINGER

Robert J. Theuerkauf

RJT

cc:   Daniel R. Fuller, Esq.
James E. Milliman, Esq.
James R. Higgins, Jr., Esq.

EXHIBIT D

**Law Office
of
Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

Brett N. Dorny
bndorny@dornylaw.com

508-709-0493 Direct
508-519-9185 Fax

April 19, 2007

VIA FACSIMILE AND US MAIL

Robert J. Theuerkauf, Esquire
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

Re:    Genlyte Thomas Group LLC v. Arch Lighting Group, Inc.
Civil Action No. 05-CV-10945 WGY

Dear Robert:

In response to your letter of today, I reported the number of sales in February to James Milliman on March 7, 2007. I have enclosed a copy of that letter. The report for March sales – of which there were none – was delayed because my daughter was in the hospital for the first two weeks of April. ALS has not received payment for any of these sales. Therefore, ALS has fully complied with Paragraph 8 of the Judgment.

Very truly yours,

Brett N. Dorny

EXHIBIT E

**Law Office
of
Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

*Brett N. Dorny*
*bndorny@dornylaw.com*

*508-709-0493 Direct*
*508-519-9185 Fax*

May 7, 2007

VIA FACSIMILE AND MAIL

James E. Milliman, Esquire
Middleton Reutliner
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

     Re:    Genlyte Thomas Group LLC v. Architectural Lighting Systems
           Civil Action No. 05-CV-10945 WGY

Dear Jim:

    With respect to paragraph 8 of the Final Judgment, ALS did not sell any of the MT2A, MT2B and MT1D products during April. ALS has not yet received payment for any products sold since February 5, 2007 and will pay the required royalty after payment is received.

                    Very truly yours,

                    Brett N. Dorny

*Specializing In Intellectual Property Law*

EXHIBIT F



**Law Office
of
Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

*Brett N. Dorny*
*bndorny@dornylaw.com*

*508-709-0493 Direct*
*508-519-9185 Fax*

June 7, 2007

VIA FACSIMILE AND MAIL

James E. Milliman, Esquire
Middleton Reutliner
2500 Brown & Williamson Tower
Louisville, Kentucky  40202

   Re: Genlyte Thomas Group LLC v. Architectural Lighting Systems
     Civil Action No. 05-CV-10945 WGY

Dear Jim:

  With respect to paragraph 8 of the Final Judgment, ALS sold 32 MT2B products in May. ALS did not sell any of the MT2A or MT1D products during May.  ALS has now received payment for the 146 units sold in February.  In light of the Court's denial of a stay of execution pending appeal based upon the letter of credit, ALS is in the process of obtaining a supersedeas bond.  Given the likely issuance of a stay of execution pending appeal upon issuance of the bond, ALS requests your indulgence in a delay in payment of royalties under paragraph 8.

        Very truly yours,

        Brett N. Dorny

*Specializing In Intellectual Property Law*

EXHIBIT G

**Law Office
of
Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

Brett N. Dorny
bndorny@dornylaw.com

508-709-0493 Direct
508-519-9185 Fax

March 12, 2007

VIA FACSIMILE AND MAIL

James E. Milliman, Esquire
Middleton Reutliner
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

> Re:    Genlyte Thomas Group LLC v. Architectural Lighting Systems
>        Civil Action No. 05-CV-10945 WGY

Dear Jim:

Thank you for your letter of March 9, 2007. In response to your letter and pursuant to paragraph 4 of the Final Judgment, paragraph 4 of the Final Judgment, enclosed is a Certification of Paul B. Northrup regarding the number of MT2A, MT2B and MT1D products sold between September 2006 and February 2007. In light of ALS's pending motion to have paragraph 4 stricken from the Final Judgment, we request Genlyte's agreement that the payment need not be made until after the court acts on that motion. Please let me know if that is acceptable or whether we will need to file a motion with the court.

Very truly yours,

Brett N. Dorny

Specializing In Intellectual Property Law

EXHIBIT H



**MIDDLETON REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

James E. Milliman
Direct Dial: (502) 625-2765
jmilliman@middreut.com

March 13, 2007

***Via Facsimile and First Class Mail***

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:   *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
      U.S. District Court, District of Massachusetts
      Civil Action No. 05-CV-10945 WGY

Dear Brett:

In response to your letter dated March 12, 2007, we appreciate the certification of Mr. Northrup. However, Genlyte can not agree that payment be deferred. We would also note that the judgment has not yet been paid, superseded, nor stayed. Therefore, we request that ALS promptly pay the judgment in the amount of $237,643.00 plus post-judgment interest accrued to date in the amount of $1,169.77 as well as the payment for the fixtures set forth in your certification in the amount of $27,604.00 (through March 15, 2007).

Further, we do not believe that the bare statement by Mr. Northrup that "a total of 412 fixtures were sold" constitutes an accounting as contemplated by the final judgment. Mr. Northrup said "I conducted an accounting of sales of . . . ." We believe we are entitled to a true accounting – not just a mere recitation of a number. Accordingly, our demand for payment should not be construed as a waiver that Genlyte accepts the 412 number as complete or accurate.

Those payments are now due and payable. We are also submitting a bill of costs in the amount of $22,912.06 which ALS has 10 days to respond to. After that time those amounts will be currently due and payable.

Very truly yours,

MIDDLETON REUTLINGER

James E. Milliman

JEM/jas
cc:   Daniel R. Fuller, Esq.
      James R. Higgins, Jr., Esq.
      Robert Theuerkauf, Esq.

EXHIBIT I



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

James E. Milliman
Direct Dial: (502) 625-2765
jmilliman@middreut.com

February 28, 2007

***Via Facsimile and First Class Mail***

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:    *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
U.S. District Court, District of Massachusetts
Civil Action No. 05-CV-10945 WGY

Dear Brett:

The purpose of this letter is to remind ALS of the terms of the Final Judgment entered February 5, 2007. As you are aware, the Judgment includes a permanent injunction that encompasses ALS's MulTmed 2x4 product MT2A; ALS's MulTmed 2x4 product MT2B; and ALS's MulTmed 2x2 product MT1D (collectively the "Enjoined Products").

It has now come to our attention that ALS has been specified or is quoting a job for Adventist Bolingbrook Hospital in Chicago, Illinois, ("Adventist Hospital") which includes the Enjoined Products. We also understand that more such fixtures may be specified for future jobs.

The Court's injunction and order require ALS to destroy all inventory of the Enjoined Products and so certify within 30 days of the entry of the Judgment. We fully expect that ALS has already destroyed or is in the process of destroying such products. We await proper certification to the Court by March 7, 2007.

The Court's injunction and order require ALS to inform in writing all sales representatives representing ALS with respect to the Enjoined Products that "such products have been permanently enjoined and are no longer available for sale or use in a hospital patient room or in any other environment . . . ." We fully expect that ALS has already issued the notification. We await proper certification to the Court by March 7, 2007 in compliance with the Judgment.

The injunction excepts only those products for which there existed a "legally enforceable contract for ALS to provide such products as of the date of entry of this Judgment."

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
February 28, 2007
Page 2

The Order further provides that "Every thirty (30) days after entry hereof, ALS shall report to Genlyte the number of such sales and at that time remit to Genlyte the amount of royalty payments required to be paid."

Accordingly, we demand that ALS forthwith cease and desist from furnishing or offering to furnish any of the Enjoined Products to Adventist Hospital or to further quote or in any manner solicit orders for the Enjoined Products. If ALS contends that it had in existence on February 5, 2007 any binding agreement for sales of the Enjoined Products, we demand to see as of the first accounting date (March 5, 2007) all documentation supporting that contention (including all quotations, purchase orders, acknowledgements and invoices, and any and all correspondence, including email from sales representatives or others pertaining to such binding agreement).

Please understand that if Genlyte does not have satisfactory proof by March 5, 2007, as it is entitled to receive under the Judgment, we will bring this matter before the Court at the earliest opportunity and will request an audit be performed at the expense of ALS. We will also take whatever other action is necessary including the filing of a motion to show cause why your client should not be held in contempt of court. We trust that such action shall not be required.

Very truly yours,

MIDDLETON REUTLINGER

James E. Milliman

JEM/jas

cc:    Daniel R. Fuller, Esq.
       James R. Higgins, Jr., Esq.
       Robert Theuerkauf, Esq.

EXHIBIT J



**Law Office
of
Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

Brett N. Dorny
bndorny@dornylaw.com

508-709-0493 Direct
508-519-9185 Fax

February 28, 2007

VIA FACSIMILE

James E. Milliman, Esquire
Middleton Reutliner
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

   Re: Genlyte Thomas Group LLC v. Architectural Lighting Systems
      Civil Action No. 05-CV-10945 WGY

Dear Jim:

  In response to your facsimile letter of today, ALS is well aware of its obligations under the Final Judgment entered on February 5, 2007 and has been fully complying. ALS will make the required notifications and certifications at the times required by the Final Judgment.

  With respect to Adventist Bolingbrook Hospital in Chicago, Illinois, ALS accepted a purchase order for MT2B products on December 27, 2006, which has not yet been filled. Pursuant to paragraph 8 of the Final Judgment, ALS may fulfill that contract. ALS will report and pay a royalty on that sale as required by the Final Judgment. No other MT2A, MT2B, or MT1D products have been offered or quoted to Adventist Bolingbrook Hospital.

  Finally, your demand for "all documentation (including all quotations, purchase orders, acknowledgements and invoices, and any and all correspondence, including email from sales representatives or others …)" in support of any binding agreements is outside the requirements of the Final Judgment. As required by the Final Judgment, every thirty days, ALS will report the number of sales made in fulfilling existing contracts and will pay the required royalties within thirty days of receiving payment.

        Very truly yours,

        Brett N. Dorny

*Specializing In Intellectual Property Law*

EXHIBIT K



**MIDDLETON
REUTLINGER**

2500
Brown & Williamson
Tower
Louisville, Kentucky
40202
502.584.1135
502.561.0442 fax
www.middreut.com

James E. Milliman
Direct Dial: (502) 625-2765
jmilliman@middreut.com

March 2, 2007

***Via Facsimile and First Class Mail***

Brett N. Dorny, Esq.
LAW OFFICE OF BRETT N. DORNY
386 West Main Street, Suite 12A
Northborough, Massachusetts 01532

Re:    *Genlyte Thomas Group LLC v. Architectural Lighting Systems,*
U.S. District Court, District of Massachusetts
Civil Action No. 05-CV-10945 WGY

Dear Brett:

Thank you for your prompt response to my February 27, 2007 letter regarding the Adventist Bolingbrook Hospital project. Unfortunately, it appears that your client has furnished you with incomplete and misleading information which leads you to conclude that there existed a binding contract as of December 27, 2006. The purchase order you referred to is a "hold for release" order. As you may not know, these "hold for release" orders are <u>not</u> binding orders. Rather, such orders are cancelable by the hospital or supplier.

Typically, during the "hold for release" period, the final approval process takes place. The final approval process confirms that the fixture being provided is in fact the item that was originally specified by the design team. Also, during this process, further changes may be required in the fixture such as the price or fixture requirements. In addition, the "hold for release" period is an opportunity for everyone to uncover potential problems before the order becomes binding, *i.e.,* is released.

Indeed, this is what happened with respect to the Adventist Bollingbrook Hospital project. And, in fact, the ALS MT2B fixtures were just recently <u>resubmitted</u> by the contractor to the hospital project design team <u>with</u> changes. Those requested changes by the electrical engineer to the original submittal were as follows: "Specified fixture (Lightolier) has isolated compartments to separate common and critical circuits. Alternate product (ALS) does not. Please revise and resubmit".

Therefore, there is no binding contract because the ALS MT2B fixture was just resubmitted to the hospital project design team. This means the ALS MT2B fixtures have not been released for manufacture by ALS's customer. As such, the purchase order you referred to was not, and is not, binding. Neither the hospital, nor the distributor of these ALS fixtures for this Adventist Bollingbrook Hospital project, were or are bound to purchase the MT2B fixtures.

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
March 2, 2007
Page 2

Obviously, the Court expected good faith compliance with its permanent injunction. That injunction orders ALS to "forthwith cease and desist from [a] making or selling or offering to sell in any fashion" the enjoined products. We are not prepared to accept ALS's characterization that the order dated December 27, 2006 is binding when according to our information a "hold for release" order such as this is not binding. In fact, our information is that the ALS MT2B fixtures were just recently resubmitted for approval (and such approval is not yet final) which is proof that the purchase order you mentioned in your letter was not binding either as of December 27, 2006 or February 5, 2007. Therefore, it is no surprise that ALS is unwilling to provide documentation to support its characterization of the order. Further, ALS's actions are particularly egregious if the resubmittal of the MT2B fixtures by ALS was after February 5, 2007.

Consequently, please provide by no later than 12:00 p.m., Tuesday, March 6, 2007, the following assurances from ALS:

a)      that the purchase order referenced in your letter had been released, or that a release had been requested, by the purchaser for the manufacture and sale of the ALS MT2B fixtures as of February 5, 2007;

b)      that there have been no resubmittals since February 5, 2007, nor will there be any further resubmittals, of the ALS MT2B fixtures or other enjoined ALS products for this project; and

c)      that since February 5, 2007 ALS has not authorized any representative or contractor to resubmit the ALS MT2B fixture, or any other enjoined fixture, for the Adventist Bollingbrook Hospital project or any other project.

Unless we receive the above assurances we will have no choice but to file a show cause motion as to why ALS should not be held in contempt for violation of the permanent injunction. Alternatively, in the absence of such assurances from ALS, in order to avoid the show cause motion, we ask for ALS's agreement by 12:00 p.m., Tuesday, March 6, 2007, to immediately withdraw any and all submittals of, or offers to sell, the ALS MT2B fixture (or any other enjoined fixture) for the Adventist Bollingbrook Hospital project.

MIDDLETON
REUTLINGER

Brett N. Dorny, Esq.
March 2, 2007
Page 3

Thank you for your attention to this matter. We look forward to your prompt response.

Very truly yours,

MIDDLETON REUTLINGER

James E. Milliman

JEM/jas

cc:    Daniel R. Fuller, Esq.
       James R. Higgins, Jr., Esq.
       Robert Theuerkauf, Esq.

EXHIBIT L



**Law Office
of
Brett N. Dorny**

386 West Main Street, Suite 12A
Northborough, Massachusetts 01532
508-709-0501

*Brett N. Dorny*
*bndorny@dornylaw.com*

508-709-0493 *Direct*
508-519-9185 *Fax*

March 6, 2007

VIA FACSIMILE

James E. Milliman, Esquire
Middleton Reutliner
2500 Brown & Williamson Tower
Louisville, Kentucky 40202

   Re: Genlyte Thomas Group LLC v. Architectural Lighting Systems
     Civil Action No. 05-CV-10945 WGY

Dear Jim:

  In response to your letter of March 2, 2007, I am confused by your suggestion that a purchase order with a reference as "hold for release" is not a binding order. All of the cases which I have been able to find have concluded that a "hold for release" purchase order is a binding contract. See, e.g., *U.S. v. Oversteet Elec. Co., Inc.*, 2006 WL 145652 (E.D. Wash. 2006); *Multiplastics, Inc. v. Arch Indus., Inc.*, 166 Conn 280, 380 A.2d 618 (Conn. 1974). Under the terms of ALS's quotes and acceptances of purchase orders, all accepted purchase orders are binding. If you have some law to the contrary, we would be glad to consider it.

  Furthermore, ALS does not contract directly with a hospital or healthcare facility or the contractor. With respect to the project at Adventist Bolingbrook Hospital, as is typical for ALS, the purchase order is from an electrical distributor, with whom ALS has a binding contract. ALS is not privy to the relationships between the electrical distributor, the contractor and the hospital and is not responsible for the independent actions of any third parties. ALS has not authorized its independent representatives, customers, or anyone else to submit or resubmit the MT2A, MT2B or MT1D fixtures to any distributor, contractor or facility.

  ALS is in full compliance with the injunction entered by the Court. ALS has not and will not sell or ship any MT2A, MT2B and MT1D fixtures for which an accepted purchase order, i.e. a binding contract, did not exist prior to February 5, 2007.

       Very truly yours,

       Brett N. Dorny

*Specializing In Intellectual Property Law*

EXHIBIT M

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

──────── DISTRICT OF ────────

GENLYTE THOMAS GROUP LLC
          Plaintiff
           **V.**
ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS
          Defendant

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 05-CV-10945-WGY

TO: Arch Lighting Group, Inc.

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. See Schedule A — Topics

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Bartlett Hackett Feinberg, PC, 155 Federal St, 9th Fl, Boston, MA 02110 | May 31, 2007 10:00 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_     Attorney for Plaintiff | May 21, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Richard E. Gentilli, Bartlett Hackett Feinberg PC, 155 Federal St, 9th Fl, Boston, MA 02110
BBO#189080                               (617) 422-0200

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## SCHEDULE A - TOPICS

1. The assets, liabilities, income and expenses of Arch for the period January 1, 2006 to the present date, including, but not limited to:

    a. the location and dollar holdings of all bank accounts of Arch;

    b. the names and addresses of all of the largest customers and account debtors of Arch;

    c. all sources of revenue of Arch and the amount of such revenues;

    d. all compensation of any kind paid by Arch to its shareholders or their family members;

    e. all amounts paid by Arch as payroll;

    f. all transfers or distributions of assets having a value in excess of $1000 by Arch;

    g. all tangible assets, real estate, equipment or vehicles of Arch having a value in excess of $1000;

    h. all brokerage, money market or other like investment accounts in the name of Arch;

    i. any and all other assets or interests of Arch; and

    j. all loans and other liabilities of Arch, including the identity of all secured lenders to Arch.

2. Arch's customers' outstanding orders for Arch's MulTmed 2x4 products MT2A and MT2B and Arch's MulTmed 2x2 product MT1D, including the date, terms, installation site and customers on each such order.

3. Arch's customers' outstanding "hold for release" orders for Arch's MulTmed 2x4 products MT2A and MT2B and Arch's MulTmed 2x2 product MT1D, including the date, terms, installation site and customer on each such order.

4. Any and all of Arch's invoices pertaining to Arch's MulTmed 2x4 products MT2A and MT2B and Arch's MulTmed 2x2 product MT1D for the period January 1, 2006 to the present date.

5. Any and all of Arch's records of accounts receivables pertaining to the sales of Arch's MulTmed 2x4 products MT2A and MT2B and Arch's MulTmed 2x2 product MT1D for the period January 1, 2006 to the present date.

6. Any and all of Arch's records of revenue pertaining to Arch's MulTmed 2x4 products MT2A and MT2B and Arch's MulTmed 2x2 product MT1D for the period January 1, 2006 to the present date.

EXHIBIT N

**Brett N. Dorny**

| | |
|---|---|
| **From:** | Richard Gentilli [REG@bostonbusinesslaw.com] |
| **Sent:** | Tuesday, June 05, 2007 1:55 PM |
| **To:** | bndorny@dornylaw.com |
| **Subject:** | Genlyte v. Arch lighting |

Brett,
I understand the motion to stay execution was denied by the Court. As a result I would
like to proceed with the previously noticed (and
subpoenaed) post-judgment deposition as soon as practicable. Please let me know if we can
proceed with it either Friday June 8 or Tuesday June 12.

 I look forward t hearing from you as soon as possible.

Richard E. Gentilli
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
Tel.:   617/422-0200, ext. 232
Fax direct dial: 617/896-6268
Fax office: 617/422-0383
Email: reg@bostonbusinesslaw.com
Web site: www.bostonbusinesslaw.com

The information contained in this communication, including any attachments hereto, is
confidential, is intended only for the use of the recipient named above, and may be
legally privileged.  If the reader of this message is not the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this communication is
strictly prohibited.  If you have received this communication in error, please return it
to the sender and destroy all copies.

EXHIBIT O

## Brett N. Dorny

| | |
|---|---|
| **From:** | James E. Milliman [JMilliman@MiddReut.com] |
| **Sent:** | Thursday, June 07, 2007 4:39 PM |
| **To:** | 'Brett N. Dorny' |
| **Cc:** | James R. Higgins, Jr.; Robert J Theuerkauf; 'REG@bostonbusinesslaw.com' |
| **Subject:** | ALS - Certification and Judgment. |

Brett -- we have not yet received certification from ALS for sales, per Paragraph 8 of the Final Judgment, which was due no later than Tuesday, June 5, 2007.  Also, I have been informed that you are not avalailable for depositions as noticed by Richard Gentilli.  But you have not provided dates which are acceptable. These delay tactics are unacceptable and will not be tolerated. My understanding is that you said previously that ALS was not going to comply with the subpoena until your motion to stay was resolved.   Judge Young has now resolved the matter by his Order denying ALS' stay motion.  I am instructing Mr. Gentilli to to take whatever action he deems necessary to enforce the subpoena and depositions.  ALS should understand that delay in paying the Judgment, or in forestalling collection  thereof will not be tolerated or countenanced and we will seek Court intervention and sanctions if necessary.

Jim Milliman