UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                Plaintiff,

v.

ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS
Rhode Island Corporation

                Defendant.

Civil Action No. 05-CV-10945 WGY

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR TEMPORARY STAY OF EXECUTION AND TO QUASH DEPOSITION SUBPOENA**

Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, for its Opposition to Defendant, Arch Lighting Group d/b/a Architectural Lighting Systems' ("ALS"), Motion for Temporary Stay of Execution and to Quash Deposition Subpoena ("ALS' Motion"), states:

This is the second time ALS has been before this Court seeking a stay. Now, ALS resorts to accusations of "harassment" in an attempt to avoid the consequences of its own failure to secure this Court's judgment. The Final Judgment and Permanent Injunction (the "Judgment") was entered by this Court on February 5, 2007. And, as stated in the First Circuit case cited by ALS, "[t]he federal rules contemplate that, absent a stay, a victorious plaintiff may execute on the judgment even while an appeal of that judgment is pending." *Acevedo-Garcia v. Vera-Monroig*, 368 F.3d 49, 58 (1st Cir. 2004).

Since entry of the Judgment, ALS has failed to satisfy the Judgment and Genlyte has properly acted in an effort to preserve its rights to collect the Judgment. Further,

ALS still fails, as it did with respect to its first stay motion, to provide this Court or Genlyte with the security that would warrant a stay. ALS has had more than ample time (four months) to produce a supersedeas bond, but has failed to do so.

I.     ALS DISTORTS THE FACTS

Despite Genlyte's right to execute on the Judgment and ALS' failure to properly secure the judgment, ALS now hopes that making Genlyte out to be a "bully" by distorting the facts will allow ALS to avoid its obligations. Genlyte not only has the right to execute on the Judgment, but Genlyte's actions in execution and post-judgment discovery are especially warranted in light of ALS' admission that it cannot satisfy the Judgment.

Regardless, Genlyte takes issue with ALS' mischaracterization of Genlyte's post-judgment actions. In particular, ALS' implication that Genlyte had knowledge of ALS' attorney, Brett Dorny's, daughter being in the hospital when Genlyte notified ALS of its failure to comply with the Judgment is untrue. (Declaration of Brett N. Dorny ("Dorny Declaration"), Exhibit 1 to ALS' Motion, ¶¶ 3 and 4). In fact, it was not until after Genlyte sent its letter on April 18, 2007 that Mr. Dorny made Genlyte aware of his situation.

Additionally, ALS offers the excuse that "obtaining a bond requires some time" and that Genlyte has "refused to be even a little accommodating." Interestingly, ALS completely ignores the fact that it has had <u>four months</u> to obtain the appropriate security to stay execution of the Judgment. Genlyte had the right to execute on the Judgment ten days after its entry. *See* 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* §2903 ("A posttrial motion, seeking a new trial or some similar kind of relief,

2

does not stay the judgment.")  However, Genlyte waited until May 16, 2007, more than three months after entry of the Judgment and after the Court ruled on ALS' post-trial motions, to begin attempting to execute on the Judgment.  Therefore, it is an understatement to say that ALS has had ample time to obtain a supersedeas bond and highly disingenuous for ALS to state that Genlyte "refused to be even a little accommodating with respect to the Judgment."

ALS also fails to mention that it completely ignored Genlyte's attempt to work out ALS' issue of securing the Judgment.  As Genlyte stated in its opposition to ALS' first motion to stay execution, Genlyte was willing to accept an irrevocable letter of credit if it properly secured Genlyte.  To that end, Genlyte requested the letter of credit from ALS for review prior to filing its opposition.  (Email from Robert Theuerkauf to Brett Dorny, dated May 23, 2007, attached as Exhibit A).  ALS ignored Genlyte's request.  Had ALS contacted counsel for Genlyte when Genlyte was attempting to "accommodate" ALS, ALS' multiple motions to stay execution may not have been necessary.

ALS wants to label Genlyte a "bully" just because Genlyte wants to enforce its rights under the law.  It appears that ALS does not understand that it was adjudged by this Court to be an infringer and that it must pay the consequences.  If Genlyte is a bully, then the law is a bully.

II.     ALS FAILS TO PROVIDE EVIDENCE WARRANTING A STAY

The factors as cited by ALS in determining whether a stay should be granted are:

(1) whether the stay applicant had made a strong showing that he is likely
to succeed on the merits; (2) whether the applicant will be irreparably
injured absent a stay; (3) whether issuance of the stay will substantially
injure the other parties interested in the proceeding; and (4) where the
public interest lies.

*Canterbury Liquors & Pantry v. Sullivan*, 999 F.Supp. 144, 149 (D.Mass. 1988). With respect to the first factor, ALS appears to argue that the issue is whether or not it can, or will, obtain a supersedeas bond.[1] (ALS' Motion, p. 4). ALS is confused. ALS seeks a stay of execution of the Judgment and as Genlyte has fully briefed in opposition to ALS' post-trial motions, ALS has not made a showing that it is likely to succeed in appealing the Judgment. The issue is not whether ALS has shown that it is "likely to succeed" in obtaining a supersedeas bond. Even if this were the issue, ALS has not provided any evidence that it is capable of obtaining, or will obtain, a bond.

With respect to the second factor, ALS provides no evidence that it would be irreparably harmed absent a stay. ALS, without any proof, merely states that ALS' business would be damaged. Yet, ALS fails to even articulate how it would be damaged.

On the other hand, and with respect to the third factor, ALS' own statements evidence the injury that Genlyte faces if a stay is granted. ALS has already stated in its previous stay motion, that it cannot pay the Judgment. Moreover, ALS has recently informed Genlyte that it has received additional payments for infringing products for which it owes Genlyte a royalty payment. (Exhibit F to the Dorny Declaration). However, ALS refuses to make such payment. Consequently, if the stay is granted Genlyte will suffer substantial harm because (1) Genlyte's patent continues to be infringed with impunity, (2) ALS will likely not be able to compensate Genlyte for the sales of the additional infringing products, and (3) ALS will not be able to pay the Judgment. Further, it appears from ALS' own statements that the longer ALS delays, the less likely ALS will be able to satisfy the Judgment.

---

[1] ALS' approach to a stay is indeed novel. ALS appears to contend that its statement that it will post security is the equivalent of security. Such a proposition would turn the law of creditor's rights on its head.

Finally, the fourth factor, the public interest, likewise favors denying the stay. ALS argues that allowing it time to obtain the supersedeas bond is in the public interest. (ALS' Motion, p. 5). Again, ALS has had ample time (more than four months) to obtain a bond and has failed to produce one. On the other hand, this Court has adjudged ALS to be an infringer and has awarded Genlyte monetary damages. The public interest lies with the enforcement of Federal Court judgments.

ALS has failed to (1) make a "strong showing" that it is likely to succeed on the merits, (2) that it will be irreparably harmed, or (3) that the public interest favors a stay. Consequently, ALS' Motion must be denied.

III.   ALS MUST RESPOND TO A PROPERLY ISSUED SUBPOENA

ALS also asks this Court to quash the post-judgment discovery subpoena properly issued by Genlyte. (ALS' Motion, p. 5). The subpoena was issued on May 21, 2007, ten days prior to the noticed deposition date, and the subpoena, along with a deposition notice, was delivered to ALS' counsel by overnight mail. Consequently, ALS was given a reasonable amount of time to comply with the noticed deposition. Regardless, the parties agreed to reschedule the deposition date until after resolution of ALS' first motion to stay. (ALS' Motion, p. 5).

After ALS' motion was denied, counsel for Genlyte emailed counsel for ALS stating, "Please let me know if we can proceed with [the deposition] either Friday June 8 or Tuesday June 12." (Exhibit N to the Dorny Declaration). ALS' counsel responded that he was unavailable on those dates, but failed to provide acceptable dates despite having spoken with his client. (Dorny Declaration, ¶ 12). To this date, more than three weeks after ALS' counsel received notice of the deposition, ALS has yet to provide dates

5

that it is available for the deposition. Instead, ALS files this motion complaining that it has not been give sufficient time to respond. Three weeks is more than sufficient and anything more is just delay on the part of ALS.

Finally, the categories of information for which Genlyte seeks testimony are all relevant to aiding Genlyte in execution of the Judgment. ALS wrongfully contends that Categories 2 through 6 are irrelevant to execution of the Judgment. Categories 2 and 3 seek information pertaining to ALS' outstanding orders for its infringing products. (Exhibit M to the Dorny Declaration). Obviously, any outstanding orders are additional revenue streams that may aid in satisfying the Judgment. Additionally, per the Judgment, ALS will owe a royalty to Genlyte on all outstanding orders of its infringing products for which ALS receives payment.

Categories 4 through 6 seek information relating to ALS' invoices, records of accounts receivables and records of revenue pertaining to ALS' infringing products. (Exhibit M to the Dorny Declaration). Again, all these categories will allow Genlyte to identify sources of income from which ALS may satisfy the Judgment. In fact, these categories are a common source of relevant information to, and in collecting, a judgment. As a result, ALS' motion to quash or modify the subpoena should be denied.

IV.   CONCLUSION

ALS' Motion is simply another attempt by ALS to delay fulfilling its obligation to satisfy the Judgment. Consequently, for the foregoing reasons, Genlyte respectfully requests that the Court deny ALS' Motion.

Respectfully submitted,

GENLYTE THOMAS GROUP LLC

By Its Attorneys,

/s/ Kevin Gannon
James E. Milliman (*Pro hac vice*)
James R. Higgins, Jr. (*Pro hac vice*)
Robert J. Theuerkauf (*Pro hac vice*)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
Kevin Gannon BBO#640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as on registered participants, if any, on this 12th day of June, 2007.

/s/ Kevin Gannon

# EXHIBIT A

## Robert J Theuerkauf

**From:** Robert J Theuerkauf
**Sent:** Wednesday, May 23, 2007 5:35 PM
**To:** 'Brett N. Dorny'
**Cc:** James E. Milliman; James R. Higgins, Jr.
**Subject:** Genlyte v. ALS

Dear Brett:
We are in receipt of ALS' Motion to Stay. Before we respond to the motion we would like to review the irrevocable letter of credit issued by Sovereign Bank. Please forward a copy of the letter of credit. Thank you for your cooperation.
Sincerely,
Robert J. Theuerkauf
Registered Patent Attorney
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, Kentucky 40202
Office Phone: (502) 584-1135
Direct Dial: (502) 625-2747
Facsimile: (502)561-0442
email:rjt@middreut.com

NOTICE: This electronic mail transmission is for the use of the named individual or entity to which it is directed and may contain information that is privileged or confidential. It is not to be transmitted to or received by anyone other than the named addressee (or a person authorized to deliver it to the named addressee). It is not to be copied or forwarded to any unauthorized persons. If you have received this electronic mail transmission in error, delete it from your system without copying or forwarding it, and notify the sender of the error by replying via email or by calling Middleton Reutlinger at (502) 584-1135, so that our address record can be corrected.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

6/11/2007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENLYTE THOMAS GROUP LLC,<br>a Delaware Limited Liability Company<br>Plaintiff,<br><br>v.<br><br>ARCH LIGHTING GROUP, INC. d/b/a<br>ARCHITECTURAL LIGHTING SYSTEMS<br>Rhode Island Corporation<br><br>Defendant. | Civil Action No. 05-CV-10945 WGY |

**[Proposed] ORDER DENYING DEFENDANT'S MOTION FOR TEMPORARY STAY OF EXECUTION AND TO QUASH DEPOSITION SUBPOENA**

This matter is before the Court on the motion by Defendant, Arch Lighting Group, Inc. ("ALS"), for Temporary Stay of Execution and to Quash Deposition Subpoena ("ALS' Motion"). The Court, having reviewed and considered the parties' respective memoranda and supporting material, and any responses thereto, and otherwise being duly and sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that ALS' Motion be, and it hereby is, DENIED.

SO ORDERED this ____ day of _____, 2007.

_____
William G. Young, U. S. D. J.

-2-

TENDERED BY:

/s/ Kevin Gannon
Counsel for Plaintiff,
Genlyte Thomas Group LLC