UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                    Plaintiff,

v.                                                          Civil Action No. 05-CV-10945 WGY

ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS
Rhode Island Corporation

                    Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY
EXECUTION OF JUDGMENT PENDING APPEAL**

        Plaintiff, Genlyte Thomas Group LLC ("Genlyte"), by counsel, for its Opposition

to the Motion of Defendant, Arch Lighting Group d/b/a Architectural Lighting Systems

("ALS"), to Stay Execution of Judgment Pending Appeal ("ALS's Motion"), states:

        After three motions attempting to stay execution of the Judgment, ALS has now

for the first time filed a copy of a bond with the Court.  However, the bond finally

obtained by ALS fails to fully secure Genlyte and ALS's third attempt to stay execution

should likewise be denied.

        In addition to the award of $207,554, the Judgment provides that ALS shall pay to

Genlyte a royalty in the amount of $67 per fixture for sales of all infringing fixtures for

which there was a legally enforceable contract at the time of the Judgment.  (Final

Judgment and Permanent Injunction, ¶ 8, attached as Exhibit A).  On June 22, 2007,

counsel for Genlyte took the deposition of Paul Northrup, Controller for ALS.  During

that deposition Mr. Northrup testified that ALS received orders on February 1, 2007 (four

days before the Judgment was entered) for approximately 350 of ALS' infringing

fixtures. (Paul Northrup Deposition Transcript ["Northrup Trans."], June 22, 2007, 21:19-23; 22:1-19, excerpts attached hereto as Exhibit B). Consequently, the amount of the bond should also include $23,450 ($67 x 350 infringing fixtures), to protect Genlyte's rights under paragraph 8 of the Judgment. However, the bond fails to cover this amount:

| | |
|---|---|
| Damages (Judgment, p. 2, ¶ 3) | $207,554 |
| Prejudgment Interest (Judgment, p. 2, ¶ 3) | $30,089 |
| Royalties (Judgment, p. 4, ¶ 8) | $23,450 |
| 10 % (Local Rule 62.2) | $26,109.30 |
| Costs (Local Rule 62.2) | $500 |
| **TOTAL** | $287,702.30 |
| Amount of Bond | $274,526 |

As a result, the bond is insufficient to protect Genlyte and, therefore, Genlyte respectfully requests the Court to deny ALS's Motion.

On the other hand, if the bond is not required to cover the amount of the royalties, then ALS should be obligated to pay the royalties regardless of a stay. Mr. Northrup testified that ALS has received payment on 146 of the 350 fixtures to which it had a legally binding contract at the time of the Judgment, but has not paid Genlyte the royalties on such fixtures. Moreover, Mr. Northrup testified that ALS expects to receive additional payments on another portion of the 350 fixtures by the end of July. (Northrup Trans., 21:1-19; 22:1-16; 29:12-23; 30:1-11; 32:9-12; 34:7-23; 35:1-23; 36:1-23). ALS cannot have it both ways – either the bond should be required to cover the amount of royalties for the 350 fixtures or ALS should pay Genlyte the royalties owed.

For the foregoing reasons, Genlyte respectfully requests the Court to deny ALS's Motion.

Respectfully submitted,

GENLYTE THOMAS GROUP LLC

By Its Attorneys,

/s/ Kevin Gannon
James E. Milliman (*Pro hac vice*)
James R. Higgins, Jr. (*Pro hac vice*)
Robert J. Theuerkauf (*Pro hac vice*)
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville KY  40202
Telephone:  (502) 584-1135
Facsimile:  (502) 561-0442

-and-

Thomas C. O'Konski  BBO#337475
Kevin Gannon BBO#640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA  02210
Telephone:  (617) 951-2500
Facsimile:  (617) 951-3927

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as on registered participants, if any, on this 17th day of July, 2007.

/s/ Kevin Gannon

# EXHIBIT A
# Final Judgment and
# Permanent Injunction

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSSETTS

GENLYTE THOMAS GROUP LLC,

        Plaintiff,

v.

                                      Civil Action No. 05-CV-10945-WGY

ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS

        Defendant.

---

### [PLAINTIFF'S PROPOSED] FINAL JUDGMENT AND
### PERMANENT INJUNCTION FOLLOWING TRIAL TO JURY AND VERDICT

Trial having been held before a jury and concluded on February 1, 2007, the parties having been heard, and the jury having returned its verdict that Defendant Arch Lighting Group, Inc. d/b/a Architectural Lighting Systems ("ALS") infringed the patent-in-suit, U.S. Patent No. 5,038,254 ("the '254 Patent") as follows:

1. ALS' MulTmed 2x4 product MT2A infringed Claim 1 and 3 of the '254 Patent under the doctrine of equivalents;

2. ALS' MulTmed 2x4 product MT2B infringed Claim 1 and 3 of the '254 Patent under the doctrine of equivalents;

3. ALS' MulTmed 2x2 product MT1D literally infringed Claim 1 of the '254 Patent; and

4. That the amount of damages suffered by Genlyte as a result of such infringement was $207,554.00.

The jury having returned its verdict and other determinations having been made during the course of this case, and the Court having considered the entire Record of this cause and having heard argument of counsel and being sufficiently advised,

It is ORDERED AND ADJUDGED,

1.  That U.S. Patent No. 5,038,254 is not invalid and is not unenforceable;

2.  That Defendant, ALS, be and hereby it is adjudicated as liable for infringement of the '254 Patent, as found by the Jury;

3.  That Genlyte shall recover of and from Defendant, ALS, the sum of $207,554.00 plus pre-judgment interest on said sum in the amount of $ 30,089 as set forth in Paragraph 12 of the Affidavit of Michael Tate dated February 5, 2007 filed contemporaneously herewith;

4.  That within 30 days of the date of entry hereof ALS provide a certified accounting to Genlyte of all sales of MT2A, MT2B and MT1D MulTmed hospital patient room lights from September 30, 2006 to the date hereof, and with such accounting ALS shall pay to Genlyte as additional damages the sum of $67.00 per product sold.

5.  That ALS, its officers, directors, employees, agents and attorneys, and all persons acting in concert with any of them, are permanently enjoined and prohibited from making, using, selling, offering for sale or importing into the United States the patented inventions recited in Claim 1 and Claim 3 of the '254 Patent, and from active inducement of infringement of these claims of the '254 Patent.

6.  That the injunction set forth in Paragraph 5 shall include the mandatory injunction and requirement that ALS forthwith cease and desist from

[a] making or selling or offering to sell in any fashion the following products, MT2A (2x4 product with reading, ambient and examination lights), MT2B (2x4 product with reading, ambient, examination lights and nurse's night light) and MT1D (2x2 product with reading and

2

ambient lights) or any product having structure similar thereto which would infringe Claim 1 or Claim 3 of the '254 Patent;

[b] providing or offering to provide the Brochure denominated as Exhibit 20 during trial of this cause, which Brochure/Exhibit 20 includes depictions and/or descriptions of the MulTmed 2x4 and certain 2x2 products;

[c] maintaining on its website the Power Point presentation set forth in Exhibit 21 during trial of this cause;

[d] advertising in any manner the MT2A, MT2B or MT1D products as being available for sale or use or import into the United States; and

[e] modifying any other product including but not limited to the ALS Latitude patient bed light (the present structure of which was depicted in Exhibit 34 at trial of this cause) to contain any structure that would infringe Claim 1 or Claim 3 of the '254 Patent.

7. That the injunction set forth in Paragraph 5 shall further include the mandatory injunction and requirement that ALS [a] gather up and destroy all inventory of MT2A MulTmed 2x4 products, MT2B 2x4 products and MT1D 2x2 products, and certify such destruction to the Court and to Genlyte within thirty (30) days of the date of entry of this Judgment; [b] inform in writing all sales representatives of ALS who in any way represent ALS in selling or offering for sale ALS' MT2A, MT2B or MT1D MulTmed products that such products have been permanently enjoined and are no longer available for sale or use in a hospital patient room or in any other environment, and certify such efforts to the Court and to Genlyte within thirty (30) days of the entry hereof; and [c] notify in writing all specifiers, architects, engineers or other hospital

3

~~administrators or employees who determine or recommend the selection of hospital patient room lights that the ALS' MT2A, MT2B and MT1D MulTmed products are no longer available for sale or use in a hospital patient room or in any other environment, and certify such efforts to the Court and Genlyte within thirty (30) days of the date hereof.~~

8. The provisions of Paragraphs 5, 6 and 7 hereof do not apply to sales and installation of ALS' MT2A, MT2B and MT1D MulTmed products for which there is a legally enforceable contract for ALS to provide such products as of the date of entry of this Judgment. As to such legally enforceable contracts, ALS may fulfill same and receive payment therefore, <u>provided</u> that ALS pays to Genlyte, in addition to the amounts set forth in Paragraph 3 hereof, a royalty in the amount of $67.00 per product sold within thirty (30) days from the date ALS receives payment. Every thirty (30) days after entry hereof, ALS shall report to Genlyte the number of such sales and at that time remit to Genlyte the amount of royalty payments required to be paid. When ALS has completed its sales of all MT2A, MT2B and MT1D MulTmed products permitted under this Paragraph, ALS shall certify in writing to the Court and to Genlyte that all such sales have been completed and all such payments to Genlyte have been made.

9. The injunction portions hereof may be removed upon a submission of a Joint Motion for Removal of Permanent Injunction executed by the parties.

4

10. This is a final and appealable Order, on which execution may be had according to the Federal Rules of Civil Procedure and the various statutes of the United States and the laws of Massachusetts.

SO ORDERED AND ADJUDGED this __5TH__ day of February, 2007.

_William G. Young_
William G. Young, U.S. District Judge

5

# EXHIBIT B
# Excerpts Northrup Transcript

Page 1

Vol. 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 05-CV-10945-WGY

GENLYTE THOMAS GROUP LLC,
                    Plaintiff,

vs.

ARCH LIGHTING GROUP, INC., d/b/a
ARCHITECTURAL LIGHTING SYSTEMS,
                    Defendant.


     DEPOSITION OF PAUL B. NORTHROP taken

pursuant to Notice under the applicable

provisions of the Federal Rules of Civil

Procedure on behalf of the Plaintiff, before

Simonne J. Elwood, R.P.R. and a Notary Public

in and for the Commonwealth of Massachusetts,

at the office of Bartlett Hackett Feinberg

P.C., 155 Federal Street, 9th Floor, Boston,
Massachusetts, commencing on Friday, June 22,
2007 at 9:55 a.m.


          NEAL A. SALLOWAY - COURT REPORTERS
               FIVE CARDIGAN ROAD
             WEST PEABODY, MA 01960
     781-581-3993 - 978-535-0313 - FAX 978-536-3142

Vol. 1

APPEARANCES:


RICHARD E. GENTILLI, ESQ.

BARTLETT HACKETT FEINBERG P.C.

155 FEDERAL STREET - 9TH FLOOR

BOSTON, MA   02110

   REPRESENTS THE PLAINTIFF


BRETT N. DORNY, ESQ.

LAW OFFICE OF BRETT N. DORNY

386 WEST MAIN STREET - SUITE 12A

NORTHBOROUGH, MA   01532

   REPRESENTS THE DEFENDANT

P. NORTHROP

```
 1            represents what we paid for that material.

 2    Q       Okay.  Do you have an inventory of finished

 3            goods as well?

 4    A       Very little.

 5    Q       Very little?

 6    A       Maybe $1,000.

 7    Q       Okay.  So you only manufacturer as you have

 8            sales lined up?

 9    A       Yes.

10    Q       Okay.

11    A       Yes.

12    Q       Okay.  Does Arch have any assets such as

13            artwork or antique furniture or anything like

14            that that it owns?

15    A       No.

16    Q       And by artwork, I mean, of real value as

17            opposed to a print on a wall.

18    A       No, sir.

19    Q       Does Arch have outstanding orders for the

20            MulTmed 2x4 products MT2A and MT2B and Arch's

21            MulTmed 2x2 products and MT1D products at

22            this time?

23    A       Yes.
```

Page 22

| | | |
|---|---|---|
| 1 | Q | Okay.  Can you tell me what those outstanding |
| 2 | | orders are? |
| 3 | A | In terms of dollar value? |
| 4 | Q | Dollar value, numbers, yes, whatever you can |
| 5 | | give me from memory; and that's as of today, |
| 6 | | I guess. |
| 7 | A | Yes.  I believe there are four orders? |
| 8 | Q | Four orders for what? |
| 9 | A | Approximately 350 fixtures in total, and the |
| 10 | | dollar value, I would have to say, is -- I |
| 11 | | was going to say 400,000.  I wouldn't swear |
| 12 | | to that. |
| 13 | Q | Who are the customers on the four orders? |
| 14 | A | I don't recall. |
| 15 | Q | When did those orders come in? |
| 16 | A | On or about February 1st of 2007. |
| 17 | Q | Okay.  All orders came in more or less at the |
| 18 | | same time around that time on that date? |
| 19 | A | Yes. |
| 20 | Q | And what products are included in those |
| 21 | | orders, all four, five of those products that |
| 22 | | I listed? |
| 23 | A | I don't know. |

Page 29

```
 1          obligation?

 2    A     We're very close.  We have a letter of

 3          commitment and a letter of credit, I should

 4          say, from Sovereign Bank which has been

 5          forwarded to the bonding company, which will

 6          be Hanover Insurance, which I expect to be in

 7          place next week.  I believe it could have

 8          been done this week except, I think, one of

 9          the officers at Sovereign was out for a

10          couple of days.  So it should be in place

11          next week.

12    Q     Between February 1st and this day, has Arch

13          Lighting received any payments with respect

14          to the contested products?

15    A     Yes.

16    Q     Okay.  Do you know the amounts of those

17          payments?

18    A     I don't.  I don't recall the detail.

19    Q     Ball park?

20    A     I can say this.  I believe there was an

21          affidavit that we filed with -- reported to

22          Genlyte for sales in February, specifically,

23          customers' invoices, billings which those
```

Page 30

```
 1          February sales have been paid.  I don't

 2          recall the dollar amounts.  I mean, I'm even

 3          afraid to guess.

 4    Q     Okay.  Well, let me show you a document and

 5          ask you if this refreshes your recollection;

 6          are those the items that have been paid?

 7          (Indicating)

 8    A     (Reviewing document)  Yes.

 9    Q     And has any payment been made on account of

10          those receipts to Genlyte?

11    A     No.

12    Q     When was -- When were those funds received?

13    A     I can't say exactly, but I would estimate

14          during the month of April.

15    Q     Okay.  And do you know why payments haven't

16          been made to Genlyte?

17    A     May I consult with our attorney?

18    Q     Sure.  But I don't want to hear what you talk

19          about with your attorney, but you may

20          certainly -- Why don't you go outside and

21          consult.

22              THE WITNESS:  Can I just go ahead and

23          answer?
```

Page 32

```
 1            fixture sold since February 1st, does it?

 2    A       That's correct.  It does not.

 3    Q       Okay.  Are you aware that under the order

 4            entered by Judge Young, it provided that Arch

 5            had to pay Genlyte a royalty of $67 per

 6            product sold within 30 days from the date

 7            that Arch received payment?

 8    A       Yes.

 9    Q       Okay.  How many fixtures were comprised by

10            the receipts that you described in April for

11            the sales in February?

12    A       I believe the affidavit says 146.

13    Q       Okay.  So do you know what $67 times 146 is?

14            I don't know if you've calculated it.  I can

15            do it.

16    A       I cannot tell you right now, but I have

17            calculated it.  I prepared a schedule which

18            listed those -- what comprised those 146

19            fixtures and then extended that times $67.

20            Offhand, I don't know what that dollar amount

21            is.  $6,000, maybe.

22    Q       I'm coming up with $9,782, but my math may be

23            wrong.  But those amounts have not been paid,
```

```
 1            to 60 days.  So I'm estimating that the -- if

 2            those fixtures were billed in February, then

 3            payment would have come in in April.  It's

 4            possible that it could have been a little

 5            earlier.  It's possible it could have been a

 6            little later.  Not likely later.

 7    Q       Are those receipts that we're talking about

 8            right now the only receipts for the products

 9            in question received by Arch since February

10            1st, '07?

11    A       Yes.

12    Q       Are you anticipating receiving any additional

13            receipts in the next 30 days?

14    A       Yes.

15    Q       And do you know in what amount and from whom?

16    A       I don't recall the amount.  There were no

17            sales of those fixtures in March and April.

18            I believe there were some sales in May.

19    Q       Out of hold orders?  In other words, they

20            were pre-existing orders?

21    A       They were pre-existing orders.  They may have

22            been on hold previously, but they were orders

23            that we built -- were released, built and
```

Page 35

```
 1            shipped in May.

 2    Q    And do you know how many products that was?

 3    A    I don't recall.  It was something less than

 4         February; that I do recall.  It was less than

 5         146.  I know the main number was a lesser

 6         amount.

 7    Q    The total universe of outstanding hold and

 8         released orders is the 350 units we discussed

 9         earlier, is that correct?

10    A    Pertaining to those fixtures.  Total hold and

11         released orders for the company as a whole

12         for all fixtures is more than that.

13    Q    No.  I'm only concerned about these fixtures.

14    A    That's correct, yes.  Yes.

15    Q    And besides -- Are there any outstanding

16         invoices right now that Arch has for sales of

17         these fixtures that are at issue in this

18         case?

19    A    Yes.

20    Q    And do you know what the amount is of those

21         outstanding or the number of fixtures

22         involved in those outstanding invoices?

23    A    They would be the May shipments which I
```

Page 36

```
 1            believe was about -- had a sales value of

 2            about $23,000.

 3   Q    And that would be approximately how many

 4            fixtures?

 5   A    I couldn't say.

 6   Q    What kind of records would exist with respect

 7            to the sales of these particular products?

 8   A    There are invoices generated with shipping

 9            documents.

10   Q    And you've got orders?

11   A    Yes.

12   Q    And acknowledgements?

13   A    Yes.

14   Q    And are they kept by customer; how are they

15            maintained?

16   A    They're kept by specific customer; by

17            specific customer P.O.

18   Q    Okay.  Could -- Okay.  Do you know the number

19            of fixtures that were sold by -- these

20            fixtures that were sold by Arch between

21            September 30th and February 5th of 2007?

22   A    I believe it's 412.  I'm recalling that from

23            the affidavit.
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GENLYTE THOMAS GROUP LLC,
a Delaware Limited Liability Company
                    Plaintiff,

v.                                                          Civil Action No. 05-CV-10945 WGY


ARCH LIGHTING GROUP, INC. d/b/a
ARCHITECTURAL LIGHTING SYSTEMS
Rhode Island Corporation

                    Defendant.

## [Proposed] ORDER DENYING DEFENDANT'S MOTION
## TO STAY EXECUTION OF JUDGMENT PENDING APPEAL

This matter is before the Court on the motion by Defendant, Arch Lighting

Group, Inc. ("ALS") To Stay Execution of Judgment Pending Appeal.  The Court, having

reviewed and considered the parties' respective memoranda and supporting material, and

any responses thereto, and otherwise being duly and sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that ALS's Motion To Stay

Execution of Judgment Pending Appeal be, and it hereby is, DENIED.

SO ORDERED this _____ day of _____, 2007.


                                        _____
                                        William G. Young, U. S. D. J.

TENDERED BY:


_____
Counsel for Plaintiff,
Genlyte Thomas Group LLC